UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Ancona Escrow, Inc., a Minnesota corporation, and Ancona Title Services, Inc., a Minnesota corporation,<br><br>Plaintiffs,<br><br>v.<br><br>Ancona West Corporation, d/b/a North Oaks Title, a Minnesota corporation, and Frederic W. Knaak,<br><br>Defendants. | Civil File No. 06CV 504 DSD/JJG<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

---

Plaintiffs Ancona Escrow, Inc. and Ancona Title Services, Inc., for their Complaint against Defendants Ancona West Corporation, d/b/a North Oaks Title, and Frederic Knaak hereby state and alleges as follows:

**PARTIES**

1.     Ancona Escrow, Inc. ("Ancona Escrow") is a Minnesota corporation, with its principal place of business at 4750 White Bear Parkway, White Bear Lake, Minnesota, 55110.

2.     Ancona Title Services, Inc., ("Ancona Title") is a Minnesota corporation with its principal place of business at 4750 White Bear Parkway, White Bear Lake, Minnesota, 55110.

3.     Ancona West Corporation, d/b/a North Oaks Title, is a Minnesota corporation. Upon information and belief, its principal place of business is at 3500 Willow Lake Blvd., Suite 800, Vadnais Heights, Minnesota 55110.

4.     Frederic W. Knaak is an individual who resided at all relevant times in Minnesota. He is an attorney with the law firm of Knaak & Kantrud, P.A., 3500 Willow Lake Blvd., Suite 800, Vadnais Heights, Minnesota 55110.

MP3 20166993.1

SCANNED
FEB 0 6 2006
U.S. DISTRICT COURT MPLS

## JURISDICTION AND VENUE

5.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiffs' causes of action arise as a result of Defendants' acts or omissions in violation of 15 U.S.C. § 78(j)(b) and 17 C.F.R. § 240.10b-5, and 15 U.S.C. § 1051 et seq.

6.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

7.     This Court has venue over these claims pursuant to 28 U.S.C. § 1391(b). A substantial part of the events, actions and omissions giving rise to Plaintiffs' claims occurred in this district.

## INTRODUCTION

8.     This case involves Defendants' breach of a settlement agreement. Under this valid and enforceable settlement agreement, Plaintiffs and Defendants agreed to rescind the sale of Ancona Title to Ancona Escrow. Despite this agreement, Defendants have refused to rescind the sale agreement. Accordingly, Plaintiffs filed this action seeking enforcement of the settlement agreement.

9.     In the alternative, Plaintiffs seek rescission of the sale agreement and/or significant damages. Defendants failed to accurately disclose and intentionally concealed the true nature and condition of Ancona Title's liabilities prior to the execution of the sale agreement, constituting fraud in violation of both federal and state securities laws, as well as Minnesota common law. In addition, although the terms of the sale agreement required that Defendants cease using the trade name "Ancona" in the context of real estate services, Defendants continue to use the trade name "Ancona" in blatant breach of the sale agreement and in breach of the implied duty of good faith and fair dealing. This unauthorized use has also caused actual confusion and/or will likely cause confusion to the consuming public as to the

2

affiliation, source and/or association between Plaintiffs and Defendants, and constitutes willful infringement in violation of federal, state and common law. Moreover, Defendant Knaak, as sole owner and operator of Ancona Title, had a fiduciary duty to Plaintiff Ancona Title to conduct business in the best interests of Ancona Title. Defendant Knaak simply failed to meet this duty. Finally, Defendant Knaak agreed to indemnify Plaintiffs but now denies any liability.

## THE SALE OF ANCONA TITLE TO ANCONA ESCROW

10.    Christopher H. Brown and Defendant Frederick W. Knaak formed Ancona Title on May 7, 2002 under the laws of Minnesota and did business as Ancona Title Services Corporation. Knaak owned 51% of the stock and Brown owned 49% of the stock.

11.    Brown was responsible for client relations, marketing and closing functions, which included financial and document escrow. Knaak was responsible for insurance writing, issuing polices, and post-closing matters such as recording policy preparation and subsequent questions regarding status of title.

12.    After about a year, Brown and Knaak created separate companies through which to conduct business together. On June 4, 2003, Brown surrendered his 49% ownership of Ancona Title to Knaak, making Knaak the sole shareholder. At the same time, Brown created Ancona Escrow under the laws of Minnesota and is its sole shareholder.

13.    The division of responsibilities remained unchanged. Brown, through Ancona Escrow, remained responsible for client relations and closings, and Knaak, through Ancona Title, remained responsible for insurance writing, issuing polices, and post-closing matters. Ancona Escrow was essentially Ancona Title's sole customer.

14.    Subsequently, Brown discovered that Knaak was failing to perform certain essential insurance underwriting and post-closing functions. In January 2003, Brown complained to Knaak that Knaak was neglecting to perform certain essential tasks on the title

3

side of the business. In August 2003, Brown and Knaak had several meetings to discuss Knaak's failure to file final policies and documents and other post-closing failures. Knaak repeatedly told Brown not to worry about the title problems, assuring Brown that he would resolve the problems. Brown relied on those representations and believed that Knaak had remedied any issues associated with problem files.

15.     On July 7, 2005, Brown informed Knaak that he wished to completely sever their business relationship. Both Knaak and Brown acknowledged the significant good will associated with the "Ancona" name and agreed that Brown would retain the "Ancona" name.

16.     On August 1, 2005, Knaak and Brown entered into a Memorandum of Understanding and Contract for Sale of Shares and Assets and Indemnification Agreement ("Sale Agreement") (signed Aug. 19, 2005) for the purpose of conveying the shares of capital stock of Ancona Title (the "Shares") owned by Knaak. (A copy of the Sale Agreement is attached hereto as Exhibit A.) Pursuant to the terms of the Sale Agreement, Ancona Escrow issued to Knaak a promissory note in the amount of $90,000 ("Promissory Note"). (A copy of the Promissory Note is attached hereto as Exhibit B.)

17.     In the Sale Agreement, Knaak agreed to indemnify Ancona Title against any and all liability for a number of specified files. ("Indemnified Files"). Knaak also agreed to be responsible for any issues that should arise in connection with the Indemnified Files.

18.     The Promissory Note (also signed on Aug. 19, 2005) required monthly principal payments of $15,000 each, commencing on July 25, 2005. The Promissory Note states that "[t]his Note is given in purchase of certain shares of corporate common stock owned by Payee, in which his entire interest is reserved without partition until payment in full." (Ex. B.)

19.     Knaak is an attorney who is experienced in transactional matters. Brown is not an

4

attorney and was not represented by counsel during the negotiation and execution of the Sale Agreement.

20.     Despite the execution of the Sale Agreement and Knaak's obligations under the Sale Agreement, Knaak has still not delivered to Ancona Title certificates representing the Shares and has not cancelled the certificate evidencing his prior ownership of the Shares. Knaak has not delivered Ancona Title's financial records and documents to Ancona Title, including but not limited to tax documents, financial statements and documents related to Ancona Title's purported engagement of Knaak and the law firm of Knaak & Kantrud P.A. Knaak has not delivered to Ancona Title assets and cash belonging to Ancona Title at the time of the Sale Agreement.

21.     The Sale Agreement transferred the trade name "Ancona" to Ancona Escrow. It also provided specifically that Defendants shall cease operating under the name "Ancona Title Services, Corp.", or "Ancona Title and Escrow." (Ex. A.)

22.     Defendants continue to use "Ancona" and "Title" in its name. These uses include, but are not limited to, "Ancona West d/b/a North Oaks Title," "Ancona West Corporation, which operates as North Oaks Title," and "Ancona West Corporation Title, Escrow and Insurance Services." Ancona Title was the first entity to use the mark "Ancona" in relation to real estate services. Defendants' use of "Ancona" and "Title" has created actual confusion and/or will create a likelihood of confusion with the names of Ancona Title and Ancona Escrow.

## MATERIAL FACTS NOT DISCLOSED PRIOR TO THE SALE AGREEMENT

23.     Defendant Knaak failed to disclose and intentionally concealed material facts from Ancona Escrow prior the execution of the Sale Agreement. In particular, Knaak misrepresented the true nature and condition of Ancona Title's liabilities.

24.     At the time of the execution of the Sale Agreement, Knaak was aware that at least

5

three of Ancona Title's title files had unresolved claims against it. Knaak consistently represented to Ancona Escrow that these title liabilities were easy to remedy. Knaak consistently assured Ancona Escrow that he would resolve these problems. Ancona Escrow relied on these representations and believed that Knaak had resolved any issues associated with the problem files. Despite Knaak's representations, Knaak failed to remedy the problems associated with Ancona Title's title files. A more detailed description of the liabilities follows.

## A.   THE GORE FILE

25.     Prior to the execution of the Sale Agreement and when Knaak was sole owner and operator of Ancona Title, Ancona Title improperly recorded title on Ancona Title Commitment Number 00101230 regarding property at 392 Lexington Parkway South, St. Paul, Minnesota ("Gore file"). (*See United States v. 392 Lexington Parkway South*, Civ. No. 03-5815 (D. Minn.) (A copy of the Order is attached herein as Exhibit C).) Specifically, as a result of Ancona Title's failure, a mortgage and lis pendens were recorded and registered prior to the recordation and registration of both the insured mortgage and the deed to the mortgagor. Lawyers Title Insurance Company ("Lawyers Title"), the mortgagor's insurer, accepted coverage of the claim. On May 5, 2004, Lawyers Title notified Knaak and Ancona Title that Ancona Title may have liability for some or all of the losses Lawyers Title may sustain. This notice specifically requested that Ancona Title "notify its Errors and Omissions carrier of this claim." (A copy of the May 5, 2004, Letter from Lawyers Title to Knaak is attached hereto as Exhibit D.) This notice further indicated that Lawyers Title had previously contacted Knaak about the claim and had secured his agreement to provide the required assistance. (*Id.*)

26.     Knaak also knew that Lawyers Title had agreed to provide coverage and had engaged legal counsel. (A copy of the May 2004 Letter from Lawyers Title to Usset is attached hereto as Exhibit E.)

6

27.     All Knaak was required to do was notify Ancona Title's Errors and Omissions carrier, St. Paul Fire and Marine Insurance Company ("St. Paul Fire"), of the claim.  Prior to the Sale Agreement, Knaak did not notify St. Paul Fire of Lawyers Title's claim.

28.     Prior to the Sale Agreement, Knaak further failed to accurately disclose and intentionally concealed the true nature and condition of this title liability to Ancona Escrow.

29.     As a result of Knaak's failure to promptly inform St. Paul Fire, Ancona Title has liability exposure up to $180,000.  (A copy of the Sept. 20, 2005 Letter from Lawyers Title to Knaak are attached hereto as part of Exhibit C.)

30.     On September 30, 2005, Knaak and Ancona Escrow entered into an indemnification agreement ("Indemnification Agreement") specifically indemnifying Ancona Title from any losses and expenses incurred in connection with the Lawyers Title litigation and claim related to the Gore File.  (A copy of the Indemnification Agreement is attached hereto as Exhibit F.)  Knaak also agreed to provide notice to St. Paul Fire, and be responsible for resolving any dispute that might arise with respect to the failure to promptly give notice.

31.     Knaak gave notice of the claim on October 4, 2005.  (A copy of the Oct. 4, 2005 Letter from Knaak to St. Paul Fire is attached hereto as Exhibit G.)  To date, St. Paul Fire has not accepted coverage of the claim.

32.     Knaak denies responsibility for indemnification of and continued involvement with the Gore file.

## B.     THE PROGROWTH FILE

33.     Knaak, over Ancona Escrow's objections, authorized his law partner Alan Kantrud and Kantrud's title company, Marathon Title Company ("Marathon Title"), to conduct closings on insurance issued through Ancona Title.  In 2002, Kantrud made an error in closing property at 11201 Wood Hill Lane, Blaine, Minnesota, Commitment Number 00050020 (the

7

"ProGrowth File"). Kantrud had the responsibility but negligently failed to file a $452,000 purchase money mortgage obtained from Wells Fargo until after a second $216,000 mortgage and a third $150,000 mortgage from ProGrowth Bank ("ProGrowth") were filed, thereby depriving Wells Fargo of the position of first lien on the property. Upon information and belief, ProGrowth issued the $150,000 mortgage after repeated phone calls to Kantrud, which were not returned, in reliance on the fact that no mortgages appeared of record against the property and that when recorded, ProGrowth's $150,000 mortgage would be the first mortgage.

34.     Knaak agreed to indemnify Ancona Title for any and all liability associated with any and all files Kantrud closed.

35.     In a letter to Brown dated August 5, 2005, Lawyers Title, Wells Fargo's insurer, advised Brown that the mortgage and transaction Kantrud closed under Ancona Title did not result in the Wells Fargo mortgage being the first mortgage of record. Knaak had communicated with Lawyers Title about the failed filing and resulting liability to Lawyers Title. This letter further states that Knaak had assured Lawyers Title that the ProGrowth mortgages were subordinate to the Wells Fargo mortgage. In spite of these communications, the letter states: "[h]e now claims that he does not represent Ancona Title and is not pursuing the matter any further." (A copy of the Aug. 5, 2005 letter from Grande to Knaak is attached hereto as Exhibit H.)

36.     Brown immediately discussed the letter with Knaak, who told Brown that the ProGrowth mortgages were subordinate to the principle Wells Fargo mortgage and agreed to provide to Lawyers Title the proof of subordination. Apparently confirming at least one telephone conversation, Knaak wrote to Lawyers Title, stating that he represented Ancona Title with respect to the Gore file. (*See* August 8, 2005 letter from Knaak to Grande attached hereto

8

MP3 20166993.1

as Exhibit I.)

37.     Prior to the execution of the Sale Agreement, Knaak failed to disclose and intentionally concealed from Ancona Escrow the true nature and condition of the ProGrowth liability.

38.     Upon information and belief, ProGrowth has refused to subordinate its mortgages to the Wells Fargo mortgage.   Knaak has done nothing to resolve this matter and, upon information and belief, Lawyers Title is preparing to commence litigation in this matter. Potential liability to Ancona Title for this filing error is as high as $452,000.

## C.     THE PLOVER FILE

39.     Knaak received notice that a mechanics lien allegedly has priority over Ancona Title's mortgage had been filed on property at 3401 Evergreen Ct., Plover Wisconsin, 54462. Again, as sole owner and President of Ancona Title, Knaak knew that Ancona Title was involved in another improper closing (the "Plover File").  In response to a request for indemnification from the foreclosing party, Knaak issued a letter of indemnification but took no action to establish the priority of the insured mortgage.

40.     Again, like with the ProGrowth and Plover files, Knaak failed to disclose and intentionally concealed from Ancona Escrow the true nature and condition of this liability prior to the execution of the Sale Agreement.

41.     In sum, Knaak sold Ancona Title to Ancona Escrow subject to the aforementioned undisclosed liabilities, which substantially reduced the value of Ancona Title to the point where the liability far exceeds the purchase price.  Ancona Escrow justifiably relied on Knaak's repeated representations that Knaak had taken obvious corrective measures to remedy the filing errors.  Knaak failed to advise Ancona Escrow of the true nature and condition of Ancona Title's liabilities with the intent to induce Ancona Escrow to purchase Ancona Title.

9

MP3 20166993.1

But for Knaak's representations, Ancona Escrow would not have purchased Ancona Title.

## SETTLEMENT AGREEMENT

42.     On November 30, 2005, counsel for Ancona Escrow sent Knaak a letter advising him of Knaak's breaches of the Sale Agreement and demanding that he cease and desist using the word "Ancona" in connection with any real estate services and remove all references to the same.  (A copy of the Nov. 30, 2005 Letter from Magnuson to Knaak is attached hereto as Exhibit J.)  In addition, the letter warned Knaak that adherence to rights he may believe he had at the time of sale that were not disclosed to Ancona Escrow would violate federal and state securities laws and constitute fraud.  (*Id.*)  By this time, Ancona Escrow had made four of the six payments pursuant to the Promissory Note.

43.     The letter addressed the existence of files that have unresolved or undisclosed title liability, which had become known to Brown after entering into the Sale Agreement, requesting additional specific indemnification agreements for the ProGrowth and Plover files and an agreement from Knaak to resolve the claims.  The letter advised Knaak that his failure to disclose the title liabilities prior to the sale violated federal and state securities laws and constituted fraud.

44.     The letter also informed Knaak that Ancona Escrow would pay remaining monies due pursuant to the Promissory Note into an escrow account until Knaak cured the breaches of the Sale Agreement.  The balance of the amount of $30,000 owed under the Promissory Note is currently held in escrow.  (A copy of the Escrow Account Statement is attached hereto as Exhibit K.)

45.     Knaak responded by letter the same day, November 30, 2005, in which he proposed that the parties rescind the Sale Agreement, return to Knaak the Ancona Title stock and "return to Mr. Brown, the payments he has made to date, less offsets related to funds he has

10

taken from the business in the meantime." (A copy of the Nov. 30, 2005, Letter from Knaak to Magnuson is attached hereto as Exhibit L.)

46.     On December 2, 2005, Plaintiffs and Defendants entered into a valid and enforceable settlement agreement.  Plaintiffs' counsel accepted Knaak's proposal to settle the dispute between the parties to the Sale Agreement by rescinding the Sale Agreement under the terms Knaak proposed in his November 30, 2005 letter ("Settlement Agreement").  (A copy of the Dec. 2, 2005 email from Magnuson to Knaak is attached hereto as Exhibit M.)  Knaak confirmed the Settlement Agreement in an email dated the same day, December 2, 2005, subject to an accounting of Ancona Title, and agreed to review documents memorializing the Settlement Agreement.  (A copy of the Dec. 2, 2005, email from Knaak to Magnuson is attached hereto as Exhibit N.)

47.     Plaintiffs' counsel sent Knaak a draft rescission agreement ("Rescission Agreement") on December 7, 2005.  (A copy of the Rescission Agreement is attached hereto as Exhibit O.)

48.     On or around December 16, 2005, Knaak objected to the Rescission Agreement on the ground that if he were to take back Ancona Title, the classification of Ancona Title under the tax laws would change from subchapter S status to subchapter C status. Plaintiffs' responded by stating that the potentially altered tax status of Ancona Title after rescission was not relevant to the remedy of rescission but that Brown nevertheless would cooperate with Knaak to retain the "S Corporation" tax status upon rescission.  (Copies of correspondence dated Dec. 16-21, 2005 exchanged between Knaak and Magnuson are attached hereto as Exhibit P.)  On December 27, 2005, Knaak forwarded a tax opinion letter ("Dailey Letter") to counsel for Ancona Escrow advising that rescission of the Sale Agreement would cause Ancona Title to be reclassified from

11

"S" to "C" corporate status. In an effort to alleviate Knaak's concerns regarding the tax status of Ancona Title upon rescission, Plaintiffs forwarded a memorandum from a tax attorney at Briggs and Morgan, P.A. concluding that there would be no change in tax status if the rescission were accomplished in the same tax year as the Sale Agreement ("McDonough Memo"). Upon receiving a copy of the McDonough Memo, Knaak responded that it would be too late to get due diligence for the rescission performed before the end of the year. (Copies of the Dailey Letter, the McDonough Memo and related correspondence are attached hereto as Exhibit Q.)

49.     On December 29, 2005, Plaintiffs tendered Ancona Title's stock pursuant to the Rescission Agreement and notified Knaak that Ancona Escrow was prepared to immediately rescind the Sale Agreement and exchange the Ancona Title stock for the monies paid in consideration of that stock pursuant to the Settlement Agreement reached between the parties ("Stock Tender"). (A copy of the Stock Tender is attached hereto as Exhibit R.)

50.     Knaak responded on January 5, 2006 with a letter that mischaracterized the Settlement Agreement and misstated the relevant law, evidencing an intention to avoid the terms of the Settlement Agreement such that it became necessary to file this action.

## COUNT I
## DECLARATORY JUDGMENT: VALID AND ENFORCEABLE SETTLEMENT AGREEMENT

51.     Plaintiffs allege and incorporate all of the allegations from the preceding paragraphs.

52.     Plaintiffs and Defendants entered into a valid and enforceable Settlement Agreement on November 30, 2005.

53.     This Settlement Agreement was binding on all parties.

54.     Plaintiffs and Defendants expressly agreed to rescind the Sale Agreement. Plaintiffs and Defendants agreed to subsequently reduce this Settlement Agreement to writing.

12

55.     Defendants have refused to comply with the terms of the Settlement Agreement.

56.     An actual and justiciable controversy exists regarding Defendants' obligations under the Settlement Agreement.

57.     Pursuant to Minn. Stat. § 555.01 *et seq.* and/or 28 U.S.C. § 2201 *et seq.*, Plaintiffs are entitled to a declaration that Plaintiffs and Defendants executed a valid, enforceable and binding Settlement Agreement on November 30, 2005.

**COUNT II**
**BREACH OF THE SETTLEMENT AGREEMENT**

58.     Plaintiffs allege and incorporate all of the allegations from the preceding paragraphs.

59.     Plaintiffs and Defendants entered into a valid and enforceable Settlement Agreement on November 30, 2005.

60.     Under the terms of the Settlement Agreement, Defendants agreed to rescind the Sale Agreement.

61.     Defendants have failed to comply with the terms of the Settlement Agreement and have refused to rescind the Sale Agreement.

62.     As a result of Defendants' failure to rescind the Sale Agreement, Defendants have breached the terms of the Settlement Agreement.

63.     Due to Defendants' breach, Plaintiffs are entitled to specific performance, requiring Defendants to rescind the Sale Agreement as required by the Settlement Agreement.

64.     In the alternative, Plaintiffs are entitled to recover money damages, in excess of $90,000, with the full amount of damages to be established at trial.

65.     The following claims are pled in the alternative to Counts I and II.

## COUNT III
## INTENTIONAL MISREPRESENTATION

66.    Plaintiffs repeat and incorporate all allegations from the preceding paragraphs.

67.    The Sale Agreement involved the sale of stock from Ancona Title to Ancona Escrow.

68.    At least three of the title files transferred with the sale of Ancona Title have liabilities that were previously undisclosed to Ancona Escrow

69.    Ancona Title and Knaak, as sole owner and operator of Ancona Title, knew or should have known of these liabilities prior to the execution of the Sale Agreement.

70.    Knaak represented to Ancona Escrow that obvious corrective measures had been taken to remedy these liabilities.  At the time of the execution of the Sale Agreement, Knaak knew or should have known that these liabilities were not remedied.

71.    These liabilities are material to the value of Ancona Title.

72.    Knaak failed to accurately disclose these liabilities to Ancona Escrow prior to the execution of the Sale Agreement.  This intentional concealment misrepresented the value of Ancona Title.

73.    Knaak intended to induce Ancona Escrow to rely on these misrepresentations and omissions so that Ancona Escrow would purchase Ancona Title.

74.    Ancona Escrow reasonably relied in good faith upon Knaak's material misrepresentations and omissions and agreed to purchase Ancona Title, to its detriment.

75.    As a direct and proximate cause of Knaak's intentional misrepresentations, Ancona Escrow is entitled to rescind and void the Sale Agreement and to obtain from Knaak a refund of all monies paid.

76.    In the alternative, Ancona Escrow has suffered pecuniary loss caused by Knaak's

14

fraud and misrepresentations, and is entitled to recover money damages, including costs and payments and all sums incurred by it or which may be incurred by it as a result of Knaak's fraud and misrepresentation, in excess of $90,000, with the full amount of Ancona Escrow's damages to be established at trial.

**COUNT IV**
**NEGLIGENT MISREPRESENTATION**

77.     Plaintiffs allege and incorporate all of the allegations from the preceding paragraphs.

78.     Knaak, in the course of a transaction in which he had a pecuniary interest, supplied false information or omitted material information to Ancona Escrow regarding the value of Ancona Title.

79.     Knaak failed to disclose and/or misrepresented to Ancona Escrow prior to the execution of the Sale Agreement the true facts regarding Ancona Title's liabilities. This information would have been discovered and communicated by an ordinary person in Knaak's position.

80.     Ancona Escrow relied on this false information and omissions in justifiably determining to enter into the Sale Agreement.

81.     Knaak's misrepresentations and omissions damaged Ancona Escrow and entitle Ancona Escrow to rescind and void the Sale Agreement and obtain a refund of all monies paid.

82.     In the alternative, Ancona Escrow has suffered pecuniary loss, and is entitled to recover money damages, including costs and payments and all sums incurred by it or which may be incurred by it as a result of Knaak's negligent misrepresentation, in excess of $90,000, with the full amount of Ancona Escrow's damages to be established at trial.

15

## COUNT V
## MINNESOTA SECURITIES ACT, MINN. STAT. § 80A.01

83.     Plaintiff alleges and incorporates all of the allegations from the preceding paragraphs.

84.     The Sale Agreement involved the sale of Ancona Title's stock to Ancona Escrow.

85.     The stock of Ancona Title are securities as defined by Minn. Stat. § 80A.14.

86.     At least three of the title files transferred with the sale of Ancona Title have liabilities that were previously undisclosed.

87.     Ancona Title and Knaak, as sole owner and operator of Ancona Title, knew and/or should have known of these liabilities prior to the execution of the Sale Agreement.

88.     Knaak represented to Ancona Escrow that obvious corrective measures had been taken to remedy these liabilities.  However, at the time of the execution of the Sale Agreement and the sale of stock, Knaak knew and/or should have known that these liabilities were not remedied.

89.     These liabilities are material to the value of Ancona Title.

90.     By failing to disclose and intentionally concealing the true nature and condition of Ancona Title's liabilities, Knaak materially misrepresented the value of Ancona Title.  By failing to disclose and intentionally concealing these material facts, Knaak intended to induce Ancona Escrow to purchase Ancona Title.

91.     Ancona Escrow justifiably relied on Knaak's misrepresentations and omissions, and executed the Sale Agreement to purchase the stock of Ancona Title.

92.     As a result of these misrepresentations and omissions, Ancona Escrow was misled in connection with its decision to purchase the stock of Ancona Title, in violation of the Minnesota Securities Act, Minn. Stat. § 80A.01.

16

93.     As a direct and proximate cause of this violation, Ancona Escrow is entitled to recover money damages, attorneys' fees, costs, and interest as permitted by Minn. Stat. § 80A.23, in excess of $90,000, with the full amount of Ancona Escrow's damages to be established at trial.

**COUNT VI**
**FRAUD, SECURITIES AND EXCHANGE ACT OF 1934,**
**SECTION 10(b) AND RULE 10b-5**

94.     Plaintiffs allege and incorporate all of the allegations from the preceding paragraphs.

95.     The Sale Agreement involved the sale of Ancona Title's stock to Ancona Escrow.

96.     Ancona Escrow's purchase of Ancona Title's stock involved the sale and purchase of a security within the meaning and intent of the Securities and Exchange Act of 1934 and the rules and regulations adopted pursuant thereto.

97.     At least three of the title files transferred with the sale of Ancona Title have liabilities that were previously undisclosed.

98.     Ancona Title and Knaak, as sole owner and operator of Ancona Title, knew and/or should have known of these liabilities prior to the execution of the Sale Agreement.

99.     Knaak represented to Ancona Escrow that obvious corrective measures had been taken to remedy these liabilities.  However, at the time of the execution of the Sale Agreement and the sale of stock, Knaak knew and/or should have known that these liabilities were not remedied.

100.    These liabilities are material to the value of Ancona Title.

101.    By failing to disclose and intentionally concealing the true nature and condition of Ancona Title's liabilities, Knaak materially misrepresented the value of Ancona Title.  By failing to disclose and intentionally concealing these material facts, Knaak intended to induce Ancona

17

Escrow to purchase Ancona Title.

102.    Knaak made these misrepresentations and omissions with the intent to induce Ancona Escrow to rely on them and purchase Ancona Title.

103.    These omissions and misstatements were material because they overstated the value of Ancona Title.

104.    These omissions and misstatements and the purchase of stock involved the use of interstate commerce.

105.    Ancona Escrow reasonably relied on Knaak's misrepresentations and omissions of material fact and as a result executed the Sale Agreement to purchase Ancona Title.

106.    But for these misrepresentations and omissions, Ancona Escrow would not have agreed to purchase Ancona Title.

107.    As a direct and proximate cause of this violation, Ancona Escrow is entitled to recover money damages, attorneys' fees, costs, and interest, in excess of $90,000, with the full amount of Ancona Escrow's damages to be established at trial.

### COUNT VII
### BREACH OF CONTRACT: SALE AGREEMENT

108.    Plaintiffs repeat and incorporate all of the allegations from the preceding paragraphs.

109.    Ancona Escrow acquired full ownership of Ancona Title under the terms of the Sale Agreement, including the name "Ancona" in the context of real estate services.  The Sale Agreement also required Knaak to cease using the names "Ancona Title and Services Corp." and "Ancona Title and Escrow."

110.    Defendants continue to use the name "Ancona" in the context of real estate services.

18

111.   By continuing to use the name "Ancona" in the context of real estate services, Knaak is in breach of the terms of the Sale Agreement.

112.   By failing to transfer Ancona Title's assets, including records and cash, Knaak is in breach of the terms of the Sale Agreement.

113.   As a direct and proximate cause of Knaak's breach of the Sale Agreement, Plaintiffs are entitled to recover money damages, including costs and payments and all sums incurred by it or which may be incurred by it as a result of Knaak's breach, in excess of $90,000, with the full amount of Plaintiffs' damages to be established at trial.

### COUNT VIII
### BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

114.   Plaintiffs repeat and incorporate all of the allegations from the preceding paragraphs.

115.   Knaak has an absolute duty of good faith and fair dealing to Ancona Escrow.

116.   As the sole owner of Ancona Title, Knaak had a duty to accurately disclose to Ancona Escrow the true nature and condition of Ancona Title's assets and liabilities.   This includes the duty to disclose the existence of any liabilities against Ancona Title.

117.   Before the execution of the Sale Agreement, Knaak failed to accurately disclose to Ancona Escrow the true nature and condition of Ancona Title's liabilities.

118.   By failing to accurately disclose the nature and condition of Ancona Title's liabilities before the execution of the Sale Agreement, Knaak breached the implied covenant of good faith and fair dealing.  These breaches are deliberate, willful, reckless and in bad faith, and were undertaken solely to protect his own pecuniary interests and without regard for his obligations under the Sale Agreement.

119.   As a direct and proximate cause of Knaak's bad faith breach of the Sale

19

Agreement, Ancona Escrow is entitled to recover money damages, including costs and payments and all sums incurred by it or which may be incurred by it as a result of Knaak's breach, in excess of $90,000, with the full amount of damages to be established at trial.

**COUNT IX**
**TRADE NAME INFRINGEMENT UNDER THE LANHAM ACT, 15 U.S.C. §§ 1051, ET**
**SEQ. AND COMMON LAW**

120.    Plaintiffs repeat and incorporate all of the allegations from the preceding paragraphs.

121.    Ancona Escrow purchased Ancona Title from Knaak, including the trade name "Ancona," and therefore owns and is the senior user of the distinctive name "Ancona" that is entitled to protection under 15 U.S.C. §§ 1051, *et seq.*

122.    Defendants continue to use the name "Ancona" without authorization.

123.    A likelihood of confusion exists in that the services of Plaintiffs and Defendants are similar, are marketed to the same consumers, and such consumers are likely to have been and in fact have been confused and unable to determine if the services are those of Plaintiffs or Defendants, or if Defendants' services have the endorsement, sponsorship or authorization of Plaintiffs.

124.    A likelihood of confusion exists because the trade name "Ancona" used by both Plaintiffs and Defendants is the same. Defendants have continued to use the trade name without authorization. It is likely that an individual viewing the trade name would assume that the services they represent are associated with Plaintiffs.

125.    A likelihood of confusion also exists because of (a) evidence of actual confusion in the marketplace found by Plaintiffs, (b) the strength and distinctiveness of the "Ancona" name, (c) the fact that Plaintiffs and Defendants' services are marketed through the same or substantially similar media and channels, to substantially the same consumers, and (d) that the

20

services of Plaintiffs and Defendants are substantially similar.

126.    Defendants' acts constitute infringement of Plaintiffs' common law service mark rights in the mark "Ancona," in violation of the Lanham Act and Plaintiffs' trade name rights at common law.

127.    Defendants' acts of trade name infringement have been committed with the intent to confuse and deceive.  Defendants knowingly and willfully draw upon the goodwill and reputation of the name in its business operations.

128.    Defendants' continued unauthorized acts of infringement have caused Plaintiffs damages, with the full amount of damages to be established at trial.

**COUNT X**
**UNFAIR COMPETITION UNDER THE LANHAM ACT AND COMMON LAW**

129.    Plaintiffs repeat and incorporate all of the allegations from the preceding paragraphs.

130.    Plaintiffs' trade name, "Ancona," is distinctive and therefore protectable.

131.    Defendants' unauthorized continued use of the name "Ancona" has caused a likelihood of confusion among consumers.

132.    Defendants used Plaintiffs' trade name with the intent to deceive consumers into believing that their services were approved by, sponsored by, or affiliated with Plaintiffs. Defendants' acts as alleged were committed with the intent to pass off and palm off Defendants' services as the services of Plaintiffs, and with the intent to deceive and defraud the public.

133.    Defendants' acts constitute unfair competition and have caused Plaintiffs damages, including without limitation, lost profits, harm to reputation, and cost to remediate the confusion and harm to goodwill and reputation to Plaintiffs.

134.    Defendants' acts constitute violations of 15 U.S.C. § 1125(a) and of the common

21

MP3 20166993.1

law.

**COUNT XI**
**MINNESOTA DECEPTIVE TRADE PRACTICES ACT**

135.    Plaintiffs repeat and incorporate all of the allegations from the preceding paragraphs.

136.    Plaintiffs own the trade name "Ancona."

137.    Defendants continue to use the name "Ancona" without authorization.

138.    As a result of Defendants' continued unauthorized use of the trade name, Defendants have caused a likelihood of confusion or misunderstanding as to the affiliation, connection, or association between Defendants and Plaintiffs.

139.    Such conduct constitutes deceptive trade practices under Minn. Stat. § 325.44 and common law.

140.    Such conduct has caused injury to Plaintiffs.

**COUNT XII**
**DECLARATORY RELIEF: INDEMNIFICATION UNDER**
**THE SALE AGREEMENT**

141.    Plaintiffs repeat and incorporate all of the allegations from the preceding paragraphs.

142.    Under the terms of the Sale Agreement, Knaak agreed to hold Plaintiffs harmless from any and all liability "as may have been or be incurred" for the title files transferred with the sale of Ancona Title.

143.    At least three of the title files transferred with the sale of Ancona Title have liabilities that were misrepresented to Plaintiffs.

144.    Knaak denies liability.

145.    An actual and justiciable controversy exists regarding Knaak's obligations under

22

the Sale Agreement.

146.     Pursuant to Minn. Stat. § 555.01, *et seq.*, and/or 28 U.S.C. § 2201 *et seq.*, Plaintiffs are entitled to a declaration that Knaak is responsible for indemnifying Plaintiffs against all liability that has or may be incurred in connection with the files transferred with the sale of Ancona Title.

## COUNT XIII
## DECLARATORY RELIEF: INDEMNIFICATION UNDER THE INDEMNIFICATION AGREEMENT

147.     Plaintiffs repeat and incorporate all of the allegations from the preceding paragraphs.

148.     On September 30, 2005, Knaak executed the Indemnification Agreement, in which he acknowledged financial responsibility and agreed to indemnify and hold Plaintiffs harmless from and against any and all losses and expenses incurred by Knaak in connection with "the Lawyers Title Claim or any matter related in any way thereto."

149.     Knaak denies liability.

150.     An actual and justiciable controversy exists regarding Knaak's obligations under the Indemnification Agreement.

151.     Pursuant to Minn. Stat. § 555.01, *et seq.*, and/or 28 U.S.C. § 2201 *et seq.,* Plaintiffs are entitled to a declaration that Knaak is responsible for indemnifying Plaintiffs against all losses and expenses incurred by Ancona Title Group Members.

## COUNT XIV
## BREACH OF FIDUCIARY DUTY

152.     Knaak, as President of Ancona Title, stood in a fiduciary relationship with Ancona Title.

153.     This fiduciary relationship imposed a duty on Knaak to act in the best interests of

23

Ancona Title.

154.    By failing to properly remedy the liabilities against Ancona Title, Knaak failed to act in the best interests of Ancona Title.  These negligent and careless acts damages the value of Ancona Title.

155.    Therefore, Knaak breached his fiduciary duty to Ancona Title.

156.    As a result, Ancona Title has suffered significant damage, including diminution in value.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that the Court enter judgment as follows:

1.    A Declaration that Plaintiffs and Defendants entered into a valid, enforceable and binding Settlement Agreement on November 30, 2005, and accordingly, Plaintiffs and Defendants are required to rescind the Sale Agreement.

2.    In the alternative to Counts I and II:

    a.    Rescission of the Sale Agreement;

    b.    A permanent injunction prohibiting Defendants and their affiliates, agents, servants and employees from directly or indirectly using the "Ancona" trade name, which is likely to cause confusion, mistake, or to deceive;

    c.    Declaratory judgment requiring Defendants to indemnify Plaintiffs;

    d.    For damages sustained by Plaintiffs by reason of Defendants' wrongful acts, including:

        (1)    Trade name infringement;

        (2)    Breach of contract

        (3)    Breach of fiduciary duty;

        (4)    Breach of duty of good faith and fair dealing;

        (5)    Fraud, under the Minnesota Securities Act and Securities and Exchange Act of 1934;

24

      (6)     Intentional misrepresentation;

      (7)     Negligent misrepresentation;

      (8)     Unfair competition and deceptive trade practices, in violation of federal, state and common law;

3.     An award of attorneys' fees;

4.     An award of costs and disbursements; and

5.     For any other relief as the Court deems just and reasonable.

Dated: _Feb. 6_ , 2006

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

By: _____
     Kevin M. Magnuson (#306599)
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Telephone: (612) 349-8242
Email: kmmagnuson@rkmc.com

25

## VERIFICATION BY PLAINTIFF

STATE OF MINNESOTA        )
                              )ss.
COUNTY OF        )

       Christopher Brown, being first duly sworn on oath, says that he is the sole shareholder of Ancona Escrow, the Plaintiff in the above-entitled action; that he has read the foregoing complaint and knows the contents thereof; and that the same is true to his own knowledge, except as to those matters therein stated on information and belief; and as to those matters he believes it to be true.

Dated: _Anuary 30_, 2006

                                                Christopher Brown

Subscribed and sworn to before me
This 30th day of _January_, 2006.



Notary Public

ERIN M. HARTMAN
Notary Public
Minnesota
My Commission Expires January 31, 2008