# PROMISSORY NOTE

*EXB*

Principal Amount: $ 90,000.00                                    Date:  July 25, 2005

For value received, the undersigned Ancona Escrow, Inc.. a Minnesota Corporation ("Promisor") promises to pay to the order of FREDERIC W. KNAAK (the "Payee") in Suite 800 at 3500 Willow Lake Boulevard in Vadnais Heights, Minnesota 55110 (or such other place as the Payee may designate in writing) the principal sum of NINETY THOUSAND AND NO/100 DOLLARS ($ 90,000.00), without interest except upon default and, then, at the rate of U.S. Bank's prime commercial lending rate/Twin Cities (MN) plus 1.5 percent (1 ½ %) until the amount in default is paid in full plus interest.

The principal amount plus any interest as stated shall be payable in full on or before January 1, 2006 (the "Due Date").  Payment shall be by six (6) equal installments of $ 15,000.00 (Fifteen Thousand and No/100 Dollars) consecutively due on or before the first calendar day in each successive month from August 2005 to January 2006, inclusive.

All payments are deliverable to the attention of Frederic W. Knaak at his address, above, or other designee of the Payee.  All payments shall also be in good funds, immediately available, in the legal currency of the United States or check or cashiers check for such funds.

Promisor may pre-pay the principal amount in full prior to the Due Date without penalty and with waiver of unaccrued interest. However, there shall be no grace period for late payment or to cure any default under or nonpayment of this Note. The Promisor waives presentment for payment, protest, and notice of protest and nonpayment of this Note.

This Note is given in purchase of certain shares of corporate common stock owned by Payee, in which his entire interest is reserved without partition until payment in full. Promisor is not entitled to prorated legal or equitable interests in those shares for any partial installments made.

If this Note is not paid by the Due Date, the Promisor promises to pay all cost of collection, including without limitation collection agency fees or commissions, and reasonable attorneys' fees whether or not a lawsuit is commenced as part of the collection process.

If any of the following events occur, then this Note and any other obligations of the Promisor to the Payee hereunder shall become due immediately, without demand or notice: (1) failure of the Promisor to timely pay in full each monthly installment as and when due; (2) failure of the Promisor to pay the principal and interest due in full on or before the Due Date; (3) the filing of bankruptcy proceedings involving the Promisor as a debtor; (4) the application for appointment of a receiver for the Promisor; (5) the making of a general assignment for the benefit of the Promisor's creditors; (6) the insolvency of the Promisor; or (7) the death or disability of the Promisor before the Due Date.

No extension or renewal of this Note, or delay in enforcing any rights of the Payee hereunder, or assignment of this Note by the Payee shall affect the liability of the Promisor.  All rights of the Payee under this Note are cumulative and may be exercised concurrently or consecutively at the Payee's option.  If any one or more of the provisions of this Note shall be determined to be unenforceable in whole or part, for any reason, then the remaining provisions shall remain fully operative.

This Note shall be made appurtenant to Memorandum of Understanding acknowledging the sale and transfer of all of Frederic W. Knaak's ownership in Ancona Title Services, Corp. to Ancona Escrow, Inc.. Any breech of said contract and or mutual covenants shall render this Note null and void.

This Note shall be construed in accordance with the laws of the State of Minnesota, U.S.A.

Signed this 25th day of July 2005 at Vadnais Heights, Minnesota, U.S.A.

Ancona Escrow, Inc.
4750 White Bear Parkway
White Bear Lake, MN 55110

By: Christopher H. Brown
It's President

SCANNED
FEB 0 6 2006
U.S. DISTRICT COURT MPLS

*Exh C*

 **LandAmerica**
**Commonwealth**

Commonwealth Land Title Insurance Company
7557 Rambler Road, Suite 1200
Dallas, TX 75231
phone: 214 346-7100  toll free: 800 925-0965
fax: 214 346-7270

September 20, 2005

Direct Dial  (214)  346-7271
E-Mail:dseag@landam.com

**Via UPS Next Day Air**

Mr. Frederick Knaak
President
Ancona Title Services Corp.
3500 Willow Lake Blvd.
Vadnis Heights, MN 55110

> Re: Ramsey County, Minnesota; LTIC Claim No: C039898
> LTIC Insured: Long Beach Mortgage
> Ancona Title Services Corp Commitment # 00101230
> Property Address: 392 S Lexington Ave, St. Paul, MN
> Mortgagor: Brian Todd Gore
> Subject Matter: *United States of America v 392*
>                 *Lexington parkway South et al*
>                 US DC Case No: 03-5818

Dear Mr. Knaak:

As you know, Lawyers Title Insurance Corporation ("Lawyers Title")
has been defending its insured lender in the above-referenced
lawsuit. The plaintiff, the United States of America, has asserted
that its forfeiture claim has priority over the lien of the
insured mortgage. Cross motions for summary judgment were recently
argued and a copy of the Court's Memorandum Opinion and Order is
enclosed. As you will see, at least with respect to the torrens
portion of the property, the Court found in favor of the USA.
However, as noted from outside counsel's correspondence, they
believe this Opinion is incorrect and they have recommended that
the insured appeal.

On May 5, 2004, I wrote you with regard to Ancona Title Services
Corp.'s ("Ancona") potential liability with regard to the losses
and expenses incurred by Lawyers Title with respect to this claim.
At that time, we requested that Ancona notify its Errors and
Omissions carrier of this claim. To date, I have not received any
confirmation that Ancona has made a claim with its carrier.

Up to this point, Lawyers Title has paid in excess of $65,000 in
legal expenses. While we believe the cost of the appeal will be
relatively minimal, we anticipate the overall legal expenses will
exceed $75,000. Of course, in the event the insured loses on
appeal, Lawyers Title may incur losses up to the amount of the
policy.

**SCANNED**
FEB 06 2006
U.S. DISTRICT COURT MPLS

CASE 3:06-cv-00504-DSD-SJC   Doc. 1-2   Filed 02/08/06   Page 3 of 23

September 20, 2005                                                    2
Mr. Frederick Knaak


Based on the foregoing, please provide confirmation of Ancona's
claim with its Errors and Omissions carrier. In addition, please
provide contact information for the representative of the carrier
who is responsible for Ancona's claim. At this time, it may also
be prudent for you to contact the carrier to discuss whether they
would like to consider contributing towards a settlement with the
USA. Of course, we will be happy to provide the carrier with any
claim documentation, including copies of the attorney billing
statements paid to date. If you have any questions with regard to
the above, please do not hesitate to contact me.

Sincerely,



David Stag
Assistant Vice President
Associate Claims Counsel

DS/bc

Enclosed: copies of pertinent correspondence and documents from
file.

cc: Ms. Ann Peterson
    Mr. Graham Lant

# LINDQUIST & VENNUM P.L.L.P.

4200 IDS CENTER
80 SOUTH EIGHTH STREET
MINNEAPOLIS, MN 55402-2274
TELEPHONE: 612-371-3211
FAX: 612-371-3207

IN DENVER
600 17TH STREET, SUITE 1800 SOUTH
DENVER, CO 80202-5441
TELEPHONE: 303-573-5900
FAX: 303-573-1956

ATTORNEYS AT LAW

www.lindquist.com

JAMES M. LOCKHART
(612) 371-3053
jlockhart@lindquist.com

September 13, 2005

Satbir K. Kohli
Loss Prevention/Asset Recovery
Washington Mutual
9451 Corbin Avenue
Northridge, CA 91324

**VIA E-MAIL AND MAIL**
**satbir.kohli@wamu.net**

Re:    *United States of America v. Real Property Located at 392 Lexington*
       *Parkway South*

Dear Sara:

Enclosed is a decision we received last week from the Federal District Court. Unfortunately, the Court did not rule in our favor. Instead, the Court concluded that the government's forfeiture claim has priority over the Long Beach mortgage.

We disagree with the Court's decision. Indeed, the Court really sidestepped the issues that we had raised in favor of Long Beach and the priority of its mortgage. The government's claim in this case with respect to the majority of the property is based on a nuance of the Minnesota torrens title law. Our argument was that under the plain language of the federal forfeiture statute in question, the Long Beach mortgage is prior to the government's claim and there is no need to look to state law. The Court never addressed this, but simply concluded, based on case law which predates the amendment of the federal forfeiture statute, that the Court was required to look to state law.

Regardless of that issue, we also argued that if the Court were to look to state law, under applicable state law the government is not entitled to the benefit of the torrens title statute because it was not a good faith purchaser for value. This issue was not addressed by the District Court either.

We will be discussing with Lawyers Title whether the Company wants us to appeal the District Court's decision, or bring the matter to resolution in some other fashion.

CASE 0:06-cv-00504-DSD-JJG Doc. 1-2 Filed 02/08/06 Page 5 of 23

## LINDQUIST & VENNUM P.L.L.P.

Satbir Kohli
September 13, 2005
Page 2

I will be in touch with you again as soon as I have had the opportunity to discuss the matter with Lawyer's Title. However, please do not hesitate to contact me if you have any questions or comments in the interim.

Very truly yours,

James M. Lockhart

JML/dal
Enclosure
cc:    Christopher R. Grote, Esq.

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,

                                        Plaintiff,

                                                        Civ. No. 03-5818 (RHK/JSM)
                                                        MEMORANDUM OPINION
                                                        AND ORDER

v.

392 Lexington Parkway South, St. Paul,
Minnesota, Ramsey County, with all
buildings, improvements,
fixtures and appurtenances thereto,

                                        Defendant,

v.

Long Beach Mortgage Company,

                                        Intervenor Defendant.

v

Mortgage Group III, LLC,

                                        Claimant,

v

Thomas William Gore,

                                        Claimant.

_____

James S. Alexander, Assistant United States Attorney, Minneapolis, MN, for the
Government.

Christopher R. Grote, Lindquist & Vennum, Minneapolis, MN, for Long Beach Mortgage
Company

Mark C. Hart, Courey, Kosanda & Zimmer, P.A., Golden Valley, MN, for Mortgage Group III, LLC.

## INTRODUCTION

Plaintiff United States of America (the "Government") seeks the civil forfeiture of Defendant real property located at 392 Lexington Parkway South, St. Paul (the "property"). Two mortgage companies have challenged the forfeiture and asserted claims to the property based on mortgage agreements they entered into with Brian Gore (then the owner of the property). Each party has moved for summary judgment; the Government claims that the mortgage companies cannot establish that they are innocent owners of the property, and each of the mortgage companies claims that its interest in the property is superior to the interests of the other. The Government has also moved for default judgment and for a final order of forfeiture. For the reasons that follow, the Court determines that the mortgage companies are not innocent owners of a portion of the property, and that portion of the property is subject to forfeiture.

## BACKGROUND

On October 22, 2003, Brian Gore, then the titled owner of the property, pled guilty in this Court to possession with intent to distribute in excess of 500 grams of cocaine. This civil forfeiture action followed on the ground that the subject property was "used to facilitate the drug trafficking activities of Brian Gore." (Government's Mem. in Supp. at 1.) Gore had obtained two mortgage loans secured by the property prior to October 2003, both of which gave rise to competing claims to the property now. Because the time-line of

2

SEP-22-2005 THU 02:40 PM KNAAK AND KANTRUD PA    FAX NO. 6514808078    P. 07

events is critical in determining whose interests in the property are valid and to what extent, the undisputed facts as alleged are set forth in greater detail below.

On October 24, 2002, Gore recorded a contract for deed with the Ramsey County Recorder and Ramsey County Registrar of Titles by which he purchased the property from his father for $100,000. The property is part Torrens and part abstract property.[1]

On November 13, 2002, Gore obtained a mortgage in the amount of $180,000 from Intervenor/Claimant Long Beach Mortgage Corporation ("Long Beach"). The Long Beach mortgage was not recorded or registered at that time.

On August 14, 2003, after two garbage searches at the property and numerous complaints from neighbors, St. Paul police officers executed a search warrant at the property during which they found illegal drugs. On September 3, 2003, Gore was indicted on drug charges stemming from an investigation and search of the property.

On September 22, 2003, Gore obtained another mortgage on the property from Claimant Mortgage Group III, LLC ("MGIII")[2], in the amount of $24,711. The MGIII mortgage was not recorded or registered at that time. Prior to issuing the MGIII mortgage to Gore, Sean Mulcahy, the manager of MGIII, visited the property. Mulcahy did not notice

_____

[1] The property consists of the North 50 feet of Lots 12, 13, 14, and 15, Block 19, Ridgewood Park Addition, Ramsey County, Minnesota (Torrens Certificate No. 521412); and 1 of 16, Block 19, Ridgewood Park Addition to the City of St. Paul, Ramsey County, Minnesota (abstract property). (See Fedo Aff. Ex. A.) The majority of the property is Torrens property - that portion of the property includes both the house and the garage. (See Hr'g Tr. at 5.) The abstract portion of the property consists of "a strip of grass and perhaps some shrubs in the backyard." (Id.)

[2] Long Beach and MGIII will be referred to herein collectively as "Claimants."

3

SEP-22-2005 THU 02:40 PM KNHHK HND KHNTKUD PH          FHX NO. 6514906070          P. 06
CASE 0:06-cv-00504-DSD-JJG   Doc. 1-2   Filed 02/06/06   Page 9 of 23

Case 0:03-cv-05818-RHK-JSM    Document 120    Filed 09/07/2005    Page 4 of 18

anything unusual or see any evidence of drug trafficking during the visit. (See Mulcahy Dep. Tr. at 79-82.) Nor did Gore inform Mulcahy of his involvement with illegal drug activity. (Id. at 89-90.)

On November 3, 2003, the Government filed a Complaint for Forfeiture *In Rem* against the property, and on November 7, 2003, it filed a notice of lis pendens with the Ramsey County Recorder and with the Ramsey County Registrar of Titles against the property. The notice of lis pendens stated that "the purpose of this action is for the forfeiture of the defendant real property." (Fedo Aff, Exs. C, D.) On November 22, 2003, the U.S. Marshal posted the property with a Notice of Complaint of Forfeiture and served the parties who appeared on record to have a potential interest in the property with a summons and copy of the Complaint.[3] The U.S. Attorney's Office also published notice of the forfeiture action in *Finance and Commerce*, Minneapolis, Minnesota, on November 25, December 2, and December 9, 2003.

On December 5, 2003, the MGIII mortgage was filed with the Ramsey County Recorder and with the Ramsey County Registrar of Titles. On May 17, 2004, MGIII was served with the Complaint in this action by the U.S. Marshall.

In late 2003, Gore defaulted on his Long Beach mortgage payments and, in December 2003, Long Beach began preparing to foreclose on its mortgage. In conjunction with that preparation, Long Beach discovered that its mortgage had not been recorded. In

---

[3]Neither of the Claimants were served at that time.

4

April 2004, the Long Beach mortgage was filed with the Ramsey County Recorder and with
the Ramsey County Registrar of Titles. On June 9, 2004, Long Beach moved to intervene
in this action (Doc. No. 16), and that Motion was granted on July 9, 2004 (Doc. No. 28).
Long Beach asserts that it "did not know of the conduct of Brian Todd Gore giving rise to
[the Government's] Complaint for Forfeiture in Rem." (Long Beach Verified Statement ¶
6.)

## STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences favorable to the
nonmoving party, there is no genuine issue as to any material fact and the moving party is
entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477
U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).
The moving party bears the burden of showing that the material facts in the case are
undisputed. See Celotex, 477 U.S. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety
Servs., 224 F.3d 735, 738 (8th Cir. 2000). The court must view the evidence and the
inferences that may be reasonably drawn from it, in the light most favorable to the
nonmoving party. See Graves v. Arkansas Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th
Cir. 2000). Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The
nonmoving party may not rest on mere allegations or denials, but must show through the
presentation of admissible evidence that specific facts exist creating a genuine issue for
trial. See Anderson, 477 U.S. at 256; Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th
Cir. 1995)

### ANALYSIS

The civil forfeiture statute, 21 U.S.C. § 881(a)(7), authorizes the Government to

institute forfeiture proceedings against real property that is used to commit and/or to

facilitate the commission of a drug felony.[4] Section 881 is subject to the standards set

forth in the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C. § 983.[5] See

U.S. v. Dodge Caravan SE/Sport Van, 387 F.3d 758, 761 (8th Cir. 2004). Under § 983(c),

the Government has the initial burden of proving by a preponderance of the evidence that

the property is subject to forfeiture. Id. Where the Government's theory of forfeiture is

that the property was used to facilitate the commission of a crime, "the Government shall

establish that there was a substantial connection between the property and the offense." Id.;

18 U.S.C. § 983(c)(3).

There is no dispute that the Government has met its burden of establishing a

substantial connection between the property and Gore's drug felony. (See, e.g., Chung Aff.

¶¶ 2-5; Barber Aff. ¶¶ 2-6; see also Gov't Mem. in Supp. at 11-15 (discussing extensive
_____

[4]Section 881(a)(7) provides for the forfeiture of:

[a]ll real property, including any right, title, and interest (including any
leasehold interest) in the whole of any lot or tract of land and any
appurtenances or improvements, which is used, or intended to be used, in any
manner or part, to commit, or to facilitate the commission of, a violation of
this subchapter punishable by more than one year's imprisonment . . . .

[5]In 2000, Congress enacted CAFRA in part "to make federal civil forfeiture
procedures fair to property owners and to give owners innocent of any wrongdoing the
means to recover their property and make themselves whole after wrongful government
seizures." United States v. One Lincoln Navigator, 328 F.3d 1011, 1012 (8th Cir. 2003)
(internal quotation omitted).

6

SEP-22-2005 THU 03:06 PM KNAAK AND DENTRUP PA  FAX NO. 6514909978  P. 11

evidence linking the property to Gore's drug offenses).) This shifts the burden to

Claimants to refute the Government's case. Under CAFRA, Claimants may do this by

proving that they are innocent owners of the property and, in that case, the property is not

subject to forfeiture. 18 U.S.C. § 983(d). Claimants assert that they are innocent owners

of the property under CAFRA, and Long Beach asserts that its interest in the property is

superior to MGIII's interest. The Government responds that Claimants do not satisfy the

requirements of the innocent owner exception as to the Torrens portion of the property.[6]

The Court will first consider whether Claimants fall under the innocent owner exception to

the forfeiture, and then consider the priority of Claimants' interests as between each other.

## I.    Claimants' Ownership Interests in the Property

In the context of civil forfeiture actions, the ownership interests of those parties

contesting the forfeiture are often considered on two levels. First, a claimant must have

---

[6]The Government also claims that Claimants' claims should be dismissed in their
entirety as untimely under 18 U.S.C. § 983(a)(4)(A), which provides that a claim against
seized property "may be filed not later than 30 days after the date of service of the
Government's complaint, or, . . . not later than 30 days after the date of final publication of
notice of the filing of the complaint." While the Government's argument is compelling
given Claimants' failure to meet the statutory deadlines, as discussed below, Claimants have
proven the existence of a meritorious defense to the forfeiture of the abstract portion of
the property, which weighs against the Court imposing the requirements of § 983(a)(4)(A)
at this point. See U.S. v. Ford 250 Pickup, 980 F.2d 1242, 1245 (8th Cir. 1992) (noting
that "the party attempting the untimely filing [in a civil forfeiture action] must show
excusable neglect or a meritorious defense" (citation omitted)). Under these
circumstances, Claimants' failure to meet the filing deadlines imposed by § 983(a)(4) will
be excused.

7

SEP-22-2005 THU 02:41 PM KNAAK AND KANTRUD PA    FAX NO. 8514008078    P. 12

Article III standing, as this "is a threshold question in every federal court case." United States v. One Lincoln Navigator, 328 F.3d 1011, 1013 (8th Cir. 2003). "In a forfeiture case, a claimant's Article III standing turns on whether the claimant has a sufficient ownership interest in the property to create a case or controversy." Id. Eighth Circuit law is clear that, in the context of the Article III standing inquiry, "ownership interests are defined by state law." U.S. v. Premises Known as 7725 Unity Ave. N., 294 F.3d 954, 956 (8th Cir. 2002). Here, there is no dispute that the Claimants have Article III standing to oppose the forfeiture of the property. See also id.

The merits of Claimants' claims, however, turn on the separate question of whether, under CAFRA, each has "an 'innocent owner's interest' in the property that 'shall not be forfeited.'" One Lincoln Navigator, 328 F3d at 1014 (quoting 18 U.S.C. § 983(d)(1)). The interpretation of the innocent owner defense is at the heart of the instant dispute.[7] Thus, the Court will lay out the pertinent provisions of the statute in detail below:

> (d) Innocent owner defense.
>
> > (1) An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute. The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence.
> >
> > (2)(A) With respect to a property interest in existence at the time the illegal conduct giving rise to forfeiture took place, the term "innocent

---

[7]Prior to the enactment of CAFRA, an owner of real property could assert an innocent owner defense under 21 U.S.C. § 881(a)(7) by showing that the act or omission forming the basis of the forfeiture was committed "without the knowledge or consent of that owner."

8

owner" means an owner who—

    (i) did not know of the conduct giving rise to forfeiture;

****

(3)(A) With respect to a property interest acquired after the conduct giving rise to the forfeiture has taken place, the term "innocent owner" means a person who, at the time that person acquired the interest in the property—

    (i) was a bona fide purchaser or seller for value . . .; and
    (ii) did not know and was reasonably without cause to believe that the property was subject to forfeiture.

****

(6) In this subsection, the term "owner"—

    (A) means a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest; and
    (B) does not include -

        (i) a person with only a general unsecured interest in, or claim against, the property or estate of another; . . . or

****

        (iii) a nominee who exercises no dominion or control over the property.

18 U.S.C. § 983(d) (2004) (emphasis added).

The dispositive issue to be resolved by the Court is whether Claimants' "property interests" under CAFRA arose before or after the Government recorded its notice of lis pendens. The Government argues that, just as in the Article III context, ownership interests under CAFRA are defined by the law of the state in which the interest arose. Under the Government's theory, Long Beach and MGHI did not acquire their respective ownership interests in the property until after the lis pendens was filed (i.e., when they filed their mortgages with Ramsey County). Under this argument, Claimants would not qualify as

9

SEP-22-2005 THIS 02:42 PM KNAA4 AND SANTRUB P Doc. 1-2 FAX NO. 02506206078 age 15 of 23 P. 14

innocent owners because they knew or had cause to know that the property was subject to forfeiture at the time they acquired their ownership interests. See 18 U.S.C. § 893(d)(3)(A); Shrom v. Palatine Nat'l Bank of Palatine, Illinois, 921 F.2d 836, 840 (8th Cir. 1991) (noting that a "lis pendens gives notice of the lien to any subsequent purchaser and prevents that purchaser from being a bona fide purchaser who can avoid the lien").

The Claimants, however, urge the Court to look no further than the plain language of CAFRA, which provides that an "owner . . . means a person with an ownership interest in the specific property sought to be forfeited, including a . . . mortgage . . . ." 18 U.S.C. § 983(d)(6)(A) (emphasis added). Claimants contend that this provision of the statute establishes their interest in the property without regard to state law. Under this theory, Claimants acquired their respective property interests before the lis pendens was filed (i.e., when the mortgage agreements were executed), and they do qualify as innocent owners because there is no dispute that prior to the lis pendens being filed, neither claimant had any knowledge of Gore's illegal conduct. The Court must first determine how Claimants' ownership interests are to be determined under CAFRA, and then consider whether Claimants' qualify as innocent owners pursuant to the statute.

    a.    The Role of State Law Under CAFRA

The Eighth Circuit recently considered the innocent owner defense under CAFRA in One Lincoln Navigator, 328 F.3d 1011. The court noted that the relevant inquiry under CAFRA "to resolve . . . innocent owner claims, [is] who has an ownership interest in the [property] within the meaning of 18 U.S.C. § 983(d)(6)(A)." Id. at 1014. In discussing the

10

SEP-22-2005 THU 02:42 PM KNAAK AND KANTRUD PA Doc. 1-2 FAX NO. 0514908078 age 16 of 23 P. 15

likely arguments of the parties, the court referenced state law and noted that "[o]wnership

interests are defined by state law."⁸  Id. at 1014-15.  Further, the Court stated that "this

aspect of the case is akin to a quiet title action to determine the respective ownership

interests" of the parties.  Id. at 1015 (citation omitted).  The court also cited a pre-CAFRA

case, United States v. Tracts 10 & 11 of Lakeview Heights, 51 F.3d 117, 120-21 (8th Cir.

1995), which relied on state law to define the property interests of parties contesting a

forfeiture.  In following these two decisions, the Court determines that state law must be

referenced to determine the extent of Claimants' ownership interests under CAFRA.

    This determination is bolstered by the analysis the Court must conduct in order to

evaluate the merits of Claimants' claims.  The relevant question for purposes of

determining who qualifies as an innocent owner is when does an ownership interest arise;

CAFRA distinguishes between owners whose property interest was in existence at the time

the illegal conduct giving rise to the forfeiture occurred. 18 U.S.C. § 983(d)(2)(A), and

owners whose property interest was acquired after the conduct giving rise to the forfeiture

occurred, id. at § 983(d)(3)(A).⁹  The non-exhaustive list of ownership interests included in

_____

    ⁸ The court noted that a state law determination of property interests was subject to
the exception specified in CAFRA that "'a nominee who exercises no dominion or control
over the property' may not be an innocent owner."  One Lincoln Navigator, 328 F.3d at
1015 (quoting CAFRA).  CAFRA lists three interests in property, including the above-
mentioned, that do not qualify as ownership interests under the statute.  18 U.S.C.
§ 983(d)(6)(B)(i)-(iii).  These exclusions codify the majority rule in pre-CAFRA case law.
Stefan D. Cassella, The Uniform Innocent Owner Defense to Civil Asset Forfeiture, 89 Ky.
L.J. 653, 679-80 (2001).

    ⁹ In the instant action, if Claimants' interest arose after the lis pendens was filed,
Claimants cannot meet the requirement that they "did not know and [were] reasonably

11

CAFRA, id. at § 983(d)(6), cannot supplant the role of state law in defining when and under

what circumstances ownership interests in real property arise.

That state law must still be referenced in forfeiture proceedings also makes sense

given the complex nature of property rights and the lack of any detailed definition of those

rights in CAFRA. In the context of the criminal forfeiture statute, the Sixth Circuit stated

that

> because forfeiture proceedings implicate property rights which have
> traditionally been measured in terms of state law, and because [the criminal
> forfeiture statute] contains no rule for determining the scope of property
> rights, it is appropriate to refer to state law in determining the nature of the
> property interest involved in a forfeiture proceeding.

United States v. Harris, 246 F.3d 566, 571 (6th Cir. 2001) (internal quotation omitted).

CAFRA is not equipped to define the scope of property interests sufficiently to determine

when a given interest in real property arose.[19]

#### b.    The Abstract Portion of the Property

As mentioned above, the property is part Torrens property and part abstract property.

(See Gov't Mem. in Supp. at 2; Fedo Aff. Ex. A.) The distinction between the two types of

property is significant because Minnesota law establishes that when an interest in land is

created depends on the type of property at issue. See, e.g., Chaney v. Minneapolis Cmty.

_____

without cause to believe that the property was subject to forfeiture." 18 U S C
§ 983(3)(A)(ii).

[19]As one commentator noted in discussing CAFRA, "state law is used to determine
what interest, if any, a claimant has in forfeitable property, while federal law determines
whether that interest is sufficient to defeat the Government's interest in the property under
the federal forfeiture statute." Cassella, 89 Ky. L.J. at 678.

12

Dev. Agency, 641 N.W.2d 328, 335 (Minn. Ct. App. 2002) (distinguishing between Torrens and non-Torrens property). There is no dispute that, under Minnesota law, Long Beach and MGIII each acquired an ownership interest in the abstract portion of the property at the time they closed on their respective mortgages. (Gov't Reply Mem. at 8.) See Chaney, 641 N.W.2d at 335; see also Fingerhut Corp. v. Suburban Nat'l Bank, 460 N.W.2d 63, 65 (Minn. Ct. App. 1990). Thus, the Court must apply CAFRA to determine whether Claimants are innocent owners under the statute.

Long Beach closed on its mortgage on November 13, 2002, and there is no allegation that Brain Gore was engaged in the illegal conduct giving rise to the forfeiture at that time. Under CAFRA, because its property interest was in existence at the time of the illegal conduct, Long Beach must prove that it "did not know of the conduct giving rise to" the forfeiture. 18 U.S.C. § 983(d)(2)(A)(i). Long Beach has met its burden—there is no dispute that it did not know of Gore's illegal conduct when the parties closed on the mortgage. (See Long Beach Verified Statement ¶ 6; Long Beach Ex. O ¶ 8.)

MGIII closed on its mortgage on September 22, 2003. At that time, Gore had been indicted for the illegal conduct giving rise to this forfeiture proceeding. Because MGIII obtained its property interest after the illegal conduct, it must prove that at the time it acquired its interest in the property it was a "bona fide purchaser or seller for value" and "did not know and was reasonably without cause to believe that the property was subject to forfeiture." 18 U.S.C. § 983(d)(3)(a)(i)-(ii). There is no dispute that MGIII was a bona

13

fide purchaser for value.[11] Furthermore, MGIII has presented sufficient undisputed

evidence to meet its burden of proving that it did not know or have reason to believe that

Gore had engaged in illegal conduct. (See, e.g., Mulcahy Dep. Tr. at 43-44, 79-82

(explaining that Mulcahy, on behalf of MGIII, inspected the property and did not see any

evidence of illegal drug activity); id. at 89-90 (Mulcahy testified that he was not aware of

Gore's involvement with illegal drug activity).) Accordingly, each Claimant has

successfully established that it is entitled to the protection of CAFRA's innocent owner

defense with respect to the abstract portion of the property, and its interest in that portion

of the property is not subject to forfeiture.

####      c.      The Torrens Portion of the Property

Under Minnesota law, when Torrens property is at issue, the act of registration is the

operative act that creates an interest in the land. Thus, "[t]he necessity of registration to

create an interest in the land is what distinguishes registered, or Torrens, property from

abstract property." Fingerhut Corp., 460 N.W.2d at 65 (emphasis in original). As the

Eighth Circuit stated in a recent forfeiture case with facts similar to those at issue here,

"[b]ecause only the act of registration creates an interest in land, [the claimant] had no legal

interest in the property before it registered its mortgage." 7725 Unity Ave. N., 294 F.3d at

---

[11]On September 22, 2003, MGIII tendered Gore \$22,500 in exchange for a mortgage interest on the property. See Anderson v. Graham Inv. Co., 263 N.W.2d 382, 384 (Minn. 1978) (defining bona fide purchaser as "one who gives consideration in good faith without actual, implied, or constructive notice of inconsistent outstanding rights of others" (citation omitted)). (See also Hr'g Tr. at 8 ("The government does not contend that [Claimants] are not bona fide purchasers.") )

14

957 (decided under the pre-CAFRA statute). Because the Government filed the lis pendens before either claimant registered its mortgage, Minnesota law is clear that Long Beach and MGIII's interests in the Torrens portion of the property are junior to the Government's interest. Id. Having determined that Claimants' ownership interests in the Torrens portion of the property did not arise until each registered its mortgage, the Court must again apply CAFRA to determine whether Claimants are innocent owners under the statute.

The Government filed its notice of lis pendens on November 7, 2003. The notice of lis pendens stated that "[t]he purpose of this action is for the forfeiture of the defendant real property." (Fedo Aff. Exs. C, D.) Both Claimants registered their mortgages after the notice of lis pendens was filed; MGIII registered its mortgage on December 5, 2003, and Long Beach registered its mortgage on April 2, 2004. Because Claimants' interests in the Torrens portion of the property arose after "the conduct giving rise to the forfeiture" took place, each must prove that at the time it acquired an interest in the property it "(i) was a bona fide purchaser or seller for value" and that it "(ii) did not know and was reasonably without cause to believe that the property was subject to forfeiture." 18 U.S.C. § 983(d)(3)(a)(i)-(ii).

Each Claimant has failed to meet the second prong of the innocent owner defense—that it did not know and was reasonably without cause to believe that the property was subject to forfeiture. The Government's notice of lis pendens provided notice to Claimants as a matter of law that the property was subject to forfeiture. Under Minnesota law, a properly recorded notice of lis pendens gives constructive notice from the date it is

15

filed. See Minn. Stat. § 508.48 (every instrument which would affect title to unregistered land if recorded with county recorder, shall affect registered land when registered with the county registrar of titles, "and shall be notice to all persons from the time of such registering or filing of the interests therein created"); Fingerhut Corp., 460 N.W.2d at 68 (noting that mortgagee had "constructive notice of the litigation from the date the notice of lis pendens was recorded"). Accordingly, because Claimants' ownership interest in the Torrens portion of the property arose after the Government filed its notice of lis pendens, they are not innocent owners under CAFRA as to that portion of the property.

## II.    The Priority of Long Beach and MGIII's Mortgages

Long Beach has also moved for summary judgment against MGIII, claiming that its mortgage is "prior and superior" to the MGIII mortgage. While Long Beach closed on its mortgage over a year before MGIII secured its mortgage, MGIII filed and registered its mortgage before Long Beach did the same with its mortgage. Under the recording statutes, Minn. Stat. §§ 507.34 and 508.25, the MGIII mortgage would have priority over the Long Beach mortgage because it was filed and registered first. However, Long Beach claims that MGIII had actual notice of the Long Beach mortgage before MGIII closed on its mortgage; actual notice would negate any benefit MGIII would have derived from recording its mortgage first, and Long Beach would have the priority mortgage. See Chergosky v. Crosstown Bell, Inc., 463 N.W.2d 522, 524 (Minn. 1990); Alchemedes/Brookwood, Ltd. P'ship, 546 N.W.2d 41, 42 (Minn. Ct. App. 1996).

In support of its contention that MGIII had actual notice of the Long Beach

16

SEP-22-2005 THU 02:40 PM KNAPP AND ANDERSON PA Doc. 1-2 FAX NO. 05/09 078 Page 22 of 23  P. 21

mortgage, Long Beach cites to Gore's testimony that he notified Sean Mulcahy, the

manager of MGIII, of the Long Beach mortgage prior to MGIII granting its mortgage to

him. (Gore Dep. at 85-86.) Gore also stated that he likely provided MGIII with a copy of

the Long Beach mortgage prior to closing on the MGIII mortgage. (Id.) However, Mulcahy

testified that he did not recall Gore ever informing him of the Long Beach mortgage

(Mulcahy Dep. Tr. at 34), and he maintains that, at the time of the MGIII mortgage, he "had

no knowledge of the existence of any mortgage given by . . . Gore to Long Beach"

(Mulcahy Aff. ¶ 2). Because of this conflicting testimony, the Court determines that

genuine issues of material fact preclude summary judgment on the issue of whether MGIII

had actual knowledge of the Long Beach mortgage at the time the MGIII mortgage was

executed.

## CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein IT IS

ORDERED that:

(1)     Claimant Mortgage Group III, L.L.C.'s Motion for Summary Judgment (Doc.
        No. 59) is GRANTED IN PART, as follows—the Motion is GRANTED with
        respect to the abstract portion of the property, and DENIED with respect to
        the Torrens portion of the property;

(2)     Intervenor/Claimant Long Beach Mortgage Company's Motion for Summary
        Judgment (Doc. No. 64) is GRANTED IN PART, as follows—

        (a)     the Motion is GRANTED with respect to the abstract portion of the

17

property, and DENIED with respect to the Torrens portion of the

property; and

    (b)    the Motion is DENIED as to Mortgage Group III; and

(3)    Plaintiff United States of America's Motion for Default Judgment, for

Summary Judgment, and for an Order of Forfeiture (Doc. No. 76), is

**GRANTED IN PART AND DENIED IN PART**, as follows ---

    (a)    the Motion for Default Judgment against all persons and entities who

have not filed a verified claim for the property and an answer to the

Complaint for Forfeiture is GRANTED;

    (b)    the Motion for Summary Judgment against Mortgage Group III and

Long Beach is GRANTED with respect to the Torrens portion of the

property, and DENIED with respect to the abstract portion of the

property; and

    (c)    the Motion for an Order of Forfeiture is GRANTED with respect to

the Torrens portion of the property, and DENIED with respect to the

abstract portion of the property.

Dated: September _7_, 2005

                        s/Richard H. Kyle
                        RICHARD H. KYLE
                        United States District Judge