Law Offices
1400 AT&T Tower
901 Marquette Avenue
Minneapolis, MN 55402-2859
Telephone: (612) 305-1400
Facsimile: (612) 305-1414


www.mcmlaw.com

Timothy J. Grande
Attorney at Law
612-305-1430
tjg@mcmlaw.com

Exh H



August 5, 2005

Ancona Title Services, Corp.
3500 Willow Lake Boulevard, Ste. 800
Vadnais Heights, MN 55110

Re: Wells Fargo Home Mortgage, Inc.
Our File No. 89642-29
CLTIC No. C11309
Your File No. 0050020
Ancona Property: 11201 Wood Hill Lane, Blaine, Minnesota

Dear Madam or Sir:

I represent Lawyers Title Insurance Company the underwriter on a title policy written by Ancona under your Commitment Number 00050020. The above identified information should identify the correct file. As you may know, the mortgage and transaction which you closed did not result in the mortgage of Wells Fargo becoming a first lien on the property. Other mortgages, evidently, have been filed prior to the Wells Fargo mortgage. We have been communicating with a Frederick Knaak. Mr. Knaak, we believed, was representing Ancona Title in this matter. Mr. Knaak indicated that the ProGrowth mortgages which were filed in advance of the Wells Fargo mortgages were, to his understanding, subordinate to the Wells Fargo mortgage. He now claims that he does not represent Ancona Title and is not pursuing the matter any further. Please contact the undersigned immediately. If someone has obtained the subordinations from ProGrowth, as indicated by Mr. Knaak, please forward them to us. We need to have that information as soon as possible. Again, please contact the undersigned immediately in response to this letter.

Very truly yours,

MACKALL, CROUSE & MOORE, PLC

By
Timothy J. Grande

c: Sally A. Sherman, Esq.
   Thomas J. Reiter, Esq.
   Avonda Davis
   Frederick Knaak, Esq.

TJG/mad/753077v1

SCANNED
FEB 0 6 2006
U.S. DISTRICT COURT MPLS

# KNAAK & KANTRUD, P.A.
Attorneys at Law

Exh I

Frederic W. Knaak*
H. Alan Kantrud**

*Also Licensed in
Wisconsin & Colorado
**Rule 114 Qualified ADR Civil Neutral

3500 Willow Lake Blvd., Suite 800
Vadnais Heights, MN 55110
Telephone: (651) 490-9078
Facsimile: (651) 490-1580

*Of Counsel*
Donald W. Kohler
Joseph B. Marshall
Thomas M. Dailey, P.A.

August 8, 2005

Mr. Timothy J. Grande, Esq.
Mackall, Crounse & Moore, PLC
1400 AT&T Tower
901 Marquette Avenue
Minneapolis, MN 55402-2859
(BY FACSIMILE @612-305-1430 & U.S. MAIL)

RE: Your File Number 89642-29
    Your Correspondence of August 5, 2005

Dear Mr. Grande:

I have forwarded your correspondence to Ancona Title.

As I stated to you, this office no longer represents Ancona Title on an ongoing basis as it had in the past. That was a categorical statement and was intended to reflect this office's understanding of its role with respect to all Ancona Title legal matters.

This afternoon, however, it was communicated to us that we were to continue to represent Ancona on this file. We have agreed to do so. The file will be returning to my office and I will attempt to contact you directly tomorrow.

Obviously, there was considerable confusion on this matter on this end. I apologise for any confusion it may have caused you. I will follow up with Progrowth and let you know the status of those discussions, as well.

If you do have other files involving Ancona Title in your office, however, I would not expect this office's involvement in those cases.

Sincerely,

Frederic W. Knaak
Attorney at Law

CC: Ancona

# BRIGGS AND MORGAN

PROFESSIONAL ASSOCIATION

2200 IDS CENTER
80 SOUTH EIGHTH STREET
MINNEAPOLIS, MINNESOTA 55402
TELEPHONE (612) 977-8400
FACSIMILE (612) 977-8650

WRITER'S DIRECT DIAL

(612) 977-8438

WRITER'S E-MAIL

kmagnuson@briggs.com

November 30, 2005

Exh J

Frederic W. Knaak
KNAAK & KANTRUD, P.A.
3500 Willow Lake Blvd., Suite 800
Vadnais Heights, MN 55110

Re: **Ancona Title**

Dear Fritz:

I have received your letter dated November 22, 2005 attaching your letter dated October 4, 2005 to St. Paul Fire and Marine Insurance Company ("St. Paul Fire") and attaching a copy of the professional liability insurance policy. Thank you. I note that when you say "the claim is being handled for the Saint Paul Fire and Marine by Ms. Marcia Warren" you mean that you submitted the claim but that St. Paul Fire has not accepted the claim nor acknowledged coverage.

I noted in your letter to St. Paul Fire that you mentioned that Chris Brown recently orally advised Title Program Administrators of the claim. I understand that Chris called the agent (Nancy, I believe) to enquire what he should be doing in light of the unusual circumstances present by the fact that Chris inherited this problem with the purchase of Ancona Title. He explicitly informed you that this conversation did not constitute notice because he lacked sufficient factual information to give notice and that he understood that you would be tendering official notice of the insurance claim. Your letter also omitted the fact that you, according to our telephone conversation at the end of September, orally notified the agent over a year ago. Please send a letter informing St. Paul Fire of that fact and the date of your notice with a copy to me. Also, if you have a phone number for Ms. Warren, I would appreciate it if you could email that number to me.

Your letter also referenced a refrigerator and conference table, which you stated that the Holstads "took without permission" upon my advice. I know nothing of these things, nor have advised anyone that they could take anything without making arrangements with you first. For the record, however, the contract between you and Chris for the sale of Ancona Title requires that you "transfer all shares, books, title files and assets of Ancona Title to Ancona Escrow." Any and all property belonging to Ancona Title should be transferred to Chris immediately. Thus, I am puzzled by your statement that you are "giving about $2,000 in signage to Chris Brown without other compensation." Clearly, the Ancona Title sign is an asset belonging to

BRIGGS AND MORGAN

Frederic W. Knaak
November 30, 2005
Page 2

Ancona Title and under no circumstance would you be entitled to any costs associated with transferring it to Ancona Title.

I have a number of additional concerns I need to address:

1. Use of the name "Ancona"

The use of "Ancona West" in association with North Oaks Title has created actual confusion with the names Ancona Title and Ancona Escrow, as is evidenced in part by the fact that Ancona Title continues to receive mail addressed to Ancona West as a result of confusion by companies, clients, government agencies and the U.S. Postal Service. It is in the business interests of both you and Chris to end this confusion. Thus, this letter is a Cease and Desist Letter demanding that you immediately cease and desist from all uses of the name "Ancona" in relation to any real estate services.

The sole purpose of Ancona West was to write title insurance in Arizona. At the time of the sale, however, Ancona West had not done anything — it had not conducted any business or marketing whatsoever and did not even have an escrow license. Ancona Title and Ancona Escrow were the first to use the mark "Ancona" in the real estate services. As such, they are the senior users of "Ancona."

The Memorandum of Understanding and Contract for Sale of Shares and Assets and Indemnification Agreement ("Purchase Agreement") transferred all assets of Ancona Title to Ancona Escrow, including use of the name "Ancona" in the context of real estate services. The Purchase Agreement also prevents you from using the name "Ancona Title and Services, Corp." and "Ancona Title and Escrow." Under well establish law governing the use of service marks and unfair competition, you, as the junior or later user, may not use any variation of these marks that produces a likelihood of confusion. Currently, you are operating under the business name of "Ancona West d/b/a North Oaks Title," "Ancona West Corporation, which operates as North Oaks Title," or other variations of the same. For example, this business name appears in press releases from the office of the Minnesota Secretary of State. (*See* http://www.governor.state.mn.us/Tpaw_View_Article.asp?artid=1585). Doing so uses the mark "Ancona" in the same name as "Title," which violates the terms of the Purchase Agreement and the law governing service marks and unfair competition.

Please immediately cease and desist from using the words "Ancona" or "Ancona West" in connection with any real estate services and remove all references to the same. Please acknowledge your willingness to do so no later than December 7, 2005. The sale of Ancona Title to Ancona Escrow occurred in August of 2005 and sufficient time has transpired to enable you to transition your business to North Oaks Title.

1847814v3

**BRIGGS AND MORGAN**

Frederic W. Knaak
November 30, 2005
Page 3

You told me in our telephone conversation at the end of September that the name "Ancona West" appears on North Oaks Title's contract with the Talon Group. My understanding is that Chris also signed that contract as COO of Ancona West and his wife Deb signed it as Secretary of Ancona West. Please amend that document and any others to eliminate any reference to "Ancona West" and to remove the names of Chris and Deb as signatories no later than December 29, 2005, with confirmation of those actions to me. Also, please change the corporate name of Ancona West to another name that does not incorporate the word "Ancona" by December 29, 2005.

I understand that some time after the July 2005 sale of Ancona Title, you sought to add to Ancona Title's corporate book minutes of a special meeting of shareholders dated October 10, 2003, attended only by you, in which you purportedly adopted a resolution not to oppose the use of "Ancona" by Ancona West. It probably does not surprise you that my client is very skeptical as to the existence prior to the sale of the company of this meeting purportedly adopting the non-opposition resolution. Regardless, if it in fact occurred, it significantly dilutes the value of Ancona Title and was not disclosed at the time of the sale. In fact, it directly contradicts the understanding of the parties at the time of the sale of Ancona Title to Ancona Escrow. If, in fact, you assert that this resolution gives Ancona West the right to use the name "Ancona," we believe that your failure to disclose that fact prior to the sale of the company violated statutory and common law fraud laws.

2.  Preexisting Claims

I am aware of three files that have title liability and, not withstanding your agreement to rectify the problems and indemnify Ancona Title for any losses associated with two of the three files, I am concerned that you are not dealing proactively with the claims.

   a.  Gore file. This file is referenced above in the opening paragraphs of this letter. We have discussed this file at some length and it is the subject of our September 30, 2005 agreement in which you accepted financial responsibility for the Lawyers Title claim. The claim arises out of your failure to record the mortgage and subsequent failure to tender a insurance claim to St. Paul Fire after Lawyers Title provided the May 5, 2004 notice that a lawsuit had been filed, that Ancona Title may have liability for some or all of the losses and expenses associated with the lawsuit and that Ancona Title should notify its errors and omissions carrier of the claim. Although it appears that you provided such notice in your October 4, 2005 letter, please be aware that if you do not cooperate in a timely fashion with St. Paul Fire to ensure coverage, or if Lawyers Title or other entity continues to pursue Ancona Title for any losses or costs associated with the lawsuit which I must address on behalf of Ancona Title, I will seek the fees and costs of doing so pursuant to the indemnifications agreements contained in the Purchase Agreement and in the September 30 Agreement.

**BRIGGS AND MORGAN**

Frederic W. Knaak
November 30, 2005
Page 4

      b.    ProGrowth. As you are aware, this file resulted from your decision over Chris' objections to allow your law partner Alan Kantrud (Marathon Title) to conduct closings on insurance issued through Ancona Title. Mr. Kantrud made an error in closing when he did not record the first mortgage (Wells Fargo) until after considerable time had passed and additional second mortgages from ProGrowth had been issued. It is my understanding that ProGrowth is now refusing to acknowledge that the first mortgage is prior to the secondary ProGrowth mortgages and asserts that it would not have issued the second mortgages had it known that it was not the primary lender. I note that Tim Grande, counsel for Lawyers Title, in a letter dated August 5, 2005 stated that you assured him that ProGrowth had issued subordinations to the Wells Fargo Mortgage. I also note in your September 13, 2005 letter to Mr. Grande, that you stated that your "office will vigorously pursuing [sic] a prompt resolution of this matter." You go on to say that Alan Kantrud is very familiar with the file and will be contacting Pro Growth to complete the resolution of this dispute." You also state that you intend to have the "matter closed by the end of the month." I have communicated recently with Mr. Grande, who stated that you have done nothing to resolve this matter, and apparently Lawyers Title is very close to taking direct action. Again, despite the fact that you have accepted financial responsibility in the Purchase Agreement for this file, I will be working to resolve this matter and seeking indemnification of any costs associated with this effort as well as for any losses that should result.

      c.    Plover, Wisconsin. I understand that you received notice that a mechanics lien had been filed which had priority over Ancona Title's mortgage. You issued a letter of indemnification but took no further action to mitigate or cure the defect. While it was your prerogative to take no action regarding this LOI prior to the sale of Ancona Title, you had an obligation to notify Chris at the time of sale. You sold Ancona Title subject to this undisclosed liability, which substantially diluted the value of the company and may have caused him not to agree to the sale. Also, had Chris been aware of the defect, he could have taken immediate action to negotiate a lower buyout before the matter reached a point where settlement is difficult.

If there are any other claims pending on these or other files, please inform me immediately.

3.    Transfer of all financial documents associated with Ancona Title

As part of the sale of Ancona Title, you have the obligation to transfer any and all financial documents associated with Ancona Title from its inception to the present. This obligation pursuant to the Purchase Agreement includes but is not limited to all corporate

1847814v3

**BRIGGS AND MORGAN**

Frederic W. Knaak
November 30, 2005
Page 5

documents, financials, leases and rental agreements, and tax records. It appears from Ancona Title's bank statements that Ancona Title paid substantial fees to your office for legal services. Please include in the documents you transfer to Ancona Title documents memorializing the fee arrangement between your office and Ancona Title, the scope of services agreement, all invoices and billing records and copies of all work product. Please provide to me the aforementioned documents no latter than December 16, 2005.

4.   Transfer of assets to Ancona Title

As I mentioned in the beginning of this letter, the Purchase Agreement requires you to transfer to Ancona Escrow all assets which belonged to Ancona Title. It appears from bank statements that you withdrew the contents of the Ancona Title bank account following the sale of the company to Ancona Escrow. Please remit that amount to Ancona Title immediately. Also, it appears that you are in possession of a pickup truck that belongs to Ancona Title. Please transfer that and any other assets belonging to Ancona Title immediately.

As there are a number of unfulfilled obligations associated with your sale of the capital stock of Ancona Title to Ancona Escrow, we have withheld payment of this month's installment due under the promissory note and will withhold future payments until all of your obligations have been satisfied. All funds withheld under this arrangement are and will be deposited with Briggs and Morgan pending: (i) release pursuant to written instructions executed by both you and Ancona Escrow; or (ii) release to Ancona Escrow in the event any party or third person makes a claim or threatens in writing to make a claim against Briggs and Morgan to compel disbursement of the funds or any other action with respect the funds. This amount will be offset by any fees, costs and losses related to addressing the title liability issues associated with the Gore and ProGrowth files upon presentation to you of a full description of all charges. Please indicate below your acceptance of this escrow arrangement and return the signed copy to me immediately.

---

Frederic W. Knaak

I, Frederic W. Knaak, agree to the escrow of the monthly installments due under the July 25, 2005 promissory note associated with the sale of Ancona Title to Ancona Escrow in accordance with the terms set forth in the paragraph above.

1847814v3

**BRIGGS AND MORGAN**

Frederic W. Knaak
November 30, 2005
Page 6

Yours very truly,

Briggs and Morgan, P.A.

*[signature]*

Kevin M. Magnuson

KMM/krw
Enc.
cc.     Chris Brown

1847814v3

11/29/2005     Briggs and Morgan, P.A.     Report: TRST04
4:17 PM     **Trust Transaction Listing**     Req'd By: mahken
    Date: Beginning of Time to 11/30/2005     Currency: USD

Parameter Set: MONTH_END
Account Types: General Invested Blended Available

: Magnuson, Kevin M.

| Trust | | | Tran Type | Transaction Date | Trust Open Date | Opening | Increase | Interest | Decrease | Closing |
|---|---|---|---|---|---|---|---|---|---|---|
| 36261 | Ancona Title & Escrow | | | | | | | | | |
|   Client | | | | | | | | | | |
|   00001 | Ancona Title Purchase Agreement | | | | | | | | | |
|     Matter | | | | | | | | | | |
|     1 | Ancona Title & Escrow | | CR | 11/29/2005 | 11/29/2005 | | $15,000.00 | $0.00 | $0.00 | $15,000.00 |
| | | | Ancona Escrow, Inc. - escrow deposit | | | | | | | |
| Matter 00001 Total | | | | | | $0.00 | $15,000.00 | $0.00 | $0.00 | $15,000.00 |
| Client 36261 Total | | | | | | $0.00 | $15,000.00 | $0.00 | $0.00 | $15,000.00 |
| Magnuson, Kevin M. Totals | | | | | | $0.00 | $15,000.00 | $0.00 | $0.00 | $15,000.00 |
| Report Totals | | | | | | $0.00 | $15,000.00 | $0.00 | $0.00 | $15,000.00 |

Start Time: 4:17 PM
End Time: 4:17 PM