*Exh P*

---

**From:** Magnuson, Kevin
**Sent:** Friday, December 16, 2005 6:11 AM
**To:** 'fknaak@klaw.us'
**Cc:** Tilton, Philip; Helget, Gerald; 'Chris Brown'
**Subject:** Rescission Agreement

Frtiz:

Thank you for your voice mail of Wednesday. We are willing to include reasonable language in the agreement that allows Ancona Title to address any concerns you may have regarding the classification for tax purposes of Ancona Title. Chris has not yet filed a tax return for the company so I don't believe there are "problems" related to a change of classification from an S to a C corp.

I am concerned however about the amount of time that has passed since I sent to you the draft rescission agreement on December 7. I do not believe the agreement is "thin" -- it is a standard rescission agreement designed to accomplish a relatively simple task. Please be advised that we insist on the December 21 closing date. Thus, I encourage you to either sign the agreement or forward any changes to me as soon as possible. If we have not reached an agreement by 4 pm on Monday, I will be filing a complaint on Tuesday, December 22. We have agreed that rescission is the appropriate remedy -- let's get this done so both parties can focus on developing the respective businesses.

Regards,

Kevin M. Magnuson
Briggs and Morgan P.A.
2200 IDS Center
Minneapolis, Minnesota 55402-2157
(612) 977-8438 (direct)
(612) 977-8650 (FAX)



| | |
|---|---|
| **From:** | Magnuson, Kevin |
| **Sent:** | Monday, December 19, 2005 5:01 PM |
| **To:** | 'Fritz Knaak' |
| **Cc:** | cbrown@anconatitle.com; Tilton, Philip; Helget, Gerald |
| **Subject:** | RE: Rescission Agreement |

```
Fritz: there is no "huffing and puffing" here.  I wish to resolve this matter as quickly
and cleanly as possible.  I am concerned that you are not addressing any of the issues
I've raised on the merits and are foreclosing any avenue of resolution short of
litigation.  You misrepresented the condition of Ancona Title at the time of the purchase
agreement, thus rescission is appropriate.  That should be a simple remedy because you
have stated that the ownership of the company has not yet transferred to my client.  Even
under a contract theory, we laid out for you a number of breaches of the purchases
agreement, which we asked that you remedy immediately.  You did not address any of those
issues in your response to me but stated that you were willing to return my client's money
and "take back your company."  We agreed that this was the best solution and I encourage
you to follow through with it by immediately signing the rescission agreement I sent to
you some time ago, or your proposed revisions to the document.  If you have changed your
mind, please let me know.  As I never wish to close the door to a non-litigation
settlement of a dispute, I will gladly accept your invitation to discuss this matter with
you by phone tomorrow.

KMM

-----Original Message-----
From: Fritz Knaak [mailto:fknaak@klaw.us]
Sent: Sunday, December 18, 2005 9:29 PM
To: Magnuson, Kevin
Cc: cbrown@anconatitle.com
Subject: Re: Rescission Agreement


On Sat, 17 Dec 2005 15:37:34 -0600
 "Magnuson, Kevin" <KMagnuson@Briggs.com> wrote:
> Fritz:
>
> Your email is confusing on a number of points. (snip)
>
> Our decision to file a complaint is entirely dependent on your
> willingness to promptly follow through on the rescission agreement,
> which you originally proposed.  If we believe, however,
> that you do not
> intend to rescind the agreement promptly, we will pursue
> that remedy
> though litigation.
>
> I look forward to reviewing your "formal response" on
> Monday.  Please do
> not hesitate to contact me if you have any questions or
> wish to discuss
> this matter further.
>
>
Kevin:

All this huffing and puffing would be fun to watch if I
had more time for it.

_My_ decision on  whether to sue Chris or not will be
predicated on his actual performance of what he contracted
to do.  What I've seen so far is lawyer-inflected excuses
for
```

1

```
his current non-performance,
apparently with a goal to back out of his agreement, no
doubt due to the cost, and that he's gotten out of it
whatever
he plans to.  Evidently, he's out of cash.

You seem to have forgotten that it was you that raised the
subject of "mutual rescission".

I will be out of the office most of tomorrow on
family-related
medical matters.  As I think I mentioned on Friday, our response would come tomorrow at
the earliest.  Given your posturing, I'm beginning to think I would only be wasting my
time. It will be sent.

One good thing about a decision by your client to initiate
an
action would be to take the matter off my desk and out of
my hands.

You're welcome to contact me on Tuesday morning if it would
be productive
to coming to an agreement.  Otherwise, I would anticipate
our direct
communications would cease upon communication to you of representation after you have
served process.


Frederic W. "Fritz" Knaak
(Licensed in MN, WI & CO)
KNAAK & KANTRUD, P.A.
3500 Willow Lake Blvd., Suite 800
Vadnais Heights, MN  55110
Phone: 651/490-9078 - Fax: 651/490-1580
Mailto:fknaak@klaw.us - Web: www.klaw.us
```

---

This email has been scanned for all viruses by the MessageLabs SkyScan service.
(http://www.messagelabs.com)

---

| | |
|---|---|
| From: | Fritz Knaak [fknaak@klaw.us] |
| Sent: | Sunday, December 18, 2005 9:29 PM |
| To: | Magnuson, Kevin |
| Cc: | cbrown@anconatitle.com |
| Subject: | Re: Rescission Agreement |

```
On Sat, 17 Dec 2005 15:37:34 -0600
 "Magnuson, Kevin" <KMagnuson@Briggs.com> wrote:
> Fritz:
>
> Your email is confusing on a number of points. (snip)
>
> Our decision to file a complaint is entirely dependent on your
> willingness to promptly follow through on the rescission
> agreement,
> which you originally proposed.  If we believe, however,
> that you do not
> intend to rescind the agreement promptly, we will pursue
> that remedy
> though litigation.
>
> I look forward to reviewing your "formal response" on
> Monday.  Please do
> not hesitate to contact me if you have any questions or
> wish to discuss
> this matter further.
>
>
```
Kevin:

All this huffing and puffing would be fun to watch if I
had more time for it.

_My_ decision on  whether to sue Chris or not will be
predicated on his actual performance of what he contracted
to do.  What I've seen so far is lawyer-inflected excuses
for
his current non-performance,
apparently with a goal to back out of his agreement, no
doubt due to the cost, and that he's gotten out of it
whatever
he plans to.  Evidently, he's out of cash.

You seem to have forgotten that it was you that raised the
subject of "mutual rescission".

I will be out of the office most of tomorrow on
family-related
medical matters.  As I think I mentioned on Friday, our response would come tomorrow at
the earliest. Given your posturing, I'm beginning to think I would only be wasting my
time. It will be sent.

One good thing about a decision by your client to initiate
an
action would be to take the matter off my desk and out of
my hands.

You're welcome to contact me on Tuesday morning if it would
be productive
to coming to an agreement.  Otherwise, I would anticipate
our direct
communications would cease upon communication to you of representation after you have

1

served process.

Frederic W. "Fritz" Knaak
(Licensed in MN, WI & CO)
KNAAK & KANTRUD, P.A.
3500 Willow Lake Blvd., Suite 800
Vadnais Heights, MN  55110
Phone: 651/490-9078 - Fax: 651/490-1580
Mailto:fknaak@klaw.us - Web: www.klaw.us

---

This email has been scanned for all viruses by the MessageLabs SkyScan service.
(http://www.messagelabs.com)

---

2

| | |
|---|---|
| **From:** | Magnuson, Kevin |
| **Sent:** | Saturday, December 17, 2005 3:38 PM |
| **To:** | 'fknaak@klaw.us' |
| **Cc:** | cbrown@anconatitle.com; tdailey@klaw.us; Tilton, Philip; Helget, Gerald |
| **Subject:** | RE: Rescission Agreement |

Fritz:

Your email is confusing on a number of points. First and foremost, my client is not in breach of an agreement you procured through fraud. He attempted to work with you in good faith to bring to your attention a number of breaches of the purchase agreement and a number of misrepresentations in the sale of Ancona Title that constitute a violation of the Minnesota Securities Act and fraud. Thus, we do not propose a repurchase of the stock but a rescission of the agreement, which we believe is our remedy at law. If rescission were ordered by a court, you would be required to return Chris' payment to date and of course you would receive the Ancona Title's stock without regard to any tax considerations.

In your November 30 letter, you stated: "Mr. Brown does not own those shares and, consequently, the business, until final payment has, in fact, been made." Thus, if the transaction is not final, undoing it should be relatively simple. However, I will discuss the tax related matters with other Briggs lawyers who focus their practices in that area to see if there is anyway your concerns can be addressed without prejudicing my client.

As for an accounting, I have represented to you that an accounting is necessary to determine the final payment amount, including as you have said "income, expenses and new assets since July 1, 2005." Of course, my client will subtract from the amount paid thus far pursuant to the purchase agreement any of "offsets related to funds taken from the business." It seems that you expect the amount of this offset to be substantial, even to the point of exceeding the payments my client has made to you to date. What sort of offsets do you believe you will be entitled to? In any case, the issue of an accounting goes to the amount to be paid, not to the basis of the rescission agreement.

Also, please clarify your statement: "From the documentation that has been sent to you, however, I'll remind you that Mr. Brown has a fiduciary responsibility to either restore all of the Ancona files to us, or provide reasonable access to those files immediately." I'm not sure I understand what you mean.

Our decision to file a complaint is entirely dependent on your willingness to promptly follow through on the rescission agreement, which you originally proposed. If we believe, however, that you do not intend to rescind the agreement promptly, we will pursue that remedy though litigation.

I look forward to reviewing your "formal response" on Monday. Please do not hesitate to contact me if you have any questions or wish to discuss this matter further.

Regards,

Kevin M. Magnuson
Briggs and Morgan P.A.
2200 IDS Center
Minneapolis, Minnesota 55402-2157
(612) 977-8438 (direct)
(612) 977-8650 (FAX)


-----Original Message-----
From: Fritz Knaak [mailto:fknaak@klaw.us]
Sent: Friday, December 16, 2005 1:40 PM
To: Magnuson, Kevin

1

Cc: cbrown@anconatitle.com; tdailey@klaw.us
Subject: Re: Rescission Agreement


On 16 Dec 2005 at 6:11, Magnuson, Kevin wrote:

> Frtiz:
>
>
(snip)
   If we have not reached an agreement by 4 pm on
Monday, I will
> be filing a complaint on Tuesday, December 22.  We have agreed that
>
>
Kevin:

Your certainly welcome to impose as many
deadlines on yourself as you want to.  Your client
remains in breach.

Despite what I sense is a cavalier attitude by you on
the tax question, it appears to be a major problem.
Chris' personal election to have Ancona Title
purchased by Ancona Escrow resulted in an
immediate conversion of Ancona Title to a C
Corporation unless Chris undertook in a certain time
period (I think two months) to elect with the IRS
interim subsidiary status and roll the assets into
Ancona Escrow.  Once converted to a C Corp,
Ancona Title could not be restored to its' S Corp tax
status for five years.

As part of my own due diligence, I have asked my
own tax advisors the specific question of whether a
an agreement couched as a "mutual rescission"
would allow me to reclaim the prior S status.  I am
supposed to receive a written opinon today, but I
understand the answer is "no".

As a C Corp., Ancona Title is worth less than
nothing to me.  If your client did an election to roll
the assets into his company, our "deal" would
actually have to be couched more in the form of an
asset repurchase.    Technically, I'm not sure your
client even CAN rescind at this point, since he can't
give me back what I gave him.  But I would think we
should be able to structure a package that would
have the same effect.

You may want to send this----finally---- to your
corporate folks over at Briggs to see if they can
come up with a better solution than what you've
sent so far.

My "formal" response to you will be by fax and
letter.  At this point, it's not looking like it will be
sooner than Monday.  From the documentation that
has been sent to you, however, I'll remind you that
Mr. Brown has a fiduciary responsibity to either
restore all of the Ancona files to us, or provide
reasonable access to those files immediately.
Moreover, given the breach, our mutual
indemnifications have lapsed.

2

```
Let me know when you expect Mr Brent Olson, my
asccountant,  to be permitted full access to
corporate and agency records to permit us to locate
both assets and revenue attributable to the
corporation.

In the alternative, if your "reminder" is little more
than pre-litigation posturing, we're certainly ready to
procede on that basis as well.  You may, however,
also want to "remind" your client of his own
responsiblity for my attorneys fees for our efforts to
enforce the contract.  If you are basically saying,
"sign our document or we will sue", let me know and
I won't bother wasting further resources trying to
come up with a workable business solution.



=====================================


Frederic W. ("Fritz") Knaak, Esq. (MN., WI., CO.)
Knaak & Kantrud, P.A.
3500 Willow Lake Blvd. - Suite 800
Vadnais Heights, MN.  55110
Tel: 651.490.9078/Fax: 651.490.1580
Mailto: fknaak@klaw.us  / Website:
http://www.klaw.us
```

This email has been scanned for all viruses by the MessageLabs SkyScan service. (http://www.messagelabs.com)

| | |
|---|---|
| **From:** | Fritz Knaak [fknaak@klaw.us] |
| **Sent:** | Friday, December 16, 2005 1:40 PM |
| **To:** | Magnuson, Kevin |
| **Cc:** | cbrown@anconatitle.com; tdailey@klaw.us |
| **Subject:** | Re: Rescission Agreement |

On 16 Dec 2005 at 6:11, Magnuson, Kevin wrote:

> Frtiz:
>
>
(snip)
   If we have not reached an agreement by 4 pm on
Monday, I will
> be filing a complaint on Tuesday, December 22.  We have agreed that
>
>
Kevin:

Your certainly welcome to impose as many
deadlines on yourself as you want to.  Your client
remains in breach.

Despite what I sense is a cavalier attitude by you on
the tax question, it appears to be a major problem.
Chris' personal election to have Ancona Title
purchased by Ancona Escrow resulted in an
immediate conversion of Ancona Title to a C
Corporation unless Chris undertook in a certain time
period (I think two months) to elect with the IRS
interim subsidiary status and roll the assets into
Ancona Escrow.  Once converted to a C Corp,
Ancona Title could not be restored to its' S Corp tax
status for five years.

As part of my own due diligence, I have asked my
own tax advisors the specific question of whether a
an agreement couched as a "mutual rescission"
would allow me to reclaim the prior S status.  I am
supposed to receive a written opinon today, but I
understand the answer is "no".

As a C/Corp., Ancona Title is worth less than
nothing to me.  If your client did an election to roll
the assets into his company, our "deal" would
actually have to be couched more in the form of an
asset repurchase.  Technically, I'm not sure your
client even CAN rescind at this point, since he can't
give me back what I gave him.  But I would think we
should be able to structure a package that would
have the same effect.

You may want to send this----finally---- to your
corporate folks over at Briggs to see if they can
come up with a better solution than what you've
sent so far.

My "formal" response to you will be by fax and
letter.  At this point, it's not looking like it will be
sooner than Monday.  From the documentation that

1

has been sent to you, however, I'll remind you that
Mr. Brown has a fiduciary responsibity to either
restore all of the Ancona files to us, or provide
reasonable access to those files immediately.
Moreover, given the breach, our mutual
indemnifications have lapsed.

Let me know when you expect Mr Brent Olson, my
asccountant,  to be permitted full access to
corporate and agency records to permit us to locate
both assets and revenue attributable to the
corporation.

In the alternative, if your "reminder" is little more
than pre-litigation posturing, we're certainly ready to
procede on that basis as well.  You may, however,
also want to "remind" your client of his own
responsiblity for my attorneys fees for our efforts to
enforce the contract.  If you are basically saying,
"sign our document or we will sue", let me know and
I won't bother wasting further resources trying to
come up with a workable business solution.


=====================================

Frederic W. ("Fritz") Knaak, Esq. (MN., WI., CO.)
Knaak & Kantrud, P.A.
3500 Willow Lake Blvd. - Suite 800
Vadnais Heights, MN.  55110
Tel: 651.490.9078/Fax: 651.490.1580
Mailto: fknaak@klaw.us  / Website:
http://www.klaw.us


This email has been scanned for all viruses by the MessageLabs SkyScan
service. (http://www.messagelabs.com)

2

# KNAAK & KANTRUD, P.A.
Attorneys at Law

Frederic W. Knaak*
H. Alan Kantrud†‡
Greg T. Kryzer‡‡

*Also Licensed in
Wisconsin & Colorado
‡‡ Qualified neutral under
Rule 114 of the Minnesota
General Rules of Practice

3500 Willow Lake Blvd., Suite 800
Vadnais Heights, MN 55110
Telephone: (651) 490-9078
Facsimile: (651) 490-1580

*Of Counsel*
Donald W. Kohler
Joseph B. Marshall
Thomas M. Dailey, P.A.
Theodore M. "Ted" Thompson

December 21, 2005

Mr. Kevin M. Magnuson
Briggs & Morgan, P.A.
2200 IDS Center
Minneapolis, MN 55402-2152

RE: Ancona Title and Escrow

Dear Kevin:

Your office forwarded for my review and response a proposed agreement rescinding the agreement between Chris Brown (and Ancona Escrow) and me. I forwarded that proposal to my own tax and accounting advisors for their review and advice.

I received an opinion on Friday that Ancona Title Services Corporation is now a "C" Corporation by virtue of your client's decision to purchase the company through Ancona Escrow, rather than as an individual, as initially agreed. While this action was certainly his right, it *significantly* altered the nature and value of the company for purposes of restoring to me for business use. I, of course, have no way of knowing the whereabouts or status of the corporation's assets, including its title files. I have received no response from you about any accounting for income or assets as I have requested.

I advised you of this problem on Friday, and suggested that you find, from your own firm's resources, possible solutions. As I understand the email you addressed to me on Saturday, you have refused.

I remain interested in a proposal for a solution that approximates a rescission of the deal, to the extent it would involve a restoration of the assets to me, including the name of the company, and including payment to me of revenues attributable to the company for the period in which it was held by Mr. Brown. To be clear, this would include, at the least, title policy revenue during that period derived from the agency. Mr. Brown would, of course, be entitled to either credit for, or reimbursement of, payments he has made for the purchase of the company.

Unfortunately, I am advised this cannot be accomplished with a return of the shares of a corporation that is materially different than it was when it was sold to Mr. Brown without some measure of negative tax consequences.

Certainly, I am sure you understand that in a situation in which your client has unilaterally determined that he will not pay the $30,000 he continues to owe me under our agreement, I am not going to simply send you a check for $60,000 on the promise that, somehow, we'll work out the details later. Yet this is the substance of what you have proposed.

As I indicated to you in our phone discussion a couple of weeks ago, I would expect to have a written agreement in place; a period of due diligence that would afford my accountant both reasonable access to and a review of the books of the agency; and finally a closing at which any funds would be exchanged. This is standard practice in any business transaction.

I have already invested a significant amount in this effort, only to discover that a simple solution that you had originally proposed is not a real possibility. This is unfortunate. I am trying to remain open to any creative solution that your firm can propose, within reason. I am equally prepared to hand the matter off for collection, rather than devote addition resources here to resolving a matter if resolution is not forthcoming. It remains my position that your client continues to be in breach of the agreement and note.

Please feel free to let me know if you have some other proposal or solution short of litigation. If not, I trust you will be in contact shortly.

Please accept my offer of a Merry Christmas to you and your family.

Sincerely,

Frederic W. Knaak
Attorney at Law

Cc: T. Dailey
    M. Ginder

**From:** Magnuson, Kevin
**Sent:** Wednesday, December 21, 2005 10:40 AM
**To:** 'Fritz Knaak'
**Cc:** 'Chris Brown'; Tilton, Philip; Helget, Gerald
**Subject:** Rescission agreement

Fritz: I received your letter dated December 21. Frankly, I'm baffled by your response. Do you even read my correspondence? I have raised a number of issues with you which you consistently have refused to address.

The purchase agreement is null and void because the sale violated the Minnesota Securities Act. As I have said repeatedly (contrary to your statement in your letter) that I am having one of our tax lawyers look at the question to see if there is some simple solution to your tax problem. In the meantime, what is your solution? You mentioned in one of your letters that the sale is not yet complete until the final payment is made per the promissory note. You have not responded to my inquiry as to whether or not you believe this solves your tax problem. Please respond to these points.

More troubling is your statement that I am asking you to send a $60,000 check "on the promise that, somehow, we'll work out the details later." In fact, I have proposed, and the rescission agreement maps out, exactly the scenario you describe in the second paragraph of page 2 of your letter. The parties would have a signed written agreement in place to rescind the contract. We would give you an accounting of Ancona Title (or allow your accountant to provide the accounting) for the purpose of determining the exact amount of any offset to the $60,000 to which you may be entitled. A closing would follow at which time the shares and funds are exchanged. You are correct: It is standard business practice, THAT'S WHY I'VE BEEN PROPOSING IT SINCE DAY ONE. At least we agree on that. If you do not want to go through with the rescission, which you proposed to me in writing, and want to propose something that "approximates a rescission," please make your proposal. If you do not want to do either, please let me know.

I must correct your assertion that my client had agreed to purchase Ancona Title individually. That is not true and my client was very clear at the time of your negotiations that he intended to have Ancona Escrow purchase the company.

Finally, you ask that I contact you to discuss this matter. I have left you a number of messages and you have not returned my phone calls. I wish to resolve this short of litigation but am concerned that you are not dealing with this matter in good faith. Please call me and/or send the signed rescission agreement or offer a proposal of your own.

Regards,

Kevin M. Magnuson
Briggs and Morgan P.A.
2200 IDS Center
Minneapolis, Minnesota 55402-2157
(612) 977-8438 (direct)
(612) 977-8650 (FAX)

**From:** Magnuson, Kevin
**Sent:** Wednesday, December 21, 2005 4:27 PM
**To:** 'Fritz Knaak'
**Cc:** 'Chris Brown'; Duffy, James; McDonough, Brigid; Tilton, Philip
**Subject:** FW: Rescission agreement

Fritz:

I had the chance to discuss your tax question with two Briggs lawyers who concentrate their practices in the tax law area . What follows is not legal advice to you and you should not rely on the views expressed herein without getting your own opinion . If you disagree with our view, please point me to the authority on which you base your opinion.

Simply rescinding the agreement would leave you with Ancona Title as an S Corporation. You can undo a transaction for tax purposes if it is done in the same year. Thus, the S Corp you sold will remain an S Corp when returned to you as part of a rescission.

Furthermore, under your analysis, the provision in the Promissory Note that reserves your "entire interest without partition until payment in full" makes the sale of Ancona Title similar to a contract for deed. You have claimed that title of the shares does transfer until you have received the full payment. Thus, its subchapter S status does not change until title has passed.

Finally, although, in light of the foregoing, this is irrelevant to the analysis, you may be interested to note that an S Corp can keep a subsidiary as a qualified subchapter S Corp under subchapter Q. So, Ancona Title does not necessarily change to a C Corporation even if my client continues to own the company into the next tax year.

It seems to us that objections to rescission based on possible tax consequences are unfounded. I look forward to discussing this matter further with you if you desire.

Regards,


-----Original Message-----
**From:** Magnuson, Kevin
**Sent:** Wednesday, December 21, 2005 10:40 AM
**To:** 'Fritz Knaak'
**Cc:** 'Chris Brown'; Tilton, Philip; Helget, Gerald E.
**Subject:** Rescission agreement

Fritz: I received your letter dated December 21. Frankly, I'm baffled by your response. Do you even read my correspondence? I have raised a number of issues with you which you consistently have refused to address.

The purchase agreement is null and void because the sale violated the Minnesota Securities Act. As I have said repeatedly (contrary to your statement in your letter) that I am having one of our tax lawyers look at the question to see if there is some simple solution to your tax problem. In the meantime, what is your solution? You mentioned in one of your letters that the sale is not yet complete until the final payment is made per the promissory note. You have not responded to my inquiry as to whether or not you believe this solves your tax problem. Please respond to these points.

More troubling is your statement that I am asking you to send a $60,000 check "on the promise that, somehow, we'll work out the details later." In fact, I have proposed, and the rescission agreement maps out, exactly the scenario you describe in the second paragraph of page 2 of your letter. The parties would have a signed written agreement in place to rescind the contract. We would give you an accounting of Ancona Title (or allow your accountant to provide the accounting) for the purpose of determining the exact amount of any offset to the $60,000 to which you may be entitled. A closing would follow at which time the shares and funds are exchanged. You are correct: It is standard business practice, THAT'S WHY I'VE BEEN PROPOSING IT SINCE DAY ONE. At least we agree on that. If you do not want to go through with the rescission, which you proposed to me in writing, and want to propose something that "approximates a rescission," please make your proposal. If you do not want to do either, please

let me know.

I must correct your assertion that my client had agreed to purchase Ancona Title individually. That is not true and my client was very clear at the time of your negotiations that he intended to have Ancona Escrow purchase the company.

Finally, you ask that I contact you to discuss this matter. I have left you a number of messages and you have not returned my phone calls. I wish to resolve this short of litigation but am concerned that you are not dealing with this matter in good faith. Please call me and/or send the signed rescission agreement or offer a proposal of your own.

Regards,

Kevin M. Magnuson
Briggs and Morgan P.A.
2200 IDS Center
Minneapolis, Minnesota 55402-2157
(612) 977-8438 (direct)
(612) 977-8650 (FAX)