UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| **Ancona Escrow, Inc., a Minnesota corporation and Ancona Title Services, Inc., a Minnesota corporation ,** | |
| **Plaintiffs,** | |
| **vs.** | **File No. 06 cv 504 DSD/JJG** |
| **Ancona West Corporation, d/b/a North Oaks Title, a Minnesota corporation, and Frederic W. Knaak,** | |
| **Defendants.** | |

_____

**ANSWER AND COUNTERCLAIM**

**WITH DEMAND FOR JURY TRIAL**
_____

Defendants, Ancona West Corporation, d/b/a North Oaks Title, a Minnesota corporation, and Frederic W. Knaak, for their answer to the Complaint, state and allege as follows:

**PARTIES**

1.      Defendants admit the allegations of Paragraphs 1, 2, 3, and 4 of the Complaint.

**JURISDICTION AND VENUE**

2.      Defendants deny that this Court has jurisdiction pursuant to 28 U.S.C. §1331, and deny jurisdiction under the allegations of 15 U.S.C. §78(j)(b) and 17 C.F.R. §240.10(b)-5, and 15 U.S.C. §1051, et sequitur.

3.    The Defendants further deny this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367(a), and assert that, if this action is to proceed at all, it should be in state court.

4.    These answering Defendants admit that, if there is federal jurisdiction, this Court has venue over these claims pursuant to 28 U.S.C. §1391(b).

## FACTUAL BACKGROUND

5.    Except as otherwise hereinafter specifically admitted, Defendants generally deny each and every allegation of the Complaint.

6.    Defendants deny any breach of the settlement agreement, as alleged in Paragraph 8 of the Complaint.  Defendants deny any agreement to rescind the sale of Ancona Title to Ancona Escrow, and affirmatively assert that this action is frivolous and without merit.

7.    With respect to Paragraph 9 of the Complaint, Defendants deny that they failed to accurately disclose or that they intentionally concealed the true nature and condition of Ancona Title's liabilities prior to the execution of the sale, and affirmatively allege that to the extent there were any liabilities that existed prior to the execution of the sale, these were fully known to the Plaintiffs and agents and employees of Plaintiffs.

8.    With respect to Paragraph 9 of the Complaint, Defendants furthermore assert that they have been given permission to use the trade name, Ancona West with respect to corporate matters, and with respect to real estate transactions occurring outside the State of Minnesota, and that their use of the term "Ancona West" is not a breach of the sale agreement, nor is it in breach of the implied duty of good faith and fair dealing.

2

9.      Defendants further assert, with respect to Paragraph 9 of the Complaint, that there has

been no actual confusion or likelihood to cause confusion as to the consuming public

regarding the affiliation, source and/or association between Plaintiffs and Defendants, or

that any actions constitute willful infringement in violation of federal, state, or common

law.  Defendants further deny any breach of any fiduciary duty.

### A.  The sale of Ancona Title to Ancona Escrow

10.     Defendants reallege each and every other paragraph of this Answer and Counterclaim.

11.     Defendants admit the allegations of Paragraphs 10, 11, 12, and 13 of the Complaint.

12.     With respect to Paragraph 14 of the Complaint, Defendants deny that Knaak was failing

to perform any essential insurance underwriting or post-closing functions.  Knaak further

denies that he neglected to perform any essential tasks on the title side of the business, or

that there was any wrongful conduct by Defendants whatsoever.

13.     With respect to Paragraph 15 of the Complaint, there was, in or about July, 2005, a

mutual decision to sever the business relationship between Brown and Knaak.

14.     With respect to Paragraph 16 of the Complaint, Defendants admit that Knaak and Brown

entered into a sale agreement for purposes of conveying the shares of capital stock of

Ancona Title to Brown.  Pursuant to the terms of the sale agreement, Ancona Title issued

to Knaak, a promissory note in the amount of $90,000.00.

15.     With respect to Paragraph 17 of the Complaint, Knaak agrees that he agreed to indemnify

Ancona Title against any and all liability for a specific number of files.  Knaak also

agreed to be responsible for certain issues that would arise in connection with the

indemnified files.

3

16.   Defendants agree with Paragraph 18 of the Complaint that the promissory note required monthly principle payments of $15,000.00 each, commencing on July 25, 2005. Defendants affirmatively assert, however, that the promissory note has not been paid as promised, and that a amount remains due and owing from Ancona Escrow, Inc., to Defendant Knaak.

17.   With respect to Paragraph 19, Defendants assert that both attorneys were experienced in transactional matters.

18.   With respect to Paragraph 20, Defendants assert that all corporate documents, including title certificates, have been delivered to Plaintiffs.  Furthermore, Defendants have delivered Ancona Title's financial records and documents to Ancona Title.  Defendants further assert that they have delivered to Ancona Title, assets and cash, if any, which belonged to Ancona Title at the time of the sale agreement.

19.   With respect to the use of the name "Ancona" Defendants assert that Paragraph 4 of the Memorandum of Understanding and Contract for Sale held only that Ancona West was to cease to operate under the name of "Ancona Title Services, Corp." or "Ancona Title and Escrow."  Defendants deny breaching this portion or any other portion of the sales agreement.  Defendants further point out that Paragraph 4 of this Memorandum and Contract for Sale further states that the parties "may continue to operate under either of those names jointly in another jurisdiction if they mutually agree to any such arrangement in writing."  Plaintiffs have simply read the sale agreement incorrectly.

20.   With respect to Paragraph 22 of the Complaint, Defendants assert that the use of the term "Ancona West" is not in violation of the sales agreement.  Defendants furthermore assert

4

that Plaintiffs have shown no likelihood of confusion, and cannot show any likelihood of confusion, and certainly no actual confusion between the names of Ancona West and Ancona Title and Ancona Escrow.

## B.  Allegations of Material Facts not Disclosed

21.     Defendants reallege each and every paragraph of this Answer and Counterclaim.

22.     With respect to Paragraph 23 of the Complaint, Defendants deny that Defendant Knaak failed to disclose or intentionally concealed material facts from Ancona Escrow prior to the execution of the sale agreement.  Defendants deny that Knaak misrepresented the true nature and condition of Ancona Title's liabilities.

23.     With respect to Paragraph 24, Defendants assert that, at the time of the execution of the sale agreement, Knaak was aware of the three Ancona Title files referenced.  The Plaintiffs were also aware of this, particularly since the problems, in large part, were caused by the actions of Plaintiffs, or in more particularity, Chris Brown, the Plaintiffs, as described below.  Defendants further assert that most of the problems alleged by the Plaintiffs are either non-existent, or will be fairly easy to remedy, if such problems exist.

### A.     THE GORE FILE

24.     Defendants reallege each and every paragraph of this Answer and Counterclaim.

25.     With respect to Paragraph 25 of the Complaint, Defendants affirmatively assert that the allegations of an "improperly recorded title" refer solely and specifically to negligent conduct committed by Chris Brown, the owner and agent of the Plaintiffs.  Consequently, Plaintiffs were fully aware of these issues at the time of sale.  Defendants admit that the

5

letter of September 20, 2005, was sent to Frederic Knaak, and that due and proper notice

has been provided to the insurance carrier for Ancona Title.

26.     With respect to Paragraph 27 of the Complaint, Defendants assert that a timely notice of

the issue was provided to St. Paul Fire and Marine Insurance Company.  Defendants point

out, moreover, that, as of the date of this Answer and Counterclaim, a specific "claim"

has been made.

27.     With respect to Paragraph 28 of the Complaint, Defendants assert that not only was this

situation accurately disclosed to Ancona Escrow, but that the problems, if any, were

caused by Chris Brown, the true owner of Ancona Escrow.

28.     Defendants deny, entirely, the allegations of Paragraph 29 of the Complaint, but

affirmatively allege that, if there is any exposure whatsoever, it is because of the failure of

Chris Brown to see that his company was properly insured.

29.     Defendants admit the allegations of Paragraph 30 of the Complaint, and further assert that

timely and proper notice has been given to St. Paul Fire and Marine.

30.     Defendants affirmatively allege that the Plaintiffs have suffered absolutely no

recognizable damages as a result of the allegations of this section.

        **B.      THE PROGROWTH FILE**

31.     Defendants reallege each and every paragraph of this Answer and Counterclaim.

32.     Defendants deny the allegations of Paragraph 33 of the Complaint, and deny that their

objections to the use of Marathon Title Company to conduct closings on insurance

issuing through Ancona Title.  Defendants further deny that there was an error made by

6

Allen Kantrud in closing property at Blaine Minnesota, as alleged. Further allegations of this paragraph are also specifically denied, pending further investigation and discovery.

33. Defendants admit Paragraph 34 of the Complaint, in that Knaak has agreed to indemnify Ancona Title for any and all liability associated with any and all files Kantrud closed.

34. With respect to Paragraph 35, Defendants deny any wrongdoing, but also assert that Plaintiffs were fully aware of these issues.

35. With respect to Paragraph 37 of the Complaint, Defendants specifically and absolutely deny that there was any failure to disclose or intentional concealment from Ancona Escrow the nature and condition of the Progrowth issues, and affirmatively allege that Chris Brown was fully aware of all issues related to the file.

36. Defendants also deny the allegations of Paragraph 38, and deny that there was any anticipated litigation or that there is any potential liability to Ancona Title for any alleged filing error.

37. Defendants affirmatively allege that the Plaintiffs have suffered absolutely no recognizable damages as a result of the allegations of this section.

**C.   THE PLOVER FILE**

38. Defendants reallege each and every paragraph of this Answer and Counterclaim.

39. With respect to Paragraph 39, regarding the Plover file, Defendants assert that Plaintiffs have all information concerning this file within their possession, and furthermore deny any failure to disclose or intentional concealment of any facts known to the Defendants.

40. Knaak denies that he intended to indemnify Plaintiff for the actions of Chris Brown in this matter.

7

41.     With respect to Paragraph 40 of the Complaint, Defendants deny any failure to disclose or intentional concealment of any liability and that all liabilities, if any, were fully known to the Plaintiffs and Chris Brown.

42.     With respect to Paragraph 41 of the Complaint, the Defendants deny any undisclosed liabilities, and deny any reduction in value of Ancona Title.  The allegation that Ancona Title justifiably relied on statements by Knaak that he had taken corrective measures to remedy any filing errors does not make sense, because that would show that Ancona Escrow was aware of the issues and should have undertaken due diligence.  Defendants deny that Knaak failed to advise Ancona Escrow of the true nature and condition of Ancona Title's liabilities with any wrongful intent, and affirmatively assert that, despite their knowledge of these issues, if any, Ancona Escrow proceeded with the purchase of Ancona Title.

43.     Defendants affirmatively allege that the Plaintiffs have suffered absolutely no recognizable damages as a result of the allegations of this section.

**D.     SETTLEMENT AGREEMENT**

44.     Defendants reallege each and every paragraph of this Answer and Counterclaim.

45.     With respect to Paragraph 42 of the Complaint, Defendant Knaak received a letter dated November 30, 2005, from counsel for Plaintiffs, then with the law firm of Briggs and Morgan.  Defendants assert that the letter speaks for itself.

46.     With respect to the allegations of Paragraph 43 of the Complaint, Defendants admit that the letter was received, but deny the substance of the letters, and specifically deny that the

8

issues mentioned became known to Brown only after entering into the sale agreement, and further deny that there was any failure to disclose any alleged liabilities.

47.     With respect to Paragraph 44 of the Complaint, while the letter from Kevin Magnuson mentioned paying monies into an escrow account, but this was never agreed to by the Defendants. Defendants assert that, if such a trust account was actually established, there should be, at the minimum, interest at a reasonable rate to at least partially compensate the Defendants for the damages caused by Plaintiffs.

48.     With respect to Paragraphs 45 and 46 of the Complaint, Defendants assert that while there were settlement discussions, there was never any settlement agreement finally referred to. Defendants point out that the Plaintiffs can point to no signed settlement agreement in which the provisions, assert the Plaintiffs, have been finally agreed to with respect to Paragraphs 45, 46, 47, 48, 49, and 50.

49.     Furthermore, with respect to Paragraph 49 of the Complaint, Defendants deny that Plaintiffs properly tendered Ancona Title stock pursuant to any alleged agreement.

50.     Moreover, Defendants deny that there was any settlement agreement entered into between the parties, and certainly no settlement agreement was signed by either the Defendants, or any person acting on behalf of the Defendants.

**COUNT I**

**DECLARATORY JUDGMENT: SETTLEMENT AGREEMENT**

51.     Defendants reallege each and every paragraph of this Answer and Counterclaim.

9

52.   Defendants deny that they entered into a valid or enforceable settlement agreement on November 30, 2005, as alleged in Paragraph 52 of the Complaint, or that this settlement agreement was binding on all parties, alleged in Paragraph 53.

53.   Defendants deny the allegations of Paragraph 54, that they expressly agreed to rescind the sale agreement, or that they agreed to reduce the settlement agreement to writing, or that they have refused to comply with the terms of the settlement agreement, as alleged in Paragraph 55.

54.   Defendants deny that an actual or justiciable controversy exists, because there is no merit to the frivolous claims asserted by Plaintiffs.

55.   Defendants deny that Plaintiffs are entitled to any declaration whatsoever under Minn. Stat. §§555.01, et seq., or 28 U.S.C. §2201, et seq.

## COUNT II

## ALLEGED BREACH OF SETTLEMENT AGREEMENT

56.   Defendants reallege each and every paragraph of this Answer and Counterclaim.

57.   Defendants deny that they entered into a settlement agreement on November 30, 2005, as alleged in Paragraph 59, or that they agreed to rescind the sales agreement, as alleged in Paragraph 60.

58.   Defendants deny the allegations of Paragraphs 61, 62, 63, or 64.

59.   No response is required to Paragraph 65.

## COUNT III

## INTENTIONAL MISREPRESENTATION

60.   Defendants reallege each and every paragraph of this Answer and Counterclaim.

10

61.     With respect to Paragraph 67, the Defendants deny any sale of stock from Ancona Title to

        Ancona Escrow.  The Defendants do admit, however, that there is a sale of stock from

        Frederic Knaak of Ancona Title stock to Ancona Escrow, as evidenced in the contract for

        sale, Exhibit A to Plaintiffs' Complaint.

62.     Defendants deny the allegations of Paragraph 69, and affirmatively allege that, to the

        extent that there were any problems, that these problems, in large part, were caused by

        Chris Brown, or were known to Chris Brown, the owner and operator of Ancona Escrow.

63.     With respect to Paragraph 70 of the Complaint, Defendants deny any discussions,

        whatsoever, regarding "corrective measures" prior to the sale of stock.  Subsequent to the

        sale of stock, there were some discussions about corrective measures, in which Knaak

        was attempting to mitigate damages complained of by Plaintiffs.  At the time of the

        execution of the sale agreement, Plaintiffs were unaware of any such problems which

        were not equally known to the Plaintiffs.

64.     With respect to the allegations of Paragraph 71, these Defendants affirmatively allege that

        the liabilities complained of, if any, are not material to the value of Ancona Title, and

        further affirmatively allege and assert that Ancona Title has not suffered one penny of

        damages due the issues raised in these pleadings.

65.     Again, with respect to Paragraph 72, Defendants deny that there was any failure to

        disclose any alleged liabilities, or that there was any intentional concealment.

66.     With respect to Paragraph 73 of the Complaint, Defendants deny any wrongful

        inducement or misrepresentation or omissions.  With respect to Paragraph 74, Defendants

deny any material misrepresentations or omissions or any detriment accruing to Ancona Title.

67.    With respect to Paragraph 75 of the Complaint, Defendants deny that Ancona Title is entitled to rescind or void the sale agreement, or to obtain from Knaak a refund of all monies paid.  Defendants further assert that, if for some reason, Ancona Title was entitled to recision, it would be responsible to the Defendants for all monies received through the operation and use of all assets of Ancona Title.

68.    With respect to Paragraph 76, Defendants affirmatively deny that Ancona Escrow has suffered any pecuniary loss whatsoever, and further denies any fraud and misrepresentations, and further denies that Plaintiffs are entitled to recover any money damages, whatsoever as a result of the allegations in this lawsuit.

## COUNT IV

## NEGLIGENT MISREPRESENTATION

69.    Defendants reallege each and every paragraph of this Answer and Counterclaim.

70.    With respect to Paragraph 78, Defendants deny any supplying of false information or omitted material information regarding value of Ancona Title.

71.    With respect to Paragraph 79, Defendants deny any failure to disclose or misrepresentation prior to the execution of the sale agreement regarding the "true facts" of Ancona Title's liabilities.  Defendants deny that there was any information which was unknown to the Plaintiffs which should have been disclosed or communicated.

72.    With respect to Paragraph 80 of the Complaint, Defendants deny any reliance by Ancona Escrow on any false information or omissions.

12

73.    With respect to Paragraph 81 of the Complaint, Defendants deny any misrepresentations or omissions, in general, or in particular, which damaged Ancona Escrow or which might entitle Ancona Escrow to rescind or void the sale agreement.

74.    With respect to the allegations of Paragraph 82 of the Complaint, Defendants specifically deny that Plaintiffs have suffered any pecuniary loss whatsoever, or is entitled to recover any monetary damages claimed, or any negligent misrepresentation, or any other damages which have been claimed.

## COUNT V

## MINNESOTA SECURITIES ACT,
## MINN. STAT. § 80A.01

75.    Defendants reallege each and every paragraph of this Answer and Counterclaim.

76.    Defendants admit the allegations of Paragraphs 84 and 85 of the Complaint, in that, the sale agreement involved the sale of Ancona Title stock to Ancona Escrow.

77.    With respect to Paragraph 86, the Defendants deny that at least three of the title files transferred with the sale of Ancona Title have liabilities that were previously undisclosed or unknown to the Plaintiffs.

78.    With respect to Paragraph 87 of the Complaint, Defendants deny that Ancona Title or Knaak, as sole owner and operator of Ancona Title, knew or should have known of these liabilities prior to the execution of the sale agreement, except as was fully known by Defendants or disclosed to Defendants.

79.   With respect to Paragraph 88, any reference to corrective measures was in reference to actions which occurred after the sale of the stock.  Consequently, any allegation that there was no remedy prior to the sale agreement is irrelevant, as no representation was made.

80.   Defendants specifically deny the allegations of Paragraph 89 of the Complaint, and assert that the alleged liabilities are not material to the value of Ancona Title.

81.   Defendants deny, in their entirety, the allegations of Paragraphs 90, 91, and 92, and specifically deny any failure to disclose or intentional concealment of any liabilities, or material misrepresentation or intentional concealment, or any justifiable reliance on any alleged misrepresentations or omissions.  Defendants further deny any damages suffered by Plaintiffs, and furthermore deny any violation, whatsoever, of the Minnesota Securities Act.

82.   With respect to Paragraph 93, Defendants deny that Ancona Escrow is entitled to any money damages, attorneys fees, costs, or interest under Minn. Stat. §80A.23.

## COUNT VI

### FRAUD, SECURITIES AND EXCHANGE ACT
### OF 1934, §10(b) AND RULE 10B-5

83.   Defendants reallege each and every paragraph of this Answer and Counterclaim.

84.   Plaintiffs admit the allegations of Paragraph 95 of the Complaint, in that the sale agreement involved the sale of Ancona Title stock to Ancona Escrow.

85.   Defendants deny that the purchase of stock involved the sale and purchase of security within the meaning and intent of the Securities Exchange Act of 1934, and the rules and regulations adopted pursuant thereto, and that this was a private transaction, involving the

14

sale of a business, to which the Securities Exchange Act of 1934 was not intended to apply.

86.    Defendants deny the allegations of Paragraphs 97, 98, and 99, as outlined above.

87.    Defendants further deny the allegations of Paragraph 100, in that any alleged liabilities are not material to the value of Ancona Title, and furthermore deny the allegations of Paragraph 101 of the Complaint, and deny any failure to disclose or intentional concealment, or any material misrepresentation.  Defendants further deny any wrongful inducement of Plaintiffs, as asserted in Paragraphs 101 and 102 of the Complaint.

88.    Defendants further deny the allegations of Paragraphs 103 and 104, and deny any wrongful omissions or misstatements, and furthermore deny the allegations of Paragraphs 105 and 106, and deny any such misrepresentations or omissions.

89.    Defendants deny any allegation of damages sustained by Ancona Title as a result of any actions of Defendants.

## COUNT VII

## BREACH OF CONTRACT: SALE AGREEMENT

90.    Defendants reallege each and every paragraph of this Answer and Counterclaim.

91.    Contrary to the assertions of Paragraphs 109, 100, and 111 of the Complaint, the sales agreement stated only in Paragraph 4 that Ancona West shall cease to operate under the name "Ancona Title Services, Corp." or " Ancona Title and Escrow".  The parties may continue to operate under either of those names jointly in other jurisdictions if they mutually agree to any such arrangement in writing."

15

92.     Paragraph 5, furthermore states: "Brown/Ancona Escrow waive any right to ownership of any shares or assets of Ancona West Corporation.

93.     Consequently, the very wording of this contract of sale acknowledges, by Christopher Brown and Ancona Escrow, that Knaak and his company are continuing to do business under the name of "Ancona West."

94.     Contrary to the assertions of Paragraph 110 of the Complaint, Defendants have not used simply the name "Ancona" in the context of real estate services, but, to a very limited extent, have used the name "Ancona West" in connection with North Oaks Title. Defendants further assert that this use of the "Ancona West" trade name is proper and appropriate under the terms of the sale agreement.

95.     Defendants deny that they have failed to transfer Ancona Title's assets, as called for in the sale agreement.

96.     Defendants deny the allegations of Paragraph 113 of the Complaint, and deny any money damages as a result of any alleged breach of the contract sale agreement.

### COUNT VIII

### BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

97.     Defendants reallege each and every paragraph of this Answer and Counterclaim.

98.     With respect to Paragraphs 115 through 119, Defendants deny any breach of any alleged duty of good faith and fair dealing, and furthermore deny, as described above, any failure to disclose any material fact or the true nature and condition of Ancona Title's assets and liabilities.

99.   Defendants further deny any allegations of damages asserted by the Plaintiffs as a result of any such alleged breaches.

**COUNT IX**

**TRADE NAME INFRINGEMENT UNDER THE LANHAM ACT, 15 U.S.C. §§ 1051, ET SEQ. AND COMMON LAW**

100.   Defendants reallege each and every paragraph of this Answer and Counterclaim.

101.   With respect to Paragraph 121 of the Complaint, Defendants admit only that Ancona Escrow purchased Ancona Title from Knaak.  There is nothing in the contract for sale which says that the Plaintiffs purchased the trade name "Ancona."  Defendants assert that Ancona is simply a geographical name.  Furthermore, Defendants affirmatively allege that the contract of the sale itself indicates that Ancona West will continue as a corporation owned by Defendant Knaak.  The agreement specified that Ancona West shall cease only to operate under the name "Ancona Title Services, Corp." or "Ancona Title and Escrow."  It was agreed that the parties could continue to operate under either of those names jointly in other jurisdictions if they mutually agreed to any such arrangement in writing.  Furthermore, in the same sales agreement, Christopher Brown and Ancona Escrow specifically waived any right to ownership of any shares or assets of Ancona West Corporation, and acknowledged that Ancona West Corporation would continue as a separate entity.

102.   With respect to Paragraph 122 of the Complaint, Defendants deny any improper use of the name "Ancona" and further deny that any authorization to use the term "Ancona West" would require the authorization of the Plaintiffs.

103.    Defendants deny the likelihood of confusion as alleged in Paragraph 123 of the
        Complaint.  Defendants assert that consumers are not likely to have been and in fact, have
        not been confused or unable to determine if the services are those of Plaintiffs or
        Defendants, or otherwise deny the allegations of Paragraph 123.

104.    With respect to Paragraph 124 of the Complaint, Defendants deny any likelihood of
        confusion and deny any improper use of any trade name by Defendants and further, as
        above, deny any confusion of actual individuals.

105.    Defendants deny the allegations of Paragraph 125 of the Complaint and deny any
        likelihood of confusion, actual confusion, or other allegations alleged in this complaint.

106.    Defendants deny, in response to Paragraph 126 of the Complaint, that any of their acts
        constitute infringement of Plaintiffs' common law service mark rights in the word
        "Ancona" in violation of the Lanham Act or in Plaintiffs' trade name rights at common
        law.

107.    Defendants further deny the allegations of Paragraph 127 of the Complaint, that there has
        been any trade name infringement, or that any actions have been committed with the
        intent to confuse and deceive.  Defendants further assert that there would be no point in
        any attempt to confuse or deceive, and Defendants furthermore deny that they knowingly
        are willfully drawing upon the good will and reputation of the name in their business
        operations.

108.    Defendants deny any unauthorized acts of infringement as alleged in Paragraph 128 of the
        Complaint, and deny that Plaintiffs have suffered of any such alleged activities.

18

## COUNT X

### UNFAIR COMPETITION UNDER
### THE LANHAM ACT AND COMMON LAW

109.     Defendants reallege each and every paragraph of this Answer and Counterclaim.

110.     Defendants deny the allegations of Paragraph 130 of the Complaint, and assert that the trade name "Ancona," is not distinctive, but is simply the name of a city in Italy.  It is denied that this geographical name is distinctive or protectable, or has acquired a secondary meaning.

111.     With respect to Paragraph 131 of the Complaint, Defendants deny any unauthorized use of the name "Ancona" and deny any likelihood of confusion among consumers.

112.     With respect to Paragraph 132 of the Complaint, Defendants deny that they have utilized Plaintiffs' trade name with the intent to deceive with respect to the sponsorship or affiliation and further deny any motive or reason to do the same.

113.     Defendants further deny the allegations of Paragraph 133, and deny any unfair competition and specifically deny that Plaintiffs have suffered any damages as a result of said actions.

114.     Defendants deny the allegations of Paragraph 134 of the Complaint and assert there has been no violation of 15 U.S.C. §1125(a) or common law with respect to these matters.

### COUNT XI

### MINNESOTA DECEPTIVE TRADE PRACTICES ACT

115.     Defendants reallege each and every paragraph of this Answer and Counterclaim.

19

116.   Defendants deny the allegations of Paragraphs 136 and 137 of the Complaint, deny that
       Plaintiffs own the trade name "Ancona," or that Defendants have utilized the name
       "Ancona" without any required authorization.

117.   With respect to Paragraph 138 of the Complaint, Defendants deny that they have caused
       any likelihood of confusion or misunderstanding as to the affiliation, connection, or
       association between Defendants and Plaintiffs.

118.   Defendants deny the allegations of 139 of the Complaint that any conduct has constituted
       a deceptive trade practice under Minn. Stat. §325.44, or common law.  Defendants further
       deny any damages or injury as alleged in Paragraph 140 of the Complaint.

### COUNT XII

### DECLARATORY RELIEF: INDEMNIFICATION
### UNDER THE SALE AGREEMENT

119.   Defendants reallege each and every paragraph of this Answer and Counterclaim.

120.   With respect to Paragraph 142 of the Complaint, Defendants admit only that they agreed
       to hold Ancona Escrow harmless for any and all liability as may have been or will be
       incurred for any files transferred, up to the time of sale, except those files not identified in
       Attachment A to the sale agreement.  Defendants further point out that Ancona Escrow
       agreed to hold Knaak harmless for any and all liabilities which may have been incurred
       with respect to those files not identified in Attachment A.

121.   Defendants deny the allegations of Paragraph 143 of the Complaint, and deny that any
       files transferred with the sale of Ancona Title have any liabilities that were
       misrepresented to the Plaintiffs.

20

122.   With respect to Paragraph 145 of the Complaint, Defendants deny any actual or

justiciable controversy existing regarding Knaak's obligations under the sale agreement,

and deny, further, in response to Paragraph 146 that Minn. Stat. §555.01, et seq., or 28

U.S.C. §2201, et seq. entitle Plaintiffs to any declaration that Knaak is responsible for

indemnifying Plaintiffs against all liability that has been incurred and deny any such

liability in connection with the files transferred with the sale of Ancona Title.

**COUNT XIII**

**DECLARATORY RELIEF: INDEMNIFICATION**
**UNDER THE INDEMNIFICATION AGREEMENT**

123.   Defendants reallege each and every paragraph of this Answer and Counterclaim.

124.   With respect to Paragraph 148 of the Complaint, Defendants admit that on September 30,

2005, Knaak executed an indemnification agreement, in which he acknowledged financial

responsibility and agreed to indemnify and hold Plaintiffs harmless from any and all

losses incurred by Knaak in connection with "the lawyers title claim or any matter related

in any way thereto."

125.   With respect to Paragraph 149 of the Complaint, Knaak denies liability only to the extent

that there have not been any losses or expenses incurred as such that any indemnification

would be necessary or appropriate.

126.   With respect to Paragraph 150, Defendants deny that there is any actual or justiciable

controversy existing regarding Knaak's obligations under the indemnification agreement

and further deny the allegations in Paragraph 151 of the Complaint that Minn. Stat.

§555.01, et seq., or 28 U.S.C. §2201 et seq. would entitle Plaintiffs to any declaration for any perceived losses or expenses.

## COUNT XIV

## BREACH OF FIDUCIARY DUTY

127. Defendants reallege each and every paragraph of this Answer and Counterclaim.

128. Defendants admit that Knaak, as President of Ancona Title, stood in a fiduciary relationship with Ancona Title, but affirmatively allege that Knaak did not breach any fiduciary duty.  Defendants admit the allegations of Paragraph 153 of the Complaint in that Knaak had a duty to act in the best interests of Ancona Title.

129. Defendants deny the allegations of Paragraph 154 and specifically assert that Knaak did not fail to properly remedy any liabilities against Ancona Title during the time he was President, nor to Knaak ever fail to act in the best interests of Ancona Title.  Defendants further allege that there were no negligent or careless acts done by Defendant Knaak which damaged the value of Ancona Title.

130. Defendants deny the allegations of Paragraph 155 of the Complaint that there was any breach of fiduciary duty or the allegations of Paragraph 156, and assert that there was no significant damage, including diminution in value of the corporation as a result of any such activities.

## AFFIRMATIVE DEFENSES

131. Defendants reallege each and every Paragraph of this Answer and Counterclaim.

132.    In response to the allegations of the Complaint, and in addition to the allegations stated

        above, Defendants assert the affirmative defenses of estoppel, laches, statute of frauds,

        waiver, and equity, including the equitable defense of unclean hands.

## COUNTERCLAIM

For their Counterclaim against Plaintiffs, Defendants state and allege as follows:

1.      Defendants reallege each and every paragraph of this Answer and Counterclaim.

2.      The memorandum of understanding and contract for sales and asset indemnification

        agreement relied upon the promises of Plaintiff, Ancona Escrow, Inc., and Christopher

        Brown, on behalf of his corporation, to make six monthly installments of $15,000.00

        each, for a total of $90,000.00, as consideration for the shares, books, title files and assets

        of Ancona Title.

3.      The promissory note, dated July 25, 2005, duly signed by Christopher H. Brown as

        President of Ancona Escrow, Inc., promised to pay to the order of Frederic W. Knaak the

        sum of $90,000.00, without interest, except upon default, and, then, at the rate of US

        Bank's prime commercial lending rate, plus 1.5% until the amount in default is paid in

        full plus interest.

4.      Pursuant to the promissory note, this payment was to be made by six equal installments of

        $15,000.00 consecutively, due on or before the first calendar day in each successive

        month from August, 2005, to January, 2006, inclusive.

5.      The promissory note further provided that if the note was not paid by the due date, the

        promissor promises to pay all costs of collection, including without limitation, the costs

23

of collection agency fees or commissions, and reasonable attorneys fees, whether or not a lawsuit was commenced.

6.      Pursuant to the provisions of the promissory note, if the promissor failed to timely pay in full each monthly installment as and when due, the entire note would be due immediately.

7.      Plaintiff, Encona Escrow has, without justification or excuse, failed to make payment of the last two payments due and owing under the note.  As a result, Defendant Knaak is entitled to judgment against Ancona Escrow, Inc., in the amount of $30,000.00, together with interest at the rate agreed upon in the promissory note, and all attorneys fees and costs expended in attempting to collect on the remaining amounts due and owing under the promissory note.

### PRAYER FOR RELIEF

WHEREFORE, Defendants demand judgment against Plaintiffs, that the pretended Complaint of Plaintiffs against Defendants be deemed frivolous and without merit, and otherwise dismissed, and that Defendants have their costs and disbursements necessarily incurred in defending against this action.

FURTHERMORE, Defendant, Frederic Knaak, demands judgment against Ancona Escrow, Inc., on its counterclaim, in the amount of $30,000.00, together with all interest accrued and owing, plus attorneys fees and expenses of collection, as stated in the promissory note of July 25, 2005, and whatever to the Court appears just and equitable.

A TRIAL BY JURY IS HEREBY DEMANDED.

Dated this 27th day of February, 2006.

**SORTLAND LAW OFFICE**

**s/ Paul A. Sortland**

**Paul A. Sortland, #103573**
120 South Sixth Street, Suite 1510
Minneapolis, Minnesota 55402-1817
(612) 812-4218

**ATTORNEY FOR DEFENDANTS**

**ACKNOWLEDGMENT**

Paul A. Sortland hereby acknowledges that costs, disbursements, witness fees, and reasonable attorney's fees, may be awarded, pursuant to Minnesota Statutes § 549.211, for a party acting in bad faith or asserting a frivolous claim.

s/ Paul A. Sortland

Paul A. Sortland