UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ancona Escrow, Inc., a Minnesota                    Case No. 06 CV 504 (DSD/JJG)
corporation, and Ancona Title Services,
Inc., a Minnesota Corporation,

                                    Plaintiffs,

vs.                                                 **MEMORANDUM IN SUPPORT OF
                                                    PLAINTIFFS' MOTION TO
Ancona West Corporation, d/b/a North                COMPEL DISCOVERY**
Oaks Title, innesota corporation, and
Frederic W. Knaak,

                                    Defendants.

## BACKGROUND

### I.    BACKGROUND AND POSTURE OF THE CASE

Relevant facts alleged in the complaint are as follows.  Plaintiff Chris Brown and

Defendant Frederic Knaak did business together as partners in Ancona Title Services

Corporation ("Ancona Title").  Brown was responsible for the closing and escrow

functions of the business and Knaak was responsible for underwriting and post-closing

issues such as recording documents.  Eventually, the parties formalized their divided

responsibilities in separate corporations: Knaak became the sole owner of Ancona Title

and Brown formed Ancona Escrow, Inc. ("Ancona Escrow").  In August 2005, Ancona

Escrow purchased 100% of Ancona Title's stock.

Knaak is a lawyer with over 25 years experience practicing law and owns an 85%

percent interest in the firm of Knaak & Kantrud P.A.  Brown is not a lawyer and, until

this litigation, his knowledge of legal concerns and contact with lawyers came almost exclusively from his relationship with Knaak and the lawyers at Knaak's firm. Nevertheless, Knaak, an attorney and the seller in this stock deal, presented Brown with an extraordinarily unprofessional purchase agreement which contained no representations or warranties or any of the other boilerplate provisions typically found in any contract drafted by an attorney. Unlike the purchase agreement, however, the promissory note, in which Brown promises to pay Knaak in installments for Ancona Title's stock, is sophisticated.

Almost immediately after the sale of Ancona Title, the Brown discovered the incidents that give rise to this litigation, which are set forth in detail in the complaint. Brown discovered that Knaak had failed to disclosed a number of unresolved claims against Ancona Title, which subjected Ancona Title to liability far in excess of the purchase price of the company. Brown also discovered that assets, cash and the corporate documentation, which belonged to Ancona Title at the time of the sale, had largely not transferred pursuant to the sale agreement. He also discovered that Knaak continued to use the trade name "Ancona" and "Title" in the real estate business, infringing on the name and causing confusion in the market place.

Brown retained counsel to resolve the contractual breaches with defendants. After a number of ill-fated efforts, plaintiffs' counsel sent a demand letter to Knaak threatening litigation. Knaak, in response, offered to rescind the sale agreement – he would take the company back subject to an accounting and would return the purchase price paid to date. Plaintiffs' counsel drew up the rescission agreement for Knaak to sign but Knaak refused

to sign the agreement, despite a clear offer and acceptance of all material terms by the parties.

In February, 2006, plaintiffs filed the complaint in this case, alleging a breach of the settlement agreement, breach of contract, statutory securities fraud and common law fraud, breach of duty of good faith and fair dealing, breach of fiduciary duty and trade name infringement.  Defendants counterclaimed for breach of the promissory note.

## II.     <u>HISTORY OF THE DISCOVERY DISPUTE</u>

Plaintiffs served defendants with Plaintiffs' First Set of Combined Discovery on the date of the meet and confer to prepare the Rule 26(f) report, April 7, 2006.  (Ex. U, Magnuson Aff.).  Defendants served their discovery on May 5, 2006.

On May 5, 2006, defendants served their Answers and Responses to First Set of Combined Discovery from Plaintiffs ("Defendants' Answer to Discovery").  (Ex A, Magnuson Aff.)  In the answer, defendants stated that although documents were currently available, they would not be available for inspection until June 1, almost a month later. The answer was remarkable in that it refused to answer nearly all the interrogatories and agreed to produce almost no documents.  For example, defendants refused to divulge information related to corporate documents belonging by Ancona Title prior to the sale based primarily on the ground that the information requested was privileged or protected as trade secrets.

Plaintiffs responded to defendants' answer on May 12 with a 10 page letter going interrogatory by interrogatory and document request by document request, pointing out how untenable defendants' objections are.  (Ex. B, Magnuson Aff.)  Plaintiffs also

demanded immediate access to documents that were admittedly in defendants' possession and protested the unexplained one month delay in production. (*Id*.) To date, defendants have not responded to a single point plaintiffs raised in that letter or in subsequent letters demanding compliance with the rules of discovery in the form of either a response to plaintiffs' objections or meaningful interrogatory answers and document production.

Rather than engage plaintiffs, defendants in a May 15 letter only demanded that that plaintiffs dismiss the action and threatened sanctions, on the basis that Plaintiffs allegedly have no damages. (Ex. C, Magnuson Aff.) Plaintiffs responded in two letters on May 17 and renewed their demand that defendants immediately produce the documents they admit were available and respond in good faith to plaintiffs' discovery. (Ex. D & G, Magnuson Aff.) Plaintiffs, who sought declaratory and injunctive relief as well as damages, reminded defendants that the majority of evidence necessary to prove damages was in their hands. They also stated their intention to bring a motion to compel discovery if necessary. The next day, counsel for defendants responded with a letter complaining that he was too busy to "resolve" the parties discovery issues. He also suggested that plaintiffs' discovery requests were somehow irrelevant as "you really have all of the non-privileged documents." (Ex. E, Magnuson Aff.). In the letter, he sought to have the matter informally resolved by the Court by telephone hearing. (*Id*.) The next day, May 19, plaintiffs responded and again demanded access to the documents defendants admitted were available but would not "make available" to plaintiffs. Plaintiffs stated that they regretted involving the Magistrate Judge to compel even the most basic level of production. (Ex. F, Magnuson Aff.).

On June 2, plaintiffs served defendants with Plaintiffs' Answers to Defendants' First Set of Interrogatories and Plaintiffs' Responses to Defendants' First Request for Production of Documents.  (Ex. Y, Magnuson Aff.)  In those responses, plaintiffs made a number of general objections that certain requests are overbroad, vague and burdensome, but agreed to make the vast majority of requested documents available to defendants. Plaintiffs also bates numbered the documents and prepared a privileged log. (*See* Magnuson Aff, ¶ 25.)  Incredibly, defendants have not once sought to make arrangements to review the documents they requested.  (*Id*.)  In the cover letter, plaintiffs also renewed their call for a good faith production from defendants.  (Ex. H, Magnuson Aff.)

On June 9, plaintiffs again sent a letter to defendants complaining that they had still not received a single document or a meaningful response to their May 4 letter objecting to defendants' discovery refusals. (Ex. I, Magnuson Aff.)   In that letter, plaintiffs notified defendants that they reserved the right, subject to court approval, to amend the pleadings or add parties due to the absolute lack of discovery from defendants. Plaintiffs also pointed out that the parties needed to get the process moving if there were to be any chance at a settlement with out prolonged litigation.  (*Id*.)

Plaintiffs again wrote defendants on June 12.  This letter conveyed even greater urgency regarding the need to obtain corporate documents and financial information because plaintiffs needed to prepare income tax returns for Ancona Title for 2005 but lacked previous years' returns and the financial data for the first half of 2005.  (Ex. J, Magnuson Aff.)

On June 12, defendants finally replied to plaintiffs letters.  In the letter, defendants counsel stated that he was "puzzled" at plaintiffs' letter of June 9, because he had not received "any request from you to come and visit or to review those documents." (ex. K, Magnuson Aff.)   Defendants also sent another June 12 letter stating that all tax documents had been provided to plaintiffs at some undisclosed time. (Ex. L, Magnuson Aff.)  Plaintiffs responded, demanding that the documents be made available on June 15. They also repeated the need for defendants to provide the requested tax information, in addition to all the requested corporate documents, immediately.   Plaintiffs reminded defendants that they were required to get responsive documents under their control, if not in their possession, and that Ancona Title's former accountant, Brad Olson, could provide copies of the requested documents.  (Ex. M, Magnuson Aff.)

Defendants in a letter dated June 14 agreed to make documents available for inspection.  They also stated that they were in possession of the 2004 tax returns, which would be available at that time, but not any other tax returns. (Ex. O, Magnuson Aff.) Plaintiffs responded the same day, informing defendants that they intended to get the documents directly from Olson, Ancona Titles' former accountant.  (Ex. N, Magnuson Aff.)

On June 15, plaintiffs' counsel inspected defendants paltry production.  At the time, counsel for defendants stated that he doubted that there was anything of substance in the documents available that day.  (Magnuson Aff. ¶ 26.)  On June 19, defendants' counsel contacted plaintiffs' counsel and stated that he had located an additional red rope of documents.  Plaintiffs arranged for a messenger to pick them up, copy them and return

the originals.   The "new" documents were in fact the same red rope counsel had previously made available.  (*Id*.)

On or around June 17, Chris Brown talked to Olson, who had agreed to give him copies of Ancona Title's documents in Olson's possession.   (Magnuson Aff, ¶ 27.) However, a day or two later, when Brown arranged to pick them up, Olson stated that Knaak had asked for the documents that he gave the originals to Knaak and no longer had anything to give to Brown.   (*Id*.)   Plaintiffs sent defendants a letter protesting what appeared to be efforts by Knaak to sanitize the discovery.   (Ex. P. Magnuson Aff.) Counsel sent a similar letter to Olson and reminded him that he must safeguard any other information responsive to plaintiffs' discovery requests.   (Ex. W, Magnuson Aff.) Shortly thereafter, defendants forwarded to plaintiffs documents purported to be from Olson. (*Id*.)

On June 23, defendants very modestly supplemented their earlier production but did not withdraw any of their claims of privilege or other grounds not to produce documents responsive to plaintiffs' requests. (Ex. Q, Magnuson Aff.)  The supplemental answer, however, was improperly notarized.   Knaak and defendants' counsel simply inserted a copy of the certification and signature page from the previous answer, dated May 5, 2006 (ex. A), crossed out some of the notarization information, and served the supplemental answer.  (Ex. T, Magnuson Aff.; *id*. at ¶ 28.)[1]  An improperly notarized or

---

[1] Plaintiffs do not automatically assume that the faulty notarization was intentional fraud but that it was likely a mistake or regrettable shortcut.  Unlike opposing counsel, who frequently

other wise invalidly signed Rule 26(g)(2) certificate to a discovery response shall be stricken under the rule unless promptly signed.  Defendants have not submitted a properly notarized supplemental discovery response to date.

Plaintiffs' counsel again wrote to defendants on August 31, demanding compliance with the rules of discovery in the form of production of responsive documents and a response to plaintiffs' objections to defendants' grounds for refusing to produce entire categories of documents. (Ex. R, Magnuson Aff.)  The letter also reiterated plaintiffs' concern regarding the possibility that Knaak may have obstructed the discovery process by demanding Ancona Title's original documents from Olson and inducing Olson to violate rules of best practices for CPAs.[2]

---

threatens to bring sanctions for, among other things daring to bring a lawsuit against his client (*see e.g.* Ex. C, Magnuson Aff.), plaintiffs are reluctant to characterize this error as fraud.

[2] Because Olson had documents belonging to Ancona Title and stated that he no longer had the originals, plaintiffs issued a subpoena to Olson requesting those documents and other responsive documents. (Magnuson Aff., ¶ 29)  Counsel for plaintiffs, Kevin Magnuson, called defendants' counsel to discuss whether Knaak, a party to the lawsuit, or defendants' counsel would represent Olson at the deposition.  Counsel never returned the calls.  (*Id.*)

On September 26, plaintiffs' counsel attempted to depose Olson.  He asked Olson directly about whether he was represented by counsel.  Olson replied that he was not.  Counsel for plaintiffs extensively questioned Olson about what he did to prepare for the deposition and the production of documents.  Olson replied that he had had a number of conversations with Knaak, an experience litigator, and had gone over the subpoena with him.  (*Id.*)  Olson gave plaintiffs only documents that he stated belonged to Ancona Title.  (*Id.*)

Following the Olson deposition and on the day of the subpoenaed deposition of Alan Kantrud, Knaak's law partner, defendants' counsel faxed a letter to plaintiffs' counsel informing him that the subpoenaed deposition of Kantrud, scheduled for that day, would not take place because plaintiffs' counsel had failed to notify opposing counsel of the subpoenas.  (*Id.*)

After verifying that the statement was correct (both subpoenas had gone out together), plaintiffs' counsel sent a letter to defendants' counsel apologizing for the inadvertent mistake and agreeing not to use the deposition so as not to prejudice the defendants in any way.  (Ex. S, Magnuson Aff.) The court reporter did not prepare a final transcript.  Counsel also sent a letter to Olson, informing him of the lack of notice to opposing counsel and asking him to identify any documents that he produced that did not in fact belong to Ancona Title, so plaintiffs' counsel

Plaintiffs have attempted in good faith to resolve this discovery dispute without brining a motion to compel. Plaintiffs have written at least 15 letters attempting to resolve this dispute while defendants have done absolutely nothing. At no point did they attempt to demonstrate that their boilerplate claims of privilege and trade secret were valid. In fact, defendants never made an effort to interact with plaintiffs on the merits of the discovery dispute, making instead conclusory demands for dismissal of the lawsuit. After a final attempt to facilitate a conversation between the parties and avoid filing this motion, plaintiffs initiated a meet and confer conversation over the telephone (which both parties agreed constituted a meet and confer pursuant to Local Rule 37.1) (Magnuson Aff., ¶ 30.) Defendants' counsel, in keeping with defendants' posture throughout the discovery period, refused to discuss the matter on the merits and the parties had a completely conclusory meet and confer on the subject. (*Id*.) In fact, defendants have not at any point acted in good faith with respect to their discovery obligations. Therefore, plaintiffs request that the Court review the unfortunately lengthy collection of discovery requests and responses herein, order defendants to comply in good faith with the rules of discovery, produce all material responsive to plaintiffs' discovery requests, and establish a penalty for failing not to do so. If, in the Court's judgment, defendants' positions are beyond the pale of appropriate conduct in discovery, plaintiffs urge the court to take

---

could return them. Olson did not request the return of any documents and counsel for plaintiffs believes that no such documents were produced. (*Id*.) Defendants have threatened to move for sanctions despite plaintiffs' counsel's immediate actions to rectify the mistake, presumably in an effort to distract attention from defendants' lack of good faith with respect to their discovery obligations.

whatever additional measures the Court may deem equitable and just in this matter, including but not limited to awarding attorneys fees associated with plaintiffs' efforts to obtain discovery from defendants.

## ARGUMENT

Defendants' responses to plaintiffs' interrogatories and document requests are almost entirely unresponsive.  In fact, it is difficult to avoid the conclusion that the defendants' intentions are simply to avoid any meaningful discovery obligation at all. Defendants have failed to provide even basic information requested pursuant to Federal Rules of Civil Procedure 33 and 34.  Plaintiffs' discovery is essential to the resolution of plaintiffs' claims and to its defense of defendants' counter-claims.

The Court need only to look to the text of Rule 37(a)(2)(B) for plaintiffs' basis for compelling adequate discovery responses.  "If a deponent fails to answer a question propounded or . . . a party fails to answer an interrogatory submitted under Rule 33, or if a party, in response to a request for inspection submitted under Rule 34, . . . fails to permit inspection as requested, the discovering party may move for an order compelling an answer . . . or an order compelling inspection in accordance with the request." Fed.R.Civ.P. 37(a)(2)(B).

Under Rule 26(b)(1), plaintiffs are entitled to "discovery regarding any matter not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents or other

tangible things and the identity and location of persons having knowledge of any discoverable matter." And, as the federal courts have long recognized, "relevance" must be "construed broadly to encompass any matter that bears on, or could reasonably lead to other matters, that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sands,* 437 U.S. 340, 351 (1978).

Defendants' responses to plaintiffs' interrogatories and requests for production of documents is clearly relevant under Rule 26(b)(1), and defendants have failed to provide adequate discovery responses as required under Rule 37(a)(2)(B). Defendants' objections to plaintiffs' discovery requests lack merit and in fact are in some instances not even colorable but blatantly attempt to stall discovery. In fact, they have succeed to date, producing very little in meaningful information and preventing the litigation from moving forward to the deposition of the parties and a resolution on the merits.

Defendants inadequate responses and unsupported objections are addressed below.

## I.    PRIVILEGED INFORMATION

Defendants have asserted numerous objections to specific discovery requests based on attorney-client, work product or proprietary privileges. Under Federal Rule of Civil Procedure 26(b)(5), a party who withholds information based on privilege:

> shall make the claim expressly and shall describe the nature of the documents, communications or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Fed.R.Civ.P. 26(b)(5).

The Rules further require that objections to interrogatories or to requests for production of documents be stated with specificity. Fed.R.Civ.P. 33, 34(b). Judge Murphy of the District Court summarized the law as follows:

> [w]hile defendants may legitimately withhold documents from plaintiffs on attorney-client privilege grounds, the burden of proving the privilege applies lies squarely with defendants. A general allegation of privilege is insufficient to satisfy defendants' burden: defendants must provide enough information to enable a court to determine the facts which support the claim of privilege.

*In re Wirebound Boxes Antitrust Litigation*, 129 F.R.D. 534, 537 (D. Minn. 1990 (Murphy, J.) (citations omitted) (ordering defendants to produce enough information to just the claim of privilege). Magistrate Judge Nelson more recently expanded upon this holding: "[a] boilerplate objection on grounds of privilege is therefore inadequate because it fails to articulate the particular harm that would result if the party were required to respond. *Gulf Insurance Co. v. Skyline Displays Inc.*, No. 02-3503, 2003 U.S. Dist. Lexis 26511 (D. Minn, Oct. 20, 2003) (Nelson, M. J.) (citation omitted). In each of their claims of privilege, defendants fail to articulate any basis whatsoever for the claim. They do not identify the nature of the information responsive to in an interrogatory answer or not produced, preventing plaintiffs and the Court from assessing the applicability of the privilege. Furthermore, they refuse to answer interrogatories and produce documents based only on boilerplate objections without articulating the particular harm they would suffer if required to respond.

The relevant discovery requests and responses are as follows:

**Interrogatory 3:**     Identify any and all documents you consulted, examined or referred to in the preparation of the answers to these Interrogatories, and identify each

document that related in any way to any of the averments of the Complaint.

**Answer:**        This interrogatory is objected to as seeking information which is barred by the work product and attorney-client privileges.

                            *        *        *

**Interrogatory 19:**   Describe the scope the engagement and the nature of the legal services you and your law firm, or any other attorney of law film, accountant, accounting firm or consulting firm provided to Ancona Title and identify all engagement letters, invoices, corporate documents related to the representation, opinion letters or work product related to the representation.

**Answer:**        This interrogatory is objected to as seeking information which is confidential, protected by the attorney-client privileges, work product privileges, and seeks trade information, and other information which is irrelevant and not discoverable.

**Interrogatory 20:**   Identify all bank accounts by name of institution, address, telephone number and account number you used to conduct business on behalf of Ancona Title.

**Answer:**        This interrogatory is objected to as seeking information which is confidential, protected by the attorney-client privileges, work product privileges, and seeks trade information, and other information which is irrelevant and not discoverable. Without waiving said objection, see answer to Interrogatory Number 18.[3]

                            *        *        *

**Request 17:**    All documents identified, used or relied upon in preparing your Response to Plaintiffs' Interrogatories.

**Response:**      This request is objected to as seeking information which is violative of the work product privilege, attorney-client privilege, and otherwise seeks information which is not discoverable.

(Ex. A, Magnuson Aff.)

Defendants declined to provide any answers to interrogatories or to produce any documents on the basis of an assertion unsubstantiated privileged.  As both defendants'

counsel and the individual defendant in this matter are experience litigators, it is surprising that defendants did not even provide a general statement of the basis of the privilege claim, and the names, dates and basic information that would allow plaintiffs and the Court to determine the applicability of the privilege. *See* Fed.R.Civ.P. 26(b)(5); *see In re Wirebound Boxes Antitrust Litigation*, 129 F.R.D. at 537.

The information plaintiffs seek is discoverable. Asking for a party to identify documents consulted or referred to in preparing answers to interrogatories, as does Interrogatory 3, is standard discovery practice. The request ensures that the party produces everything that is relevant to any of the discovery requests that, because of word choice or unfamiliarity with the details of the party's business or record keeping, arguably falls outside of any individual interrogatory or document request. If the party consulted the document, or otherwise knows of its existence, in connection with preparing the discovery response, it is relevant and must be produced. Similarly, documents that relate to the averments in the complaint are also relevant and discoverable. The parties may argue that a document does or does not relate to the subject matter of the discovery request or the complaint but a party cannot categorically refuse to produce the documents on the basis of privilege. The point is rather that if a party comes across relevant material during the course of investigating the case, that party has an obligation to share it with the other side and support their production.

---

[3] Defendants object to interrogatory 18 on the basis that they claim the relevant documents have been transferred to plaintiffs. See *infra*.

Defendant Knaak, in numerous correspondence to third-parties, described himself not as the owner or president of Ancona Title but as its lawyer.  In fact, unbeknownst to the purchaser of Ancona Title, Chris Brown, Ancona Title paid Knaak large fees for allegedly for his legal services.  Interrogatory 19 seeks information regarding the scope of the engagement and nature of legal services provided to Ancona Title by Knaak and the law firm of Knaak & Kantrud, as well as information related to other law, accounting or consulting firms retained on behalf of Ancona Title while owned by Knaak.  This information is not protected by any privileged as it relates to legal and other services performed on behalf of Ancona Title. Knaak sold 100% of the company's stock to Brown and thus, Ancona Title and not Knaak would hold any privilege.  Finally, the requested information falls firmly into the category of Ancona Title's business and corporate records, which should have been transferred in their entirety with the sale of the corporations' stock, and is relevant to the question of whether defendants breached the sale agreement.

Defendants in their Supplemental Answers of Defendant to First Set of Combined Discovery from Plaintiffs expressly preserved their objections to Interrogatory 19 but stated that all the information had been provided to plaintiffs:

**Interrogatory 19:**   Describe the scope the engagement and the nature of the legal services you and your law firm, or any other attorney of law firm, accountant, accounting firm or consulting firm provided to Ancona Title and identify all engagement letters, invoices, corporate documents related to the representation, opinion letters or work product related to the representation.

**Supp. Answer**:   Without waiving the objection stated earlier, all of this information has been provided to you, and is no longer in our possession.

(Ex. B, Magnuson Aff.)  In fact, defendants did not identify or produce any invoices or other records responsive to the interrogatory.

Interrogatory 20 requests that defendants identify all bank accounts used to conduct business on behalf of Ancona Title.[4]  Again, the information is not confidential, a trade secret or protected by any privilege for the same reasons that Ancona Title's corporate documents are not privileged.  Defendants are required to identify all accounts from which monies were disbursed or into which monies were received regardless of whether the accounts were in the name of Ancona Title or in the name of an individual. This information is relevant to Plaintiffs' breach of contract claim, fraud claim and to the claim that Mr. Knaak breached his fiduciary duty to Ancona Title.

Defendants produced to plaintiffs certain QuickBook files held by Ancona Title's former accountant, Brent Olson, in June.  These bookkeeping records indicate the existence of a number of financial documents and records relevant to this and other discovery requests which defendants have not produced.  The general instructions incorporated into each discovery request require defendants to identify information and produce documents not only in their possessions but in their control as well:

> n.    In responding to these Interrogatories and Document requests, all information and/or documents are to be divulged that are in your possession, custody or control or that of your attorneys, investigators,

---

[4] Additional discovery requests sought similar information but defendants objected to the requests not on privileged grounds but on the grounds that the information is private, confidential and confidential and is protected as trade secret information.  Plaintiffs address that objection below.

> agents or other representatives.  In responding, you must furnish all information available.

(Ex. A.)  The information requested in Interrogatory 20 is in defendants' control and should have been produced.

Defendants have failed to make even a colorable argument that the information sought in any of these requests is protected by attorney-client or work product information.  That defendants asserted only boilerplate statements privilege and did not prepare a privilege log demonstrates that defendants have not made their objections in good faith but sought to obstruct the plaintiffs right to discovery under the Federal Rules of Civil Procedure.

## II.    <u>TRADE SECRET, PROPRIETARY OR OTHER CONFIDENTIAL INFORMATION</u>

Defendants have refused to answer interrogatories and produce documents based on boilerplate assertions that the requested information is protected as trade secrets or as proprietary or confidential information.  None of the information requested can be called a trade secret with a straight face.  Defendants do not even attempt to make a showing that the information in question is a trade secret or otherwise confidential.  Eight Circuit Judge Roger Wollman, writing for a unanimous court, stated that the "the party opposing discovery must show that the information is a 'trade secret or other confidential research, development, or commercial information,' under Rule 26(c)(7) and that its disclosure would be harmful to the party's interest in the property."  *In re. Remington Arms Co., Inc.*, 952 F.2d 1029, 1032 (8th Cir. 1991) (quotation omitted).  Defendants must make a showing that the information in question in fact does contain trade secrets.  At a

minimum, the Court should review the information in camera to decide this threshold question. *See id*. at 1032-33.

The requests at issue are as follows:[5]

**Interrogatory 6:**   Provide a list of all closing transactions conducted by Ancona Title, you, or any person authorized by you, or conducted on insurance issued through Ancona Title, including but not limited to transactions conducted by Alan Kantrud, Marathon Title Company, or conducted by North Oaks title or Ancona West, the file number, property address, date of transaction, client's name, the person or persons substantially involved in the transaction and in what capacity.

**Answer:**   This interrogatory is objected to as over broad and also seeks proprietary and trade secret information.

*      *      *

**Interrogatory 11:**   List all entities and their subsidiaries and related entities, which you own, have an interest in or for which you are an officer or director, including for each the type of entity it is, what its primary business purpose is, where it is incorporated, registered or domiciled and other business names as well as its principal place of business.

**Answer:**   This interrogatory is objected to as overbroad and burdensome, and seeking private confidential information which has no relevance to this lawsuit.

*      *      *

**Request 5:**   All Ancona Title bank statements or bank statements or accounts used to transact business on behalf of Ancona Title.

**Response:**   This request is objected to as seeking private and confidential information, which is irrelevant, and is protected as trade secret information.

**Request 6:**   All Ancona Title tax return documents, including supporting documentation thereof, and your personal tax return documents and supporting documentation thereof for years in which you claimed deductions or income associated with Ancona Title.

**Response:**   This request is objected to as seeking trade secret information and information which is otherwise held confidential and not discoverable.

---

[5] In addition to these requests, defendants objected to Interrogatories 19 and 20, quoted above.

This is also objected to as seeking information, which is not likely to lead to relevant information.

**Request 7:**       All Ancona Title financial statements, corporate documents and payroll detail.

**Response:**       This request is objected to as seeking trade secret information and information which is otherwise held confidential and not discoverable. This is also objected to as seeking information, which is not likely to lead to relevant information.

                         *        *        *

**Request 12:**       All corporate credit card statements related to Ancona Title and all your personal credit card statements related to transactions on behalf of Ancona Title.

**Response:**       This is objected to as seeking private and confidential information, which would disclose trade secrets, and other information which is not relevant to the case under consideration.

(Ex. B, Magnuson Aff.)

Plaintiffs' discovery requests for information related to the business of Ancona Title prior to the sale simply cannot be confidential and withheld from the purchaser of that company. Defendants have made no showing that plaintiffs' requests seeking information related to undisclosed liabilities of Ancona Title, fraud, breach of fiduciary duty and trade name infringement are entitled to any protection whatsoever. Furthermore, while this information may be confidential to the general public, a party in litigation must overcome the right of an opposing party to obtain evidence that it is relevant to the litigation and necessary to prove their claims at trial. Plaintiffs in their May 12, 2006 response to defendants' discovery objections stated that if defendants can meet the legal standard for information to be protected on the basis of trade secrets or confidentiality, plaintiffs would accept a mutually agreed upon protective order.

Defendants have never responded to that offer or for that matter, to any other point in any of plaintiffs' letters.

Again, blanket assertions that information is a trade secret does not relieve defendants from answering the interrogatory. Defendants must establish that the information rises to the level of a trade secret or proprietary information. To the degree that defendants can meet that standard, defendants' response may be subject to a protective order. There is absolutely no basis to refuse to produce responsive documents.

## III. OBJECTIONS THAT PLAINTIFFS' REQUESTS ARE OVER BROAD, VAGUE AND BURDENSOME

Defendants also have refused to answer interrogatories or produced documents entirely or in part based on objections that the requests are overbroad, vague or burdensome. Yet defendants at no time, either in their Answer or Supplemental Answer to plaintiffs' discovery, or in response to plaintiffs' voluminous correspondence articulating the basis for the requests and demanding a good faith response, have not made a single argument as to why these objections release them from complying with their discovery obligations.

Plaintiffs' request and defendants' responses are as follows:[6]

**Interrogatory 7:**    Identify all oral communications you have had with any present or former employee, team member, co-worker, agent, servant, officer or underwriter of Plaintiffs regarding or pertaining in any way to the averments in the Complaint, and for each such communication, identify any documents or

---

[6] Again, plaintiffs only quote requests that are not quoted elsewhere. Plaintiffs incorporate their arguments regarding the breath, focus and manageable nature of their requests into responses that address defendants' other objections.

tape recordings created during or following each such oral communication or document that were referred to during such communication.

**Answer:**      This interrogatory is objected to as seeking information which is overbroad and burdensome.

**Interrogatory 8:**      Identify all internal oral communications between any present or former employee, team member, co-worker, agent, servant, officer or underwriter of Plaintiffs regarding or pertaining in any way to the averments in the Complaint, and for each such communication, identify any documents or tape recordings created during or following each such oral communication or document that were referred to during such communication.

**Answer:**      This interrogatory is objected to as seeking information which is overbroad and burdensome.

*      *      *

**Interrogatory 12:**      Describe the general framework and make-up of your computer and voicemail systems currently in use and in use during the past ten (10) years, including the mechanisms for creating and the location of your back-up or emergency tapes and data, and identify the person(s) with the most knowledge regarding the storage organization and retrieval of computerized and other data, including your electronic mail and voicemail systems.

**Answer:**      This interrogatory is objected to as seeking confidential and private information, and information which is irrelevant to this lawsuit.

*      *      *

**Request 10:**      All underwriter contracts and documents related thereto.

**Response:**      This request is objected to as seeking irrelevant information and is a request which is overbroad and burdensome.

*      *      *

**Request 13:**      All marketing, informational materials or other documents, including but not limited to documents related to websites, biographies, public statements, media reports or descriptions of your services or those of any entity in which you are involved, which include or use the term "Ancona" in connection with real estate services.

**Response:**      This interrogatory is objected to as overly broad, ambiguous and unduly onerous in its breadth and description, and requires production of information not relevant to this action. Subject to the foregoing, the current website for North Oaks Title contains a small logo for Ancona West, as do its desk calendars.

*        *        *

**Request 16:**          All documents that refer or relate to any and all defenses that you are asserting in this action.

**Response:**            This request is objected to as vague and indefinite, overbroad and burdensome, and incapable of precise understanding.

*        *        *

**Request 11:**          All documents related to the establishment of Ancona West or North Oaks Title, including but not limited to incorporation documents, which refer to Ancona Title, Ancona Escrow, Christopher Brown or Debra Brown.

**Supp. Response:**      Without waiving the previous objections, there are no documents which refer to Ancona Title, Ancona Escrow, Christopher Brown, or Debra Brown. To the extent the documents for the establishment of Ancona West or North Oaks Title exist, otherwise, this is objected to as overbroad and burdensome, and irrelevant. To the extent Plaintiffs are truly interested in this information, they may be obtained from the Minnesota Secretary of State.[7]

## IV.   DOCUMENTS ALLEGEDLY IN PLAINTIFFS POSSESSION, DO NOT EXIST OR REFERRED TO IN PLEADINGS

**Interrogatory 1:**     Identify each and every person who assisted in preparing responses to these Interrogatories. With respect to each such person, identify the interrogatories for which they assisted.

**Answer:**              Frederic W. Knaak, with the assistance of his attorney, Paul Sortland, prepared the responses to these Interrogatories.

**Interrogatory 2:**     Provide the name, address and telephone number of each person known to you who has or may have knowledge or information about the matters asserted in the Complaint and describe what information you believe each such person possesses.

**Answer:**              See Defendants' Rule 26(a) Disclosure of Witnesses

*        *        *

**Interrogatory 13:**    Provide a list of files for which you agreed to indemnify Ancona Title and for which Ancona Escrow agreed to indemnify Knaak pursuant to the

---

[7] Defendants objected to Document Request 11 in their initial answer as protected as trade secrets or proprietary information.

Sales Agreement as referenced in the Complaint and all documents related to the indemnification agreement, including but not limited to Attachment A to the Sales Agreement.

**Answer:**  This is referenced in the closing papers and the pleadings in this matter.

*     *     *

**Interrogatory 18:**  Identify all assets, including but not limited to money, credits, accounts receivable, property, office equipment, vehicles, and furniture, owned by Ancona Title at the time of the Sale Agreement or for which you have claimed tax deductions, ownership or title documents and inventories of assets and indicate whether those assets were transferred to Ancona Escrow.

**Answer:**  To the best of Defendants' knowledge and belief, all such assets have been transferred to Mr. Chris Brown and Ancona Title and Escrow.

*     *     *

**Request 12:**  All corporate credit card statements related to Ancona Title and all your personal credit card statements related to transactions on behalf of Ancona Title.

**Response:**  To the extent any such documents exist, they were provided to Chris Brown and the Plaintiffs at the time of sale. There were no personal credit card statements related to transactions on behalf of Ancona Title.

*     *     *

**Request 5:**  All Ancona Title bank statements or bank statements or accounts used to transact business on behalf of Ancona Title.

**Supp. Response:**  All Ancona Title bank statements or bank statements or accounts used to transact business on behalf of Ancona Title were given to Chris Brown at the time of sale. Chris Brown has access to all of this account information directly from the bank. We no longer have access to this information.

**Request 6:**  All Ancona Title tax return documents, including supporting documentation thereof, and your personal tax return documents and supporting documentation thereof for years in which you claimed deductions or income associated with Ancona Title.

**Supp. Response:**  All Ancona Title tax returns and documents were provided to the Plaintiffs and Chris Brown at the time of sale. A copy of the 2004 tax return, which has already been provided to Chris Brown, is also copied and enclosed in the documents which have been made available for you for inspection and copying at the offices of our attorney. All supporting documentation has already been provided to the Plaintiffs at the time of sale.

**Request 7:**     All Ancona Title financial statements, corporate documents and payroll detail.

**Supp. Response**:     This was provided at the time of sale.

*          *          *

**Request 13:**     All marketing, informational materials or other documents, including but not limited to documents related to web sites, biographies, public statements, media reports or descriptions of your services or those of any entity in which you are involved, which include or use the term "Ancona" in connection with real estate services.

**Supp. Response:**     The only marketing or informational or other similar materials which refer to the term "Ancona West" is the web site for North Oaks Title. The corporate entity known as Ancona West does business as North Oaks Title, and does not otherwise utilize the Ancona West name.

Defendants' conclusory statements in support of their refusal to produce documents on the basis of these general objections are insufficient.


<u>**CONCLUSION**</u>

Plaintiffs have attempted in good faith to resolve this discovery dispute without brining a motion to compel. However, defendants have demonstrated a lack of good faith throughout discovery, as evidenced by boilerplate objections and very sparse responses to plaintiffs' discovery. Therefore, plaintiffs request that the Court order defendants to comply in good faith with the rules of discovery, produce all material responsive to plaintiffs' discovery requests, and establish a penalty for failing not to do so. If, in the Court's judgment, defendants' positions are beyond the pale of appropriate conduct in discovery, plaintiffs request that the Court take whatever additional measures the Court may deem equitable and just in this matter, including but not limited to attorneys fees associated with plaintiffs' efforts to obtain discovery from defendants.

Dated:  November 7, 2006          By:  s/Kevin M. Magnuson

                                             Kevin M. Magnuson (#306599)

                                             **ROBINS, KAPLAN, MILLER & CIRESI LLP**

                                             2800 LaSalle Plaza

                                             800 LaSalle Avenue

                                             Minneapolis, Minnesota 55402-2015

                                             Phone: (612) 349-8500

                                            Fax: (612) 339-4181

                                           **ATTORNEYS FOR PLAINTIFFS**