UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Ancona Escrow, Inc., a Minnesota corporation and Ancona Title Services, Inc., a Minnesota corporation , | Court File No. 06 cv 504 DSD/JJG |
| Plaintiffs, | |
| vs. | |
| Ancona West Corporation, d/b/a North Oaks Title, a Minnesota corporation, and Frederic W. Knaak, | |
| Defendants. | |

## MEMORANDUM OF DEFENDANTS IN OPPOSITION TO MOTION TO COMPEL

This memorandum is submitted on behalf of the Defendants, Ancona West Corporation, d/b/a North Oaks Title, a Minnesota corporation, and Frederic W. Knaak in opposition to the motion of Plaintiffs seeking to compel further discovery responses.

### FACTUAL BACKGROUND

The basic facts are stated in the memorandum of the Plaintiffs.  On August 19, 2005, Knaak sold Ancona Title Services, Inc. to Ancona Escrow, Inc., a company owned by Chris Brown, in a stock sale transaction.

The sales price was $90,000.00, evidenced by a promissory note in the same amount.  Of this, $30,000.00 remains unpaid.  (Knaak Aff., ¶ 5).  Instead, Plaintiffs have brought this lawsuit with allegations that Defendants have "failed to disclose a number of unresolved claims against

Ancona Title, which subjected Ancona Title to liability far in excess of the purchase price of the company."  (Plaintiffs' Memorandum, pg. 2).

The Complaint asserts that Knaak failed to disclose and intentionally concealed material facts from Ancona Escrow prior to the execution of the Sale Agreement.  (Complaint, ¶ 23).  The Complaint further alleges that Knaak was aware that Ancona Title had at least three unresolved claims against it but asserted that those claims would be easy to resolve.  (Complaint, ¶ 24).   In their Complaint, the plaintiffs assert three distinct real estate transactions which they assert involve potential liability.  The files are entitled, in the Complaint, " The Gore File",  "The ProGrowth File", and "The Plover File."  To date, however, the plaintiffs have failed to show a single dollar of actual damage sustained from the alleged actions of the defendants.

Plaintiffs also assert there was a settlement agreement  that Defendants failed to agree upon.  (Complaint, ¶¶ 42 - 50).   Defendants deny any such agreement and point out there was never any signed settlement agreement.  (Answer and Counterclaim), ¶ 48-50).

Count I of the Complaint seeks a declaratory judgment that the proposed settlement agreement be considered completed and binding.  Count II asserts a breach of that settlement agreement.

Count III alleged intentional misrepresentation regarding the "undisclosed liabilities." Count IV alleges negligent misrepresentation on the same facts.  Count V alleges a violation of the Minnesota Securities Act, Minn. Stat. § 80A.01 for the same alleged undisclosed liabilities. Count VI uses the same facts to assert a securities fraud allegation under federal law.

Count VII alleges a breach of contract of the sale agreement, maintaining that Defendants use the name "Ancona" in violation of the Sale Agreement.  Count VIII asserts a claim for breach

2

of duty of good faith and fair dealing also arising from the alleged failure to disclose liabilities.

Count IX asserts a Lanham Act violation by use of the "Ancona" name, as does Count X.   Count

XI alleges that the use of the Ancona name gives rise to a cause of action under the Minnesota

Deceptive Trade Practices Act.

Count XII seeks declaratory relief for indemnification for the perceived undisclosed

liabilities mentioned above as does, apparently, Count XIII.  Count XIV asserts a claim of breach

of fiduciary duty against Knaak maintaining that Knaak should have remedied the supposed

liabilities.

There is no claim that any assets or funds belonging to Ancona Title have not been

transferred as promised.

In their initial Rule 26(a)(1) Disclosures, the plaintiffs did not identify any specific

damages incurred except that they should somehow be entitled to a return of the $60,000 which

had been paid for the company.   See, Plaintiffs' Rule 26(a)(1) Initial Disclosures, May 5, 2006,

Sortland Affidavit, Exhibit A.

In Interrogatory 19 to Plaintiffs, the plaintiffs were asked to specify their damages.  In

response, the Plaintiffs stated as follows:

>  Plaintiffs incorporate by reference their General Objections.  Plaintiffs object to
> this Interrogatory as being overbroad, unduly burdensome and not reasonably calculated
> to lead to the discovery of admissible evidence.  Subject to and without waiving the
> foregoing objections, plaintiffs state that they have been damaged [by] Defendant's
> negligence and misrepresentations in the Gore, ProGrowth and the Plover files.  The
> evidence necessary to prove additional damages and to prove the precise amount of
> damages in Defendants' possession or control Discovery is continuing.

See, Plaintiffs' Answers to Defendants' First Set of Interrogatories, June 2, 2006,

Sortland Affidavit, Exhibit B.   Since then, Plaintiffs have failed to disclose any actual

3

unresolved claims against Ancona Title which should have been disclosed or even any damages suffered at all.

Plaintiffs have further failed to disclose any such claims which have subjected Ancona Title to any liability whatsoever, not to mention any "liability far in excess of the purchase price." In sum, there is no substance to any of the pretended claims of the Plaintiffs. Plaintiffs are now attempting to proceed with a "fishing expedition" but even this does not seem to be focused on damages or anything else. The propounded discovery seems only intent upon creating burdens, hardship and nonsensical legal argument. Even after they have received all of the relevant documents, Plaintiffs have still absolutely nothing to sustain their allegations of any "undisclosed liabilities" or damages whatsoever.

Despite the fact that this case was commenced in February, 2006, only limited discovery has taken place. Plaintiffs have refused to schedule depositions on the grounds that Defendants have failed to comply with outstanding written discovery requests.

On the other hand, Plaintiffs took the deposition of Defendants' accountant without notice. This gross violation of the norms of civil procedure and attorney comity is the subject of an accompanying motion for sanctions. Magnuson never called Sortland, either before the deposition or, perhaps more telling, during the deposition of Mr. Olson. Sortland Affidavit, ¶ 11.

Plaintiffs have finally agreed to depositions in the first week of December.

## ARGUMENT

A review of the discovery responses shows that Defendants have provided all unprivileged documents within their possession and all unprivileged information which has been

requested.  Defendants do not really claim that any specific document has not been produced.

Rather, Defendants make a rather generalized criticism of the objections and privileges asserted.

## I.      "PRIVILEGED INFORMATION."

For sake of understanding, the concerns addressed by the Plaintiffs are listed in the same

order as in the moving memorandum.  In this first part, entitled "Privileged Information" the

Plaintiffs assert that the privileges claimed by the Defendants are not proper, despite the fact that

all relevant information has been provided.

### Interrogatory No. 3.

Interrogatory 3 requests as follows:

> Identify any and all documents you consulted, examined or referred to in
> preparation of the Answers to these Interrogatories, and identify each document
> that related in any way the averments of the Complaint.

This interrogatory was objected to as seeking information which is barred by the work-

product and attorney-client privileges.

The work-product doctrine was first recognized by the United States Supreme Court in

Hickman v. Taylor, 329 U.S. 495, 67 S. Ct. 385, 91 L.Ed. 451 (1947).  The doctrine is currently

codified in Fed. R. Civ. P. 26(b)(3).  The doctrine places limits on the discovery of writings

prepared in anticipation of litigation or trial by another party or his representative, such as an

attorney.  These limits are justified on the grounds that, unless the documents reflecting an

attorney's trial preparation are afforded some protection, the adversary system cannot properly

function.  Similar concerns over unduly burdensome discovery motivated congress to make

adverse-party rights under Rule 612(2) qualified rather than absolute.

Without authority, the Plaintiffs contend that "asking for a party to identify documents consulted or referred to in preparing answers to interrogatories . . . is standard discovery practice." This, of course, is not the case. Rather, the rules of discovery regarding production of documents requires a party to set forth, either by individual item or by category, the items requested, and to describe each with reasonable particularity. See, Rule 34(b), Fed. R. Civ. P. While one might, under some circumstances, be allowed to ask a deponent what items were utilized to refresh one's recollection before testifying in court, or at a deposition, under Rule 612, there is no such rule or allowance with respect to written interrogatories.

In this Circuit, it is a black-letter rule that, "while historical facts are not privileged, when those facts are collated or categorized by legal counsel they may well be entitled to protection from disclosure under the work product doctrine." Lumber v. PPG Industries, Inc., 168 F. R.D. 641, 646 (D. Minn. 1996), citing Shelton v. American Motors Corp., 805 F.2d 1323, 1326 (8th Cir. 1986).

Consequently, requests such as "all documents used or consulted in drafting, discussion, considering, or revising . . . " are properly objectionable. In Re Grand Casinos, Inc., 181 F.R.D. 615, 622 (D. Minn. 1998).

Similarly, in a case that received nationwide approval, Sporck v. Peil, 759 F.2d 312 (3rd Cir. 1985), it was held that requests which require disclosure of counsel thought process is entitled to work product protection under Fed. R. Civ. P. 26(b)(3), and under the principles of Hickman v. Taylor, 329 U.S. 495, 67 S. Ct. 385, 91 L.Ed. 451 (1947). Such a selection process, it held, represents counsel's mental impressions and legal opinions as to how the evidence in the documents relates to the issues and defenses of the litigation. Because identification of the

documents as a group reveal counsel's selection process, and thus mental impressions, the

identification of such documents as a group must be prevented to protect counsel's work product.

Sporck, super, at 315.

In this interrogatory, the Plaintiffs are not so much seeking specific documents, as they

are seeking insight into the thoughts and processes of Defendants and their counsel, with respect

to case preparation.  There is no precedent for this type of discovery to be allowed.  At the very

least, Plaintiffs have stated no particular reason why they should be entitled to this information.

**Interrogatory No. 19.**

Interrogatory 19 requests as follows:

> "Describe the scope [and] the engagement and nature of the legal services you and
> your law firm, or any other attorney of the law firm, accountant, accounting firm
> or consulting firm provided to Ancona Title and identify all engagement letters,
> invoices, corporate documents related to the representation, opinion letters or
> work product related to the representation."

This interrogatory was objected to as seeking information which is confidential, protected

by attorney-client privileges, work product privileges, and seeks trade information, and other

information which is irrelevant and not discoverable.

It should be noted that all of the correspondence with respect to Ancona Title was

provided to the Plaintiffs upon the sale of the business.

On the 13th day of June, a supplement was provided to this interrogatory which specified,

"Without waiving the objections stated earlier, all of this information was provided to you, and is

no longer in our possession."  (Magnuson Aff., Exhibit Q).

In response, Plaintiffs simply assert that "Defendants did not identify or produce any

invoices or other records responsive to the interrogatory."  (Plaintiffs' Memorandum, pg. 16).

7

Plaintiffs, however, have not shown that any documentation that exists was not produced. Plaintiffs have not shown that there were no invoices or other records, which would have been an appropriate response to the interrogatory, which was not produced. Defendants have stated there are none.

### Interrogatory No. 20.

Interrogatory 20 asks for the following:

> "Identify all bank accounts by name of institution, address, telephone number and account number you used to conduct business on behalf of Ancona Title."

While this interrogatory is objected to on several grounds, the answer also referred to the fact that all of the assets, including the bank records, etc., had been provided to the Plaintiff upon the sale of the business. All of the banking statements from Lake Area State Bank have been provided and produced. Knaak Aff. ¶ 13.

On Page 16 of their memorandum, Plaintiffs admit that Defendants produced Quickbook files held by Ancona Title's former accountant, Brent Olson, in June. Without specificity, Plaintiffs assert that, "These bookkeeping records indicate the existence of a number of financial documents and records relevant to this and other discovery requests which Defendants have not produced." (Plaintiffs' Memo, pg. 16). We are left to wonder what "documents and records" Plaintiffs are referring to. To the best of Defendants' knowledge, all of this documentation was previously made available to the Plaintiffs.

In contending that this interrogatory was not fully responded to, Plaintiffs, again, fail to allege any specific document which they believe was not produced. Moreover, it begs the question as to why such a document would possibly be relevant.

8

**Document Request No. 17.**

Request Number 17 asks for the following:

> "All documents identified, used or relied upon in preparing your response to Plaintiffs' Interrogatories."

As noted above, there is no provision in the rules relating to discovery to invade upon the thought processes of the litigants. This is an improper, vague, and ambiguous request. In addition, the request is certainly over broad and does not identify any documents with specificity as required by Rule 34.

## II.   "TRADE SECRET, PROPRIETARY OR OTHER CONFIDENTIAL INFORMATION."

Plaintiffs have compiled a number of issues under this heading of "trade secrets, proprietary or other confidential information." A simple and quick review shows that Defendants objections, to the extent they exist, are proper. There is no stated basis for seeking this information. To the extent that any information requested is relevant, this has been provided.

**Interrogatory No. 6.**

Interrogatory Number 6 requests the following:

> "Provide a list of all closing transactions conducted by Ancona Title, you, or any person authorized by you, or conducted on insurance issued through Ancona Title, including but not limited to transactions conducted by Alan Kantrud, Marathon Title Company, or conducted by North Oaks Title or Ancona West, the file number, property address, date of transaction, client's name, the person or persons substantially involved in the transaction, and in what capacity."

This interrogatory was objected to as being over broad and seeking proprietary and trade secret information.

It should be noted that all of the information regarding closing transactions conducted by Ancona Title were part of the records given to the Plaintiffs at the time of sale. (Knaak Aff., ¶ 11). Since all of this information is already in the books and records of Plaintiffs, there is little reason to suspect that Defendants have retained any of this.

**Interrogatory No. 11.**

Interrogatory 11 requested the following:

> "List all entities and their subsidiaries and related entities, which you own, have an interest in or for which you are an officer or director, including for each the type of entity it is, what its primary business purpose is, where it is incorporated, registered or domiciled and other business names as well as its principal place of business."

Again, this interrogatory was objected to as being over broad and burdensome, and objected to for the fact that it sought private confidential information which had no relevance to the lawsuit.

Plaintiffs failed to note that this answer was supplemented in June with the Supplemental Disclosures (Magnuson Aff., Exhibit Q), where the Defendants also pointed out:

> "The only corporations or entities owned by Frederic W. Knaak is North Oaks Title and Ancona West, which Knaak is 100% owner. Knaak is also a principal of the Law Firm of Knaak & Kantrud, P.A. of which he owns an 85% interest."

It is difficult to understand what further information Plaintiffs are contending in making this motion. Plaintiffs are certainly aware of what North Oaks Title and Ancona West are. Plaintiffs can also not contend that they are aware of the Law Firm of Knaak & Kantrud, P.A., or the fact that it is located in Minnesota. All appropriate information has been provided.

**Document Request No. 5.**

Request for Production of Documents Number 5 sought:

> "All Ancona Title bank statements or bank statements or accounts used to transact business on behalf of Ancona Title."

While this was objected to on the grounds that it sought private and confidential information, the supplemental responses also pointed out as follows:

> "All Ancona Title bank statements or bank statements or accounts used to transact business on behalf of Ancona Title were given to Chris Brown at the time of sale. Chris Brown has access to all of this account information directly from the bank. We no longer have access to this information."

In their motion papers, Plaintiffs fail to acknowledge this supplemental response, or even their possession of this information.  Instead, Plaintiffs continue their bellicosity for unstated reasons.

**<u>Document Request No. 6.</u>**

Request for Production of Documents Number 6 seeks as follows:

> "All Ancona Title tax return documents, including supporting documentation thereof, and your personal tax return documents and supporting documentation thereof for years in which you claimed deductions or income associated with Ancona Title."

This request was objected to as seeking trade information and information which is otherwise held confidential and not discoverable.

Again, Plaintiffs fail to acknowledge the supplemental response which pointed out:

> "All Ancona Title tax returns and documents were provided to the Plaintiffs and Chris Brown at the time of sale.  A copy of the 2004 tax return, which has already been provided to Chris Brown, is also copied and enclosed in the documents which have been made available for you for inspection and copying at the offices of our attorney.  All supporting documentation has already been provided to the Plaintiffs at the time of sale."

11

Again, Plaintiffs are seeking documentation which was already provided to them, at the time of sale of the business.  Plaintiffs have given absolutely no reason as to why the personal tax returns of  Knaak would be relevant whatsoever to these transactions.

**Document Request No. 7.**

Request Number 7 seeks:

> "All Ancona Title financial statements, corporate documents and payroll detail."

While this request was originally objected to as seeking trade information and information otherwise held confidential and not discoverable, it was pointed out in the supplemental responses that, "All Ancona Title financial statements, corporate documents and payroll detail was provided at the time of sale."  (Supplemental Answers of Defendants to First Set of Combined Discovery from Plaintiffs, June 15, 2006).

**Document Request No. 12.**

Document Request Number 12 seeks:

> "All corporate credit card statements relating to Ancona Title and all your personal credit card statements relating to transactions on behalf of Ancona Title."

This, too, was objected as seeking private and confidential information.  In the supplemental responses, Defendants stated, under oath, the following:

> "To the extent any such documents exist, they were provided to Chris Brown and the Plaintiffs at the time of sale.  There were no personal credit card statements related to transactions on behalf of Ancona Title."

Again, Plaintiffs' motion is misplaced.  Rather than examine its own records to see whether such documents exist, or were provided at the time of sale, or allege that any certain documents were not produced, Plaintiffs complain about the general objections.

**III.**    **"Overbroad, Vague, and Burdensome."**

A number of the discovery requests were properly objected to as being overbroad, vague, and burdensome.  A review of the discovery requests, and the responses, shows that this observation is correct.

**<u>Interrogatory No. 7.</u>**

Interrogatory Number 7 seeks the following:

> "Identify all oral communications which you have had with any present or former employee, team member, co-worker, agent, servant, officer or underwriter of Plaintiffs regarding or pertaining in any way to the averments of the Complaint, and for each such communication, identify any documents or tape recordings created during or following each such oral communication or document that were referred to during such communication."

This interrogatory was objected to as seeking information which is overbroad and burdensome.

This interrogatory epitomizes the phrase, "overbroad and burdensome."  The Complaint, of course, is a rambling 25 page document encompassing a variety of facts ranging from 2002 through 2005, encompassing a variety of transactions and perceived claims.  (See Complaint, February 6, 2006).  Attached to the Complaint was a pile of materials an inch thick, again relating to a long history of contentions and issues.

Such an overbroad and over-compassing question is certainly not appropriate to written interrogatories.  To the extent that such information would be appropriate at all, it would be with much more specific questions, and more likely in the context of a deposition format.

**<u>Interrogatory No.  8.</u>**

Similarly, Interrogatory 8 seeks:

13

"Identify all internal oral communications between any present or former employee, team member, co-worker, agent, servant, officer or underwriter of Plaintiffs regarding or pertaining in any way to the averments of the Complaint, and for each such communication, identify any documents or tape recordings created during or following each such oral communication or document that were referred to during each such communication."

This is nearly the same as Interrogatory Number 7, and objectionable for the same reasons.  One is left to wonder about the difference between "internal oral communications" with present or former employees, etc., and such communications which were not "internal."

**Interrogatory No.  12.**

Interrogatory 12 sought as follows:

"Describe the general framework and make-up of your computer and voicemail systems currently in use and in use during the past ten(10) years, including the mechanisms for creating and the location of your back-up or emergency tapes and data, and identify the person(s) with the most knowledge regarding the storage organization and retrieval of computerized and other data, including your electronic mail and voicemail systems."

This interrogatory was objected to as seeking information which is confidential and private, and irrelevant to the lawsuit.

Plaintiff has made absolutely no showing as to why this information is relevant, or why any information that might possibly be contained in such a manner could not be obtained through other means.   As pointed out in the Knaak Affidavit, Chris Brown was fully aware of the computer backup system and continued to use the same backup system after he purchased Ancona Title.  (Knaak Aff. ¶ 15).  The same is true of the voicemail system.  (Knaak Aff. ¶ 16). It begs the question of course, as to why this information is relevant to the causes alleged.

**Document Request No. 10.**

Request Number 10 sought:

14

"All underwriter contracts and documents related thereto."

While this request was originally objected to as seeking irrelevant information, and being over broad and burdensome, the supplemental responses pointed out that, "To the extent that this is limited to underwriter contracts and documents of the Plaintiffs, all of this has been provided at the time of sale."

Demand for Production of Documents, if pertaining to the entire universe of "all underwriter contracts" is certainly over broad and burdensome, and lacks the specificity required under the rules. To the extent that the Plaintiff is entitled to all of the underwriter contracts connected with Ancona Title, that has already been provided.

**Document Request No. 13.**

Request Number 13 asks for the following:

> "All marketing, information materials or other documents, including but not limited to documents related to websites, biographies, public statements, media reports or descriptions of your services or those of any entity of which you are involved, which include or use the term "Ancona" in connection with real estate services."

While this request was objected to as being overly broad, ambiguous, and unduly onerous, it did admit that the current website for North Oaks Title contains a small logo for Ancona West, as do its desk calendars.

In the supplemental responses, this was clarified. Defendants admitted as follows:

> "The only marketing or informational or other similar materials which refer to the term "Ancona West" is the website for North Oaks Title. The corporate entity known as Ancona West does business as North Oaks Title, and does not otherwise utilize the Ancona West name."

15

That seems to be a specific and definite response.  The complaints of the Plaintiffs are difficult to figure out.  Plaintiffs can't really assert that they were unaware of the fact that Knaak retained the use of the name Ancona West.  Plaintiffs also cannot point to a single person who was confused by the extremely limited use of the name.

**Document Request No. 16.**

Request 16 seeks as follows:

> "All documents that refer to or relate to any and all defenses that you are asserting in this action."

Here, Defendants properly objected that the request was vague and indefinite, over broad and burdensome, and incapable of precise understanding.  As stated earlier, Rule 34 requires a more specific demand for production of documents than such an over broad and undefined statement as this. Also, as noted above, there is ample case law to clarify that this type of request is improper as it violates the work product privilege.   In addition, all documents have been produced.

**Document Request No. 11.**

Request Number 11 seeks:

> "All documents related to the establishment of Ancona West or North Oaks Title, including but not limited to incorporation documents, which refer to Ancona Title, Ancona Escrow, Christopher Brown or Debra Brown."

This was originally objected to as seeking trade secrets or proprietary information.  In the supplemental response, Defendants said they had no documents in their possession which referred to Ancona Title, Ancona Escrow, Christopher Brown or Debra Brown with respect to the

16

establishment of these entities.  Defendants referred the Plaintiffs to the Minnesota Secretary of State for any additional corporate documents.

It should also be noted that all of the basic incorporation papers were provided to Christopher Brown at the time of the original sale.  Knaak Aff., ¶ 11**.**

## IV.    **"Documents Allegedly in Plaintiffs' Possession . . . ."**

This section of Plaintiffs' memorandum discussed various types of requests and responses.  To the extent that this information is objectionable, or otherwise already in the possession of the Plaintiffs, there is no reason for the Defendants to produce it again.

### <u>Interrogatory No. 1.</u>

Interrogatory Number 1 asks the following:

> "Identify each and every person who assisted in preparing responses to these interrogatories.  With respect to each such person, identify the interrogatory with which they assisted."

Defendants responded that Knaak, with the assistance of his attorney, Paul Sortland, prepared the responses to these interrogatories.  Any further information, of course, would be objected on the grounds of invading the work product and attorney client privilege.  The issue raised by the Plaintiffs on this point is simply not understandable.

### <u>Interrogatory No.  2.</u>

Interrogatory Number 2 requested:

> "Provide the name, address and telephone number of each person known to you who has or may have knowledge or information about matters asserted in the Complaint and describe what information you believe each such person possesses."

In the answer, Defendants referred to a Rule 26(a) disclosure of witnesses.  In this document, Defendants listed the following witnesses:

    a.      Frederic W. Knaak
    b.      Thomas H. Dailey
    c.      H. Alan Kantrud
    d.      Greg Kryzer
    e.      Christopher Brown
    f.      Joel Holsted
    g.      Kevin Magnuson

In addition, full addresses and telephone numbers, together with a description of the knowledge of each party was stated.  Affidavit of Paul A. Sortland, ¶ 12.  Plaintiffs provide absolutely no explanation as to why this reference and disclosure is inadequate.

**Interrogatory No. 13.**

Plaintiffs complain that Defendants' response to Interrogatory Number 13 is inadequate. This stated as follows:

> "Provide a list of files for which you agreed to indemnify Ancona Title and for which Ancona Escrow agreed to indemnify Knaak pursuant to the sales agreement as referenced in the Complaint and all documents related to the indemnification agreement, including, but not limited to Attachment A to the sales agreement."

The answer of the Defendants was, "This was referenced in the closing papers and the pleadings of this matter."  A quick review of the closing papers and the pleadings shows this to be absolutely correct.

This should not have been difficult for the Plaintiffs to figure out.  As pointed out in Paragraph 17 of the Complaint, Knaak agreed to indemnify Ancona Title against any and all liability for a number of specified files called the "Indemnified Files."  The list of identified files, for which Knaak agreed to indemnify Ancona Title was labeled "Attachment A."

18

In Paragraph 3 of the Memorandum of Understanding and Contract for Sale, it was specified:

> 3.  Knaak will hold Ancona Escrow harmless for any and all liability as may have been or be incurred for any files so transferred, except those files not identified in Attachment A (which is incorporated into this agreement by reference)   Ancona Escrow agrees to hold Knaak harmless from any and all liability as may have been incurred with respect to those files not identified in Attachment A.

Knaak points out in his Affidavit that the plaintiffs retained possession of this attachment containing the cases listed.  Knaak Affidavit, ¶ 4.

The answers provided were full and sufficient.

**Interrogatory No.  18.**

Interrogatory 18 asks for the following:

> "Identify all assets but not limited to money, credits, accounts receivable, property, office equipment, vehicles, and furniture, owned by Ancona Title at the time of the sale agreement or for which you have claimed tax deductions, ownership or title documents and inventories of assets and indicate whether those assets were transferred to Ancona Escrow."

The answer of Defendants was that all such assets were transferred to Mr. Chris Brown and Ancona Title and Escrow.  These assets are also identified in the memorandum of sale itself.

This is also a question of relevance to any further questions on these issues.  It should able noted that there is no claim in the Complaint that any asset belonging to the company was not transferred.  Ancona has all of its own tax returns and can determine this for itself.  Any further inquiry is a mere fishing expedition of the worst sort.

**Document Request No. 12.**

19

Plaintiffs also complained about the response to Request Number 12, discussed above. Plaintiffs sought all corporate credit card statements related to Ancona Title and personal credit card statements related to transactions on behalf of Ancona Title.

As indicated, Defendants pointed out, in their supplemental responses, that, "To the extent any such documents exist, they were provided to Chris Brown and the Plaintiffs at the time of sale.  There were no personal credit card statements related to transactions on behalf of Ancona Title."

Plaintiffs point out no reason why this response is deficient.

**Document Requests Nos. 5, 6 and 7.**

Request for Production of Document Number 5 asks for bank statements and bank account information.  Request Number 6 sought tax return documents.  Request Number 7 sought financial statements, corporate documents, and payroll detail related to Ancona Title.  The supplemental responses pointed out that all of this was previously provided at the time of sale and that they no longer have access to this information.

Again, Plaintiffs point out no reason why this document response is insufficient.  It further begs the issue as to why this information is relevant at all to the matters under consideration.  It must be remembered that the Complaint simply alleges that the Defendants failed to disclose some liabilities to the Plaintiffs.  To date, Plaintiffs have failed to identify any damages whatsoever incurred as a result of these alleged deficiencies.

**Document Request No. 13.**

As noted above, Request 13 seeks marketing information using the term "Ancona."  The supplemental response of the Defendants points out that the only place this is referred to is in the

20

website for North Oaks Title.  The corporate entity known as Ancona West does business as

North Oaks Title and does not otherwise utilize the Ancona West name.

In response, Plaintiffs simply assert that these statements are conclusory and do not

justify a refusal to produce documents.  Certainly, the information has been provided, and the

motion to compel must be denied.

## CONCLUSION

A review of this case shows that Plaintiffs have been provided with all of the pertinent

documentation which Defendants had in their possession.  Most of this documentation was

provided at the time of sale.

Plaintiffs' motion to compel also seeks information which is simply not discoverable or

has already been produced.  Plaintiffs discovery is otherwise overbroad and burdensome, and

seeks to invade the privileges protected by the work product doctrine and the attorney client

privilege.

The motion of Plaintiffs is  frivolous and without merit.  Defendants should be awarded

attorneys fees and other sanctions for having to respond to this type of request.

Dated this 14th day of November, 2006.

**SORTLAND LAW OFFICE**

**s/ Paul A. Sortland**
**Paul A. Sortland, #103573**
120 South Sixth Street, Suite 1510
Minneapolis, Minnesota 55402-1817
(612) 375-0400

**ATTORNEY FOR DEFENDANTS**