**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**Ancona Escrow, Inc.,**
**Ancona Title Services, Inc.,**

Plaintiffs,

v.

**Ancona West Corporation,**
**Frederick W. Knaak,**

Defendants.

---

**Civil No. 06-504 (JNE-JJG)**

**ORDER**

This matter came before the undersigned on November 21, 2006, on a motion for sanctions by defendants (Doc. No. 18) and a motion to compel discovery by the plaintiffs (Doc. No. 25). Kevin M. Magnuson, Esq., and Randall M. Tietjen, Esq., appeared on behalf of plaintiffs Ancona Escrow and Ancona Title Services (Ancona Title). Paul A. Sortland, Esq., appeared on behalf of defendants Ancona West and Frederick Knaak. Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Defendants' motion for sanctions (Doc. No. 18) is **GRANTED IN PART.**
2. Plaintiffs' motion to compel (Doc. No. 25) is **GRANTED IN PART AND DENIED IN PART.**
3. Mr. Magnuson shall withdraw from the representation of the plaintiffs in this action (Civil No. 06-504).
4. Regarding the deposition of Brent Olson on September 26, 2006, Mr. Magnuson shall do the following:

a. Turn over any documentary evidence received from Olson to the defendants on or before December 18, 2006.

b. Destroy any other documents he has generated from evidence obtained at the deposition on or before December 18, 2006.

c. Contact the court reporter who recorded the deposition, and advise the person that any record or transcript of the deposition shall be destroyed, on or before December 18, 2006.

d. Any communication of matters learned at the deposition is forbidden.

e. File an affidavit, indicating compliance with these instructions, on or before December 24, 2006.

5. Once Mr. Magnuson files this affidavit, the plaintiffs may retain substitute counsel, which at their discretion may be an attorney from his law firm, Robins Kaplan Miller & Ciresi, or other counsel. Should other attorneys for Robins Kaplan Miller & Ciresi become counsel of record in this matter, they shall not discuss with Mr. Magnuson any matters involving Mr. Olson's deposition or information generated by or gleaned from that deposition.

6. Regarding the first set of discovery served by the plaintiffs on April 7, 2006:

a. The defendants shall not be permitted to make any additional objections and shall respond as required by this order.

b. For matters not addressed by this order, either the plaintiffs have not brought a motion to compel or the defendants have lodged appropriate objections, so further motions to compel shall not be permitted.

7. The defendants shall respond to discovery, in accordance with this order, on or before January 5, 2007.

8. Should any party fail to comply with this order, this Court may impose any sanction it deems appropriate.

9. The following memorandum is incorporated by reference.

Dated this 13th day of December, 2006.

s/Jeanne J. Graham

JEANNE J. GRAHAM
United States Magistrate Judge

## MEMORANDUM

### A. Introduction

Plaintiffs Ancona Title and Ancona Escrow here bring claims against defendants Ancona West and Frederick Knaak for fraud, breach of contract, trademark infringement, and corporate malfeasance. The events leading to this litigation are as follows.

Mr. Knaak (Knaak) and Chris Brown were the original stakeholders in Ancona Title, which then provided both real estate closing and title insurance services. In May 2003, Mr. Brown (Brown) transferred his stake in Ancona Title to Knaak, and Brown set up his own business, Ancona Escrow. The two separate Ancona entities worked in concert, with Brown providing closing services through Ancona Escrow and Knaak providing title insurance services through Ancona Title.

In August 2005, Brown agreed to purchase Ancona Title from Knaak. The sale agreement provided, in relevant part, that Knaak would indemnify Brown for any liabilities arising out of the Gore, Plover, and Progrowth transactions. At the time of the agreement, Knaak allegedly represented that these

liabilities were minor and easily resolved. Brown contends that, after further investigation, these liabilities proved to be substantial and may impose significant costs on Ancona Title.

In this litigation, the plaintiffs claim that Knaak failed to turn over the assets of Ancona Title pursuant to the sale agreement, and that Knaak refused to indemnify Ancona Title for the liabilities from the Gore, Plover, and Progrowth transactions. In their complaint, the plaintiffs do not mention whether Ancona Title has other undisclosed liabilities, nor do they seek specific performance of the sale agreement.

The parties now bring various discovery motions. Because the plaintiffs took a deposition of a third party without notice to the defendants, the defendants move for sanctions, requesting that this matter be dismissed with prejudice. The plaintiffs separately move to compel discovery, arguing that the defendants have consistently refused to comply with discovery in this matter.

**B. The Defendants' Motion for Sanctions**

**1.**

The motion for sanctions arises out of certain subpoenas served by the plaintiffs. The sole counsel of record for the plaintiffs, Kevin M. Magnuson, Esq., executed subpoenas for two third-party witnesses in early September 2006. One of the witnesses was Brent Olson, an accountant who had worked for the defendants; the other was Alan Kantrud, a partner with Knaak at their law firm. The subpoenas required these witnesses to produce documents and appear for depositions. Although the record does not show when Mr. Kantrud (Kantrud) was to appear, it reflects that Mr. Olson (Olson) was required to appear on September 26, 2006.

Mr. Magnuson (Magnuson) claims that sole counsel of record for the defendants, Paul A. Sortland, Esq., had long refused to cooperate with discovery. Magnuson further asserts that he left Mr. Sortland

(Sortland) two telephone messages either one or two weeks prior to the September 26 deposition, in order to determine an appropriate time for it. Sortland states that he did not receive these messages, and though he admits having received one of the subpoenas at some point, he asserts that he had no actual written notice of the deposition. In any case, Sortland and Magnuson did not confer with one another about the deposition.

As required by the subpoena, Olson appeared for the deposition and brought documents from his work for the defendants. Magnuson waited approximately forty-five minutes for Sortland to arrive, and then proceeded to conduct the deposition and inspect the documents. Magnuson admits that he made no effort to contact Sortland that day, and he evidently viewed Sortland's absence as consistent with his previous failures to cooperate in other discovery.

The record does not indicate how the defendants learned of Olson's deposition. It may be that when Kantrud was served with the subpoena, the defendants inferred that the plaintiffs were serving third-party subpoenas without proper notice. So the defendants may have had some reason to suspect, either on the basis of the telephone messages or the subpoena activity, that Olson would be deposed.

Sortland faxed a letter to Magnuson on September 29, 2006, complaining that he was "quite surprised" by the deposition of Olson and that he "received no prior notice." Responding by fax that same day, Magnuson said that the lack of notice was "inadvertent," but adding that he had previously left telephone messages for Sortland. Magnuson also offered to suppress the deposition.

Because the plaintiffs did not give the defendants proper notice of the third-party subpoenas, the defendants moved for sanctions on November 7, 2006, seeking dismissal of this matter with prejudice.

Magnuson concedes that failure to give notice was a discovery violation, but the plaintiffs argue that the sanction is too harsh and claim that their action was not in bad faith.

**2.**

Attorneys have authority to issue subpoenas to third parties under Rule 45(a)(3). Where the subpoena requires production of tangible evidence, the issuing attorney must give notice to adverse parties in accordance with Rule 45(b)(1). Although Rule 45 does not expressly require notice of a deposition to be given in the same manner, that requirement is incorporated through Rule 30(b)(1). *See* Fed. R. Civ. P. 45, Advisory Committee Comment (1991).

Where an attorney issues a subpoena to a third party, but does not give proper notice to adverse parties, such conduct violates the Civil Rules. *C&F Packing Co. v. Doskocil Cos.*, 126 F.R.D 662, 678 (N.D.Ill. 1989). Because the rules do not supply a particular sanction for such misconduct, courts impose sanctions under their inherent authority to manage court proceedings. *See Mid-Atlantic Constructors Inc. v. Stone & Webster Const., Inc.*, 231 F.R.D. 465, 467 (E.D.Pa. 2005); *Murphy v. Bd. of Educ.*, 196 F.R.D. 220, 224 (W.D.N.Y. 2000).

For sanctions imposed pursuant to inherent authority, the sanction must be proportionate to the offense. *See Plaintiffs' Baycol Steering Cmte. v. Bayer Corp.*, 419 F.3d 794, 802 (8th Cir. 2005); *see also Mid-Atlantic Constructors Inc.*, 231 F.R.D. at 467. If the sanction is sufficiently severe, the court

must first determine that the misconduct occurred in bad faith.[1] *Gas Aggregation Servs., Inc. v. Howard Vista Energy, LLC*, 458 F.3d 733, 739 (8th Cir. 2006).

Though a review of relevant authorities suggests a wide range of potential sanctions, this Court has considered two particular sanctions. On an appropriate showing of bad faith, a court may disqualify counsel from continuing the representation. *See Plaintiffs' Baycol Steering Cmte.*, 419 F.3d at 807. And in circumstances where a third-party deposition is not properly noticed to adverse parties, a common sanction is the suppression of the deposition and its fruits. *In re Letter of Request from the Supreme Court of Hong Kong*, 138 F.R.D. 27, 31 (S.D.N.Y. 1991); *Lauson v. Stop-N-Go Foods, Inc.*, 133 F.R.D. 92, 93-94 (W.D.N.Y. 1990); *C&F Packing Co.*, 126 F.R.D. at 680.

**3.**

The record shows that Magnuson served two third-party subpoenas without giving proper notice to opposing counsel that these persons would be deposed. He may have left some telephone messages for Sortland, but there is no other evidence that Magnuson made any effort to accomplish notice.

When Sortland failed to appear on the morning of Olson's deposition, Magnuson did not attempt to contact Sortland or verify whether he had received notice. Magnuson instead proceeded with the deposition, which continued for four hours. When the problems with notice and the conduct at Olson's deposition are considered together, a finding of bad faith is warranted.

---

[1] Eighth Circuit courts have only required a finding of bad faith under limited circumstances, such as where a court imposes attorney fees or orders dismissal. It may be not required for less severe sanctions or for general case management decisions. *See Stevenson v. Union Pacific Rwy. Co.*, 354 F.3d 739, 745 (8th Cir. 2004) ("[A] finding of bad faith is not always necessary to the court's exercise of its inherent power to impose sanctions.").

Because sanctions are appropriate, this Court must now find a sanction that is proportionate to the violation. Asserting that there is no way to cure the unfair prejudice caused by the unnoticed deposition, the defendants urge dismissal of this action. But this sanction is unduly harsh, and it punishes the plaintiffs for misconduct over which they had no control. The principal concern here, in terms of prejudice, is that Magnuson may have learned about matters that he may improperly use against the defendants. Suppression of the deposition, therefore, is not enough to prevent unfair prejudice.

This Court concludes that disqualification of Magnuson, as counsel for plaintiffs in this case, is a fair and appropriate sanction. He shall withdraw as counsel of record and shall not communicate any matters regarding the deposition to other counsel. But his law firm, Robins Kaplan Miller & Ciresi, may continue with the representation, so long as it assures that the deposition and its fruits are properly suppressed.

**4.**

Magnuson raises several arguments against sanctions. Because the defendants have a history of noncompliance with discovery, Magnuson asserts that his own actions were reasonable under the circumstances. He further argues that the defendants' motion for sanctions was not filed until the plaintiffs moved to compel discovery, and so the motion for sanctions is a tactical gambit proceeding in bad faith. Magnuson essentially argues that his own misconduct is excused due to the defendants' misconduct, but this argument does not have merit.

The plaintiffs also argue that the defendants suffer no unfair prejudice. Magnuson asserts that he turned over any evidence he received to the defendants, and he has promised not to use any fruits of the subpoena against the defendants. Because Olson was the defendants' accountant, it is possible that sensitive and prejudicial evidence was disclosed at the deposition. But the record does not mention the

nature of this information. This Court will not assume that this information, once heard by Magnuson, cannot be used against the defendants.

The plaintiffs add that the defendants had actual notice of the deposition, and for this reason, Magnuson's decision to proceed with the deposition was not in bad faith. As mentioned previously, Magnuson claims that he left two telephone messages regarding the third-party subpoenas. Even if the defendants received actual notice, such notice does not comply with Rules 30(b)(1) and 45(b)(1), which require written notice to be served to adverse parties. This requirement, moreover, is intended to prevent exactly the sort of dispute that led to the current motion for sanctions. *See Lauson v. Stop-N-Go Foods*, 133 F.R.D. at 93-94; *C&F Packing Co v. Doskocil Cos.*, 126 F.R.D. at 679-80 (N.D.Ill. 1989).

**B. The Plaintiffs' Motion to Compel Discovery**

The plaintiffs move to compel discovery in connection with their first set of interrogatories and requests for production.[2] The relevant issues on this motion are as follows.

**1.**

The plaintiffs challenge the defendants' objections, on the basis of the work product doctrine and attorney-client privilege, in the following discovery requests. Through Interrogatory No. 3, the plaintiffs seek all documents the defendants used in the preparation of their answer. In Interrogatory No. 19, the plaintiffs seek to have the defendants itemize and explain all legal services that Knaak provided for Ancona

---

[2] Local Rule 7.1(a) provides that, when a party brings a nondispositive motion, all papers shall be served no less then fourteen days prior to the day of the motion hearing. The plaintiffs timely served a motion and notice of motion, but the memorandum and supporting exhibits were filed one day late. No leave was requested for an untimely filing. Although this Court does not find it appropriate to impose a sanction for this violation, all parties are advised to carefully observe the timing requirements of the Civil Rules.

Title. Interrogatory No. 20 asks the defendants to disclose all bank accounts Knaak used to conduct business for Ancona Title. And through Request for Production No. 17, the plaintiffs seek all documents the defendants used to prepare their answers to interrogatories.

The work product doctrine protects documents, prepared in anticipation of or for litigation, that disclose the theories or mental impressions of an attorney. It does not extend to documents that a party generates in the ordinary course of business. Fed. R. Civ. P. 26(b)(3); *Diversified Indus., Inc. v. Meredith*, 582 F.2 596, 604 (8th Cir. 1997). Though nearly any document may permit a party to speculate about the legal strategies of an opposing party, the doctrine does not protect ordinary exhibits from disclosure. *See Hickman v. Taylor*, 329 U.S. 495, 511 (1947).

When preparing their answer and their answers to interrogatories, the defendants likely consulted with many documents generated in the Ancona entities' course of business. And the bank accounts, if known, are also part of the ordinary course of business. Because there is no danger that mental impressions of counsel may be disclosed, the defendants may not object here on the basis of the work product doctrine.

Regarding the legal services provided by Knaak, this Court observes that Ancona Title is a plaintiff in this case. If Knaak prepared documents pursuant to his representation of Ancona Title, that work was prepared for the benefit of Ancona Title, and consequently it does not implicate the mental impressions of opposing counsel. This objection, therefore, is without merit.

The plaintiffs also challenge the defendants' invocation of attorney-client privilege. This privilege will protect communications between an attorney and a client, for the purpose of securing legal counsel, so long as the communications are kept in confidence. *Diversified Indus., Inc.*, 572 F.2d at 601; *Triple*

*Five of Minnesota, Inc. v. Simon*, 212 F.R.D. 523, 528 (D.Minn. 2002). Because the privilege is held by the client and not the attorney, the client may unilaterally waive the privilege. *See Baker v. General Motors Corp.*, 209 F.3d 1051, 1055 (8th Cir. 2000); *State v. Walen*, 563 N.W.2d 742, 752-53 (Minn. 1997).

Though this privilege proceeds on a different basis than the work product doctrine, it has no distinguishable impact here. With the exception of documents disclosing communications between the defendants and their counsel, the defendants may be expected to disclose the documents they have used in this litigation, including records of bank accounts. And once again, since Ancona Title was purportedly a client of Knaak, he cannot invoke the privilege with respect to their relationship.

The plaintiffs further argue that, to the extent that the defendants object on the work product doctrine and the attorney-client privilege, they fail to meet their burden to prove the applicability of these doctrines. In accordance with Rule 26(b)(5), when a party withholds discovery under these doctrines, that party has the burden to keep sufficient records to evaluate the issues. *PaineWebber Group, Inc. v. Zinsmeyer Trusts Partnership*, 187 F.3d 988, 992 (8th Cir. 1999); *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 925 (8th Cir. 1997).

The defendants have not stated whether they have an appropriate privilege log that catalogues withheld documents. Nor have they offered any proof that withheld documents qualify for the work product doctrine or attorney-client privileges. The defendants' discovery obligations, therefore, are not limited by these doctrines.

**2.**

The defendants have withheld discovery on the basis that certain matters are trade secrets, and the plaintiffs challenge this objection. As a general principle, trade secrets do not receive an absolute privilege. *Federal Open Market Cmte. v. Merrill,* 443 U.S. 340, 362 (1979). Where a party seeks to prevent disclosure of trade secrets in discovery, the appropriate remedy is a motion for a protective order, in which that party has the burden to show good cause for such an order. *See In re Remington Arms Co.*, 952 F.2d 1029, 1032-33 (8th Cir. 1991); *Smith v. Bic Corp.*, 869 F.2d 194, 199 (3d Cir. 1989).

A party cannot object to discovery simply because it involves disclosure of trade secrets. *Chembio Diagnostic Sys., Inc. v. Saliva Diagnostic Sys., Inc.*, 236 F.R.D. 129, 136 (E.D.N.Y. 2006); *DirecTV, Inc. v. Puccinelli*, 224 F.R.D. 667, 690 (D.Kan. 2004). So even if the plaintiffs seek trade secrets, the defendants cannot object for this reason. Should the defendants have substantial concern, they may move for a protective order, where they have the burden to show that disclosure will result in harm.

**3.**

The plaintiffs challenge several objections, generally asserted by the defendants throughout written discovery, on the basis of relevancy and overbreadth. In a separate argument, the plaintiffs go on to challenge the defendants' representation that they have adequately responded to discovery, although the plaintiffs do not always challenge a specific objection by the defendants. This Court, pursuant to its case management authority, finds it appropriate to review all the disputed discovery and supply appropriate guidelines.

It is useful, however, to briefly revisit the underlying principles. Rule 26(b)(1) provides for discovery as to any matter "that is relevant to the claim or defense of any party," and it may include

information "not admissible at trial if the discovery seems reasonably calculated to lead to the discovery of admissible evidence." This standard is liberally applied in a manner that advances the discovery of useful evidence and promotes the efficiency of litigation. *See Credit Lyonnais, S.A. v. SGC Int'l, Inc.*, 160 F.3d 428, 430 (8th Cir. 1998).

Rule 26(b)(2) provides, in relevant part, that discovery may be limited if it is "unreasonably cumulative . . . or is obtainable from some other source" or if "the burden . . . of the proposed discovery outweighs its likely benefit." This rule means that a court, in the exercise of its discretion, may limit discovery that is unreasonably expensive or that is unlikely to be beneficial to the issues in the litigation. *See Moses.com Securities, Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1060 (8th Cir. 2005); *Gill v. Gulfstream Park Racing Ass'n, Inc.*, 399 F.3d 391, 400-01 (1st Cir. 2005).

In Interrogatory No. 1 and Request for Production No. 17, the plaintiffs ask the defendants to identify all persons who assisted in the preparation of answers to that set of interrogatories, as well as documents used in the course of preparation. For the interrogatory, the defendants answer and identify two persons. The plaintiffs do not explain why this answer is objectionable. Because the defendants answered clearly and without evasion, no further response to the interrogatory is needed. *See In re RBA, Inc.*, 60 B.R. 953, 964 (Bankr. D.Minn. 1986); *Evanson v. Union Oil Co.*, 85 F.R.D. 274, 277 (D.Minn. 1979). For the request for production, if the defendants relied on any documents that are not disclosed elsewhere, they shall disclose them here.

Interrogatory No. 2 asks the defendants to produce names and identifying information for all persons with knowledge of the matters in this litigation. The defendants refer the plaintiffs to their Rule 26(a) disclosures. Rule 26(a)(1)(A) requires the parties to disclose the names and identities of "each

individual likely to have discoverable information that the disclosing party may use to support its claims or defenses[.]" Because the rule requires the same disclosures sought by Interrogatory No. 2, and because the plaintiffs do not explain why the defendants' answer is objectionable, this answer is also sufficient.

Through Interrogatory Nos. 3, 7, and 8 and Request for Production No. 16, the plaintiffs ask the defendants to identify or supply all documents and oral communications relating to the claims in the complaint or the defenses in the answer. These discovery requests are not directed at any particular contention, and they fail to specify any particular subject matter at issue. If responses were required, the plaintiffs would effectively transfer all burdens of discovery to the defendants. The requests are overbroad and do not reasonably advance discovery, and they are accordingly denied. *See Moses v. Halstead*, 236 F.R.D. 667, 674 (D.Kan. 2006).

In Interrogatory No. 6 and Request for Production No. 10, the plaintiffs seek records of all closing transactions and underwriting contracts carried out by Ancona Title. The defendants object to these matters as overbroad. Through Interrogatory Nos. 18 and 19, the plaintiffs ask Knaak to account for Ancona Title's assets and explain what legal services he had provided. The plaintiffs object to these requests, in part, as irrelevant. In Interrogatory No. 20 and Request for Production Nos. 5, 6, 7, 8, and 12, the plaintiffs seek various business records of Ancona Title. The defendants represent that they do not have custody of these records and that they were turned over to Brown at the time of sale.

The threshold question posed by these requests is one of relevancy. The complaint alleges that, during the sale of Ancona Title, Knaak failed to disclose the scope of its liabilities pursuant to the Gore, Plover, and Progrowth transactions. More importantly, the complaint does not allege that Knaak concealed other liabilities, engaged in self-dealing, or misappropriated other assets. Although the plaintiffs

repeatedly suggest such claims in the memoranda supporting their motion to compel, the complaint does not support them.

Assuming for the sake of argument that the defendants retained records for Ancona Title, the plaintiffs do not meaningfully explain how these records are relevant to the claims in the complaint. Further assuming that the defendants misappropriated assets of Ancona Title, the complaint also fails to request an accounting or specific performance of the sale agreement. Without a threshold showing of relevancy to a particular claim or defense, this Court cannot appropriately compel discovery in these areas, and so these discovery requests do not require further responses.

Interrogatory No. 11 asks the defendants to disclose all businesses Knaak owns, and Request for Production No. 11 asks the defendants to provide details about the formation and principal place of business for Ancona West. Though the relevancy of the interrogatory is not immediately evident, the defendants answered this interrogatory in their memorandum opposing the motion to compel. The defendants shall formalize this answer in a properly served supplemental response to discovery, but no further answer shall be required. Regarding the request for production, the defendants have offered some details about formation but have not formally disclosed Ancona West's principal place of business. Because these details are potentially relevant to the issue of jurisdiction, the defendants shall respond to Request for Production No. 11 in its entirety.

Through Interrogatory No. 12, the plaintiffs seek to have the defendants explain all computer and voice mail systems maintained by Ancona Title. Assuming once again that the defendants have custody of these systems, an interrogatory is an unusually cumbersome way to communicate such highly technical information. And given the scope of the allegations in the complaint, this request is not reasonably

calculated to discover matters relevant to this litigation. The defendants' objections on the basis of relevancy and burdensomeness are sustained.

In Interrogatory No. 13, the plaintiffs seek indemnity agreements made by Knaak pursuant to the parties' sale agreement. The defendants respond by referring to "the closing papers and the pleadings in this matter," which arguably includes the sale agreement and related documentation. But because the defendants do not identify specific documents, they do not adequately answer the plaintiffs' interrogatory. The defendants shall identify responsive documents by bates number, or by similar means that makes it possible for the plaintiffs to ascertain exactly where such documents may be found.

All that remains is Request for Production No. 13, which asks the defendants to disclose all places where they use the name "Ancona" in their businesses. This request is plainly relevant to the plaintiffs' claim for trademark infringement. The defendants have represented that the name only appeared on a website. Because the plaintiffs subsequently discovered this name on an Ancona West promotional calendar, they argue that the defendants' disclosure was incomplete. This argument is reasonable under these circumstances. If the defendants have not yet disclosed other uses of the name "Ancona" in connection with their businesses, they shall do so now.

JJG