UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Ancona Escrow, Inc., a Minnesota corporation and Ancona Title Services, Inc., a Minnesota corporation , | Court File No. 06 cv 504 DSD/JJG |
| Plaintiffs, | |
| vs. | |
| Ancona West Corporation, d/b/a North Oaks Title, a Minnesota corporation, and Frederic W. Knaak, | |
| Defendants. | |

## MEMORANDUM OF DEFENDANTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

This memorandum is submitted on behalf of the Defendants in support of their motion for summary judgment pursuant to Rule 56. Summary judgment is sought because Plaintiffs can prove no cause of action viable against the Defendants and, furthermore, have specified absolutely no damages resulting from the alleged improper activity of Defendants.

### STATEMENT OF MATERIAL FACTS

1.      This is a lawsuit arising out of the sale of a business between two former colleagues involved in the operation of a title company.

2.      The Complaint, dated January 30, 2006, lays out the basic factual background

leading up to this matter.  The Plaintiffs, Ancona Escrow, Inc., and Ancona Title

Services, Inc., are Minnesota corporations wholly owned by Christopher Brown.

(Complaint, ¶¶ 12,16 ).

3.      In May, 2002, Brown and Defendant Frederic W. Knaak formed Ancona Title

under the laws of the State of Minnesota, and did business as Ancona Title

Services Corporation.  Knaak owned fifty one percent of the stock, and Brown

owned forty nine percent of the stock.  (Complaint, ¶ 10).

4.       In June, 2003, Brown surrendered his forty nine percent ownership of Ancona

Title to Knaak, making Knaak the sole shareholder.  At the same time, Brown

created Ancona Escrow under the laws of Minnesota as its sole shareholder.

Through these separate companies, the division of responsibilities remain the

same, as they had been since 2002.  Brown was responsible for client relations,

marketing, and closing functions.  Knaak was responsible for insurance writing,

issuing policies, and post-closing matters.  (Complaint, ¶¶ 10-13).

5.      On July 7, 2005, Brown informed Knaak that he wished to sever the business

relationship (Complaint, ¶ 15).

6.      Subsequently, Knaak and Brown entered into a Memorandum of Understanding

and Contract for Sale of Shares and Assets and Indemnification Agreement ("Sale

Agreement"), signed on August 19, 2005, for the purpose of conveying the shares of capital stock of Ancona Title to Ancona Escrow, owned by Chris Brown.

7.   A copy of the Sale Agreement is attached to the Affidavit of Paul A. Sortland as Exhibit A.

8.   Pursuant to the terms of the Sale Agreement, Ancona Escrow issued to Knaak a Promissory Note in the amount of $90,000.00.  A copy of the Promissory Note is attached to the Sortland Affidavit as Exhibit B.

9.   In the Sale Agreement, Knaak agreed to indemnify Ancona Title against any and all liability for a certain number of specified files.  (Complaint, ¶ 17).  The Promissory Note required monthly principal payments of $15,000.00 each, commencing on July 25, 2005.  (Complaint, ¶ 18).

10.   The Plaintiffs never paid the final $30,000.00 due under the terms of the Sale Agreement (Counterclaim, ¶ 7).  This is admitted by Brown.  (Brown Depo., pg.38, ll. 8-11).  Pursuant to the Promissory Note, Ancona Escrow is responsible for interest at prime plus 1.5%, in addition to all costs of collection, including reasonable attorneys fees.  (See, Promissory Note, Ex. B, ¶ 6).  The Complaint alleges that this $30,000.00 has been placed in escrow (Complaint, ¶ 44), but Brown admits this is no longer the case, as he took the money back.  (Brown Depo., pg. 38, ll. 12-15).

11.   At the time of time of sale, Brown understood that Knaak would continue, in part, to do business under the name "Ancona West." Paragraph 4 of the Sale Agreement states as follows:

> Ancona West shall cease to operate under the name "Ancona Title Services, Corp.", or "Ancona Title and Escrow". The parties may continue to operate under either of those names jointly in other jurisdiction [sic] if they mutually agree to any such arrangement in writing. (Sale Agreement, ¶ 4, Sortland Aff., Ex. A).

12.   Furthermore, Paragraph 5 specified as follows:

> Brown / Ancona Escrow waive any right to ownership of any shares or assets of Ancona West Corporation. (Sale Agreement, ¶ 5, Ex. A).

13.   Regardless, Plaintiffs contend that the use of the name "Ancona West" by the Defendants somehow constitutes a violation of the agreement and certain federal and state laws. (Complaint, Counts VII, IX, X and XI).

14.   The Complaint was served on February 6, 2006. There have been no amendments to the Complaint. (See, Court Docket).

15.   The focus of the Complaint concerns three specific and distinct matters for which it is alleged that the Defendants "failed to disclose and intentionally concealed material facts from Ancona Escrow prior to the execution of this sale agreement." (Complaint, ¶ 23). It is alleged that Knaak knew that at least three of Ancona Title files had unresolved claims against it. (Complaint, ¶ 24). These are described as follows:

4

16.   The first is called the "Gore" file concerning property at 392 Lexington Parkway South in the City of St. Paul.  (Complaint, ¶ 25).  Here, it is asserted that Ancona Title, apparently while owned by Knaak, was somehow negligent in closing or handling the property.  (Complaint, ¶¶ 25, 26).

17.   The property was later foreclosed upon by the federal government because of a drug-related prosecution.  There is apparently an ongoing dispute regarding a priority of liens on the property.

18.   The Plaintiffs do not claim to have sustained any damages as a result of this alleged negligence, but assert that they might do so in the future, despite the existence of insurance.  (Complaint, ¶ ¶ 25-32; Brown Depo., pg. 119, l. 16 - pg. 120, l. 10).

19.   In any event, Knaak has agreed to indemnify the Plaintiffs for any damages that they might sustain, which is not covered by insurance, arising out of this matter. (Complaint, ¶ 30).

20.   Notice of the claim was given to St. Paul Insurance Company on October 4, 2005 (Complaint, ¶ 31).  To date, St. Paul Fire and Marine has not denied coverage of the claim (Brown Depo., pg. 86, ll. 24-25), (See, Complaint, ¶ 31, Brown Depo., pg. 169, l. 16 - pg. 170, l. 10).

21.   Plaintiffs have not suffered any damages as a result of the Gore matter.  (Brown Depo. pg. 53, ll. 1-8).

5

22.   The second file concerns the "ProGrowth" file.  (Complaint, ¶ 33).  This alleges that Marathon Title Company somehow associated with Ancona Title, made an error in closing property at 11201 Woodhill Lane in Blaine, Minnesota, in 2002. The allegation asserts that Alan Kantrud had responsibility but negligently failed to file a $452,000.00 purchase money mortgage obtained from Wells Fargo until after a second $216,000.00 mortgage and a third $150,000.00 mortgage from ProGrowth Bank were filed, thereby depriving Wells Fargo of the position of first lien on the property.  (Complaint, ¶ 33).

23.   Defendants deny any negligence or responsibility, but have agreed to indemnify Ancona Title for any liability that they suffer.  (See, Complaint, ¶ 34).

24.   While Defendants assert that there is "potential liability to Ancona Title for this filing error as high as $452,000.00," (Complaint, ¶ 38), they admit they have not suffered any damages, yet, as a result of this alleged negligence, or failure to disclose.  Brown is not aware of any claims against him or his company as a result of the ProGrowth transaction.  (Brown Depo., pg. 48, ll. 12-17 - pg. 49, ll. 7-12).

25.   The final and third file mentioned in the Complaint is what is called the "Plover" file concerning property at Plover, Wisconsin.  (Complaint, ¶ 39).  The Complaint alleges that Knaak erroneously issued a letter of indemnification regarding mechanics liens which had been filed on the property.  (Complaint, ¶ 39).

26.   While the Complaint alleges that Knaak "failed to disclose and intentionally concealed from Ancona Escrow the true nature and condition of this liability prior to the execution of the sale agreement" (Complaint, ¶ 40), Brown admits that he has no evidence that Knaak knew of any liability in this instance prior to the time of sale.  (Brown Depo., pg. 58, ll. 7-18).

27.   Brown admits that his only claim here against Knaak is that he was negligent in issuing the letter of indemnity.  (Brown Depo., pg. 58, ll. 19-23).

28.   Knaak has searched his computer for any evidence that he authorized or wrote any such letter, but did not find one.  (Knaak Depo., December 8, 2006, pg. 23, l. 23 - pg. 24, l. 14).  Knaak further testified that he does not believe that he authorized such a letter of indemnification, but it must have been issued by someone else with Ancona Title.  (Knaak Depo., January 11, 2007, not yet transcribed).

29.   The Complaint alleges fourteen separate causes of action.  These are as follows:

| | |
|---|---|
| Count I | Declaratory Judgment: Valid and Enforceable Settlement Agreement |
| Count II | Breach of the Settlement Agreement |
| Count III | Intentional Misrepresentation in Sale of Corporation |
| Count IV | Negligent Misrepresentation in Sale of Corporation |
| Count V | Violation of Minnesota Securities Act, Minn. Stat. §80A.01 |
| Count VI | Fraud in Violation of Minnesota Securities and Exchange Act of 1934, §10(b) and Rule 10b-5 |

| Count VII | Breach of Contract: Sale Agreement |
| --- | --- |
| Count VIII | Breach of Good Faith and Fair Dealing, Regarding True Nature and Condition of Ancona Title's Liabilities |
| Count IX | Trade Name Infringement under the Lanham Act, and Common Law, Regarding "Ancona" |
| Count X | Unfair Competition under the Lanham Act and Common Law |
| Count XI | Minnesota Deceptive Trade Practices Act, regarding Use of Name "Ancona" |
| Count XII | Declaratory Relief - Indemnification under the Sale Agreement |
| Count XIII | Declaratory Relief - Indemnification under the Indemnification Agreement |
| Count XIV | Breach of Fiduciary Duty |

30.   The Defendants timely served and filed an Answer and Counterclaim on February 27, 2006.

31.   The Answer and Counterclaim deny all of the causes of action asserted by the Plaintiffs against the Defendants (See, Answer and Counterclaim).

32.   The Counterclaim alleges one cause of action for breach of contract on the Promissory Note because Brown and the Plaintiffs failed to pay the final two installments due under the Promissory Note.  There remains $30,000.00 due and owing under the Promissory Note.  (Counterclaim, ¶ 7).

33.   The Promissory Note provides that the Defendants are entitled to attorneys fees if an action, such as this, is necessary to collect on the Promissory Note.  (Promissory Note, Ex. B).

34.   The Plaintiffs were late and untimely with their Reply to the Counterclaim. Defendants moved for default.  However, default was avoided, and Plaintiffs were subject to a small monetary fine as sanctions.  See, Order of Magistrate, April 25, 2006.

35.   Brown does not claim to have sustained any damages as a result of the "Gore", "ProGrowth", or "Plover" files.  (See, Brown Depo., pg. 53, ll. 1-8, pg. 58, l. 18, and pg. 83, ll. 1-4).

36.   Brown admits he has not sustained any damages resulting from any alleged confusion between the terms "Ancona" or "Ancona West."  (Brown Depo., pg. 72, ll. 17-22).

## ISSUES

I.    ARE DEFENDANTS ENTITLED TO SUMMARY JUDGMENT ON THE ALLEGED SETTLEMENT AGREEMENT FOR RESCISSION?

II.   ARE CLAIMS OF MISREPRESENTATION PLEADED WITH SUFFICIENCY?

III.  DO PLAINTIFFS PRESENT SUFFICIENT EVIDENCE OF MISREPRESENTATION TO AVOID SUMMARY JUDGMENT?

IV.   DO PLAINTIFFS PRESENT ANY EVIDENCE UPON WHICH A CLAIM MAY BE MADE REGARDING THE USE OF THE NAME "ANCONA WEST"?

V.     DO PLAINTIFFS PRESENT SUFFICIENT EVIDENCE FOR THEIR CLAIM
       FOR INDEMNIFICATION?

VI.    CAN A SOLE SHAREHOLDER BE LIABLE FOR BREACH OF FIDUCIARY
       DUTY TO THE WHOLLY-OWNED CORPORATION?

VII.   WHETHER CLAIMS OF PROFESSIONAL MALPRACTICE AGAINST
       KNAAK ARE BARRED FOR FAILURE TO PROVIDE AN EXPERT
       WITNESS?

VIII.  DOES THE SHAREHOLDER, ANCONA ESCROW, INC., HAVE ANY
       STANDING TO PURSUE DAMAGES IN THIS CASE?

IX.    ARE DEFENDANTS ENTITLED TO SUMMARY JUDGMENT ON THE
       PROMISSORY NOTE, INCLUDING ATTORNEYS FEES?

## ARGUMENT

### SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 (c) provides that summary judgment shall issue

"if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 ( c);

See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986);

Anderson v. Liberty Lobby, Inc., 477 U.S. 424, 252 (1986); Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986).  On a motion for summary judgment, the court must view the

evidence in the light most favorable to the non-moving party.  Ludwig v. Anderson, 54

F.3d 465, 470 (8th Cir. 1995).  The moving party may not "rest on mere allegations or

denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

I.    **DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE ALLEGED AGREEMENT FOR RESCISSION.**

A.    **There is a lack of proof of any settlement agreement.**

The Plaintiffs claim that the parties entered into a valid and enforceable settlement agreement for rescission on November 30, 2005.  (Complaint, ¶ 52).  The Plaintiffs contend that the Defendants expressly agreed to rescind the sale agreement, and agreed to subsequently reduce this settlement agreement to writing.  The Defendants deny any such agreement.

Knaak denies that there was any agreement to rescind the sale.  In fact, the actions of Brown since the time of the sale would make any such rescission impossible.

The general common law rule is that a written contract can be varied or rescinded by oral agreement of the parties.  See, Lamberton v. Connecticut Fire Insur. Co., 39 Minn. 129, 39 N.W. 76 (1988).  In this case, however, there is no credible proof that there was any agreement to rescind.

Essentially, this matter is barred by the Statute of Frauds, as contained in Minn. Stat. §336.1-206, which requires a writing for the sale of personal property where the amount is beyond $5,000.00.  This is not the type of security which is excluded from the

Statute of Frauds, pursuant to Minn. Stat. §336.8-113.  This is the sale of a business, and not a normal securities transaction for which the special exclusion was recently enacted.

Without any evidence, or any acknowledgment by the Defendants that there was any agreement to rescind, none can be imposed.

**B.     Rescission is impossible.**

Furthermore, where rescission is impossible, it cannot be a remedy.  In this case, it is clear that it would be impossible to rescind because Brown has changed the structure of the business, and there is no longer any income going to Ancona Title.

Rescission here would be impossible because Chris Brown had changed the business so there were no title revenues attributable to Ancona Title Services after he purchased the corporation.  All title revenue under the new contract that was established August 1 came  in through Ancona Escrow's name.  (Brown Depo., pg. 152, ll. 11-18). Brown admits that there has been a significant change in the income stream from the time Knaak owned the company, to how Brown had treated it.  (Brown Depo., pg. 153, ll. 2-10).

Essentially, Brown is currently operating Ancona Title as a mere corporate shell, without any income or even any assets.  To ask Knaak to agree to rescind the agreement, and to take back an empty shell, and return the money paid would be pure folly.  The law does not support such an impossibility.

Attempted restoration of the status quo is an essential part of a rescission of a contract .  However, rescission is not a remedy when such restoration is impossible. Liebsch v. Abbott, 265 Minn. 447, 122 N.W.2d 578 (Minn. 1963).  The general rule is that a party who wishes to rescind an agreement must place the opposite party in status quo.  See, Cut Price Supermarkets v. Kingpin Foods, Inc., 256 Minn. 339, 98 N.W.2d (1959).  Rescission will not be imposed where it is impossible.  First Savings Bank & Trust of Albuquerque v. Greenleaf, 294 F. 467, 473 (8th Cir. 1923).

## II.   MISREPRESENTATION HAS NOT BEEN SUFFICIENTLY PLEADED.

The allegations of misrepresentation in this case against the Defendants are, at best, vague and conclusory.  Without specifics, the Plaintiffs merely assert that "Knaak misrepresented the true nature and condition of Ancona Title's liabilities."  (Complaint, ¶ 23).

Paragraph 24 of the Complaint goes on to state that Knaak was aware that at least three of Ancona Title's title files had unresolved claims against it.  Knaak consistently represented to Ancona Title that these title liabilities were easy to remedy and that the problems would be resolved.  Ancona Title says it relied on the representations and believed that Knaak had resolved any issues associated with the problem files.  As noted elsewhere, however, no actual liabilities have been sustained.

Fed. R. Civ. P. 9(b) governs the pleadings of fraud, mistake, condition of the mind. This has been held applicable to a pleading of misrepresentation.  A plaintiff must plead

"such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." Schaller Telephone Co. v. Golden Sky Systems, Inc., 299 F.3d 736, 746 (8th Cir. 2002), citing Abels v. Farmers Commodities Corp., 259 F.3d 910, 920 (8th Cir. 2001). "Conclusory allegations the defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Commercial Property v. Quality Inns, 61 F.3d 639, 644 (8th Cir. 1995).

The pleadings of this Complaint are woefully deficient. This is exacerbated by the inadequate discovery responses, as discussed below. Consequently, dismissal or summary judgment with respect to the misrepresentation claims must be granted.

## III.   PLAINTIFFS DO NOT PRESENT SUFFICIENT EVIDENCE OF MISREPRESENTATION TO AVOID SUMMARY JUDGMENT.

Count III alleges a cause of action for intentional misrepresentations arising out of the sale of stock from Ancona Title to Ancona Escrow. The Complaint states that "at least three" of the title files transferred with the sale of Ancona Title have liabilities that were previously undisclosed to Ancona Escrow. Paragraph 69 of the Complaint alleges that Ancona Title and Knaak, as sole owner and operator of Ancona Title, knew or should have known of these liabilities prior to the execution of the sale agreement.

The answers to interrogatories from the Plaintiffs provide absolutely no help to the vacuous nature of the pleadings.

14

In Interrogatory Number 19, the Plaintiffs were asked to specify all damages, in detail, indicating the dollar amount, the date such damage was incurred, and whether or not the Plaintiffs had actually paid any money as a result of such claims or damages, and any steps that were taken to mitigate or ameliorate such damages.

The answer was somewhat ambiguous, to say the least.  In the answer to Interrogatory Number 19 (See, Plaintiffs' Answers to Defendants' First Set of Interrogatories, Sortland Aff., Ex. C, pg. 13), the Plaintiffs stated in part the following:

> Plaintiffs object to this interrogatory as being overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Plaintiffs state that they have been damaged by Defendant's negligence and misrepresentations in the Gore, ProGrowth and the Plover files.  They have what is necessary to prove additional damages and prove the precise amount of damages in Defendants' possession or control. [sic] Discovery is continuing.

This is Plaintiffs' only written explanation of the damages caused by any alleged misrepresentation.

The deposition of Christopher Brown was more precise in its lack of evidence.

Brown admits he has not paid out any money on the "Gore" matter.  (Brown Depo., pg. 53, ll. 1-8).  He acknowledges that Knaak was not aware of any problems with the "Plover" file prior to the time of sale.  (Brown Depo., pg. 58, l.18).  Brown further doesn't claim to have sustained any damages as a result of the "ProGrowth" matter. (Brown Depo., pg. 83, ll. 1-4).

15

Count Five, alleging damages relating to the Minnesota Securities Act, Minn. Stat. §80A.01, alleges the same concealment of the "true nature and condition of Ancona Title's liabilities" and material misrepresentations.  Again, the Plaintiffs are unable to point to any specific item of misrepresentation.

With respect to fraud alleged in Count VI, Plaintiffs again allege, in Paragraph 97, "At least three of the title files transferred with the sale of Ancona Title have liabilities that were previously undisclosed."  Paragraph 98 says that Ancona Title and Knaak, knew or should have known of these liabilities prior to the execution of the sale agreement."

There can be no recovery for damages which are remote, conjectural, or speculative.  Carpenter v. Nelson, 257 Minn. 424, 428, 101 N.W.2d 918, 921 (1960). [A breach of contract] claim fails as a matter of law if the plaintiff cannot establish that he or she has been damaged by the alleged breach.  Jensen v. Duluth Area YMCA, 688 N.W.2d 574, 578-79 (Minn. App. 2004).

The party claiming damages has the burden of proving the amount of damages. Bonhiver v. Graff, 311 Minn. 111, 132, 248 N.W.2d 291, 304 (1976).  Summary judgment on a claim is mandatory against a party who fails to establish an essential element of that claim, if that party has the burden of proof, because this failure renders all other facts immaterial.  Lloyd v. In Home Health, Inc., 523 N.W.2d 2,3 (Minn. App. 1994).

Damages that are remote and speculative cannot be recovered.  Jackson v. Reiling, 311 Minn. 562, 563, 249 N.W.2d 896, 897 (1977); Olson, Clough & Straumann, CPA's v. Trayne Props., Inc., 392 N.W.2d 2, 4-5 (Minn. App. 1986); Anderson v. Benson, 394 N.W.2d 171, 175 (Minn. App. 1986).

Since Brown fails to sustain any claim for damages which are recoverable in this lawsuit, all such causes of action must be dismissed or summary judgment must be granted.

IV.   **DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON ALL CAUSES OF ACTION REGARDING THE USE OF THE NAME "ANCONA WEST".**

The Plaintiffs allege several causes of action, all contending that the Defendants are liable for using the name "Ancona" following the sale of the company.  All evidence, however, shows that there is no use of the name "Ancona" by itself, but only, in a couple of isolated instances, the term, "Ancona West" which is, of course, the name of the Defendant.

Count VII alleges breach of contract of the sale agreement, contending that the sale agreement required Knaak to cease using the names, "Ancona Title and Services Corporation" and "Ancona Title and Escrow."

The Plaintiffs assert that the Defendants continue to use the name "Ancona" in the context of real estate services.  However, the evidence produced, thus far, indicates that

17

the Complaint of the Plaintiffs is not so much that the term "Ancona" is used by the
Defendants but, on two isolated instances, the Defendants have used the term "Ancona
West" which is, of course, is not prohibited by the sales contract.

The Plaintiffs assert that this somehow causes confusion, and is in violation of the
Sale Agreement.

While the Complaint in this section also alleges that certain files and cash were not
transferred, Brown does not claim, in his deposition, that there was to be any transfer of
cash, or that he was looking for any.  (See, Brown Depo., pg. 77, l. 25 - pg. 88, l. 22).
None of the correspondence between the parties ever indicates that any cash was not
provided.

Count VIII, breach of duty of good faith and fair dealing alleges, again, the same
basic allegations that Knaak did not disclose the "true nature and condition" of Ancona
Title's assets and liabilities.  Count VIII also alleges that these breaches are deliberate,
willful, reckless and in bad faith, and were undertaken solely to protect his own pecuniary
interest and without regard for his obligations under the Sale Agreement.  (Complaint, ¶¶
117-118).

Counts IX and X also allege cause of action because of the continuing use of the
name "Ancona West" by the Defendants.  Again, no reason is stated why Defendants
cannot continue to utilize the name "Ancona West" or how Plaintiffs have been
wrongfully harmed by this.

Paragraph Four on the first page of the Sales Agreement (Ex. A), clearly acknowledges the continued existence of the corporation known as "Ancona West."  The only promises made in this agreement is that, "Ancona West shall cease to operate under the name Ancona Title Services, Corp." or "Ancona Title and Escrow".  The Plaintiffs have failed to cite any single instance where they believe Ancona West has continued to operate under the name "Ancona Title Services, Corp." or "Ancona Title and Escrow".

Indeed, the allegation that the Defendants are to cease doing business under the name "Ancona West" is proven false by ¶ Five, on page two of the Sales Agreement which says "Brown / Ancona Escrow waive any right to ownership of any shares or assets of Ancona West Corporation."  Thus, the parties to the Sales Agreement acknowledge the continuing existence of the corporation called Ancona West, and there is absolutely nothing in the agreement which would prohibit the use of the name "Ancona West" as a continuing entity in any manner.

Despite many assertions in the Complaint, Plaintiffs have not cited one instance where the Defendants have wrongfully used, simply, the name "Ancona" by itself.  Plaintiffs, also, fail to show any damages from any such wrongful attribution.  (Brown Depo., pg. 72, ll. 17-22).

Looking at the documents, the argument of the Plaintiffs is difficult to comprehend.  The Purchase Agreement clearly states that Ancona West will remain the property of Fritz Knaak, and will continue doing business.  There is absolutely nothing in

19

the agreement which prohibits Ancona West from continuing business or even operating under the name "Ancona West."  Rather, the only limitation was to the use of the word "Ancona" by itself.  There have been no proven allegations that the Defendants have utilized the name "Ancona" by itself, or even been somewhat confusing.

The claim for breach of contract for the use of the "Ancona West" name is specious and frivolous, and must be denied.

## V. PLAINTIFFS DO NOT PRESENT SUFFICIENT EVIDENCE FOR A CLAIM FOR DAMAGES UNDER THE INDEMNIFICATION AGREEMENT.

Counts XII and XIII allege that Knaak agreed to hold Plaintiffs harmless from any and all liability "as may have been or be incurred" for title files transferred with the sale of Ancona (Complaint, ¶ 142).  A review of the Sales Agreement, however, shows that indemnification was promised by Knaak only for a small certain limited number of files. Knaak only agreed to indemnify for a short list of files, as described by Christopher Brown.  (Brown Depo., pg. 39, l. 1 - pg. 40, l. 13).

The Complaint also alleges that "at least three" of the title files transferred with the sale of Ancona Title have liabilities that were misrepresented to the Plaintiffs. (Complaint, ¶ 143).

Count XIII asks for declaratory relief under the indemnification agreement.  Here, the Plaintiffs seek indemnification for any and all losses incurred by Knaak [sic] in

connection with "the Lawyers Title Claim or any matter related in any way thereto."

The indemnification clause is found in Paragraph 3 of the Sale Agreement. This references a list identified as "Attachment A" which apparently does not exist. However, the parties are in agreement as to what this Attachment A should have referred to. This was basically a short list of files with which Alan Kantrud had involvement. For some reason, the indemnification universe was identified with a double negative. Specifically, Paragraph 3 reads as follows:

> Knaak will hold Ancona Escrow harmless for any and all liability as may have been or be incurred for files so transferred, except those files not transferred in Attachment A (which it has incorporated into this agreement by reference) Ancona Escrow agrees to hold Knaak harmless for any and all liability which may have been incurred with respect to those files not identified in Attachment A.

These files, for which indemnification was to be provided was for those files which were closed by attorney Alan Kantrud which were not closed through an Ancona Escropw account. (Brown Depo., pg. 39, l. 19 - pg. 40, l. 13).

Consequently, other than the short list of files with which Alan Kantrud was involved, there is no promise of indemnification by Knaak other than the separate indemnification agreement of October, 2005 where, in order to induce the remaining payments under the note, Knaak signed an indemnification agreement agreeing to indemnify Plaintiffs for any losses under the "Gore" matter ("392 Lexington Parkway South"). Despite this, the Plaintiffs breached their agreement to make continuing payments, voiding this promise, and have not asserted a separate claim for any alleged

21

violation of this subsequent indemnification agreement on the "Gore" file. Even there, as noted above, the Plaintiffs have not alleged any specific damages which they have incurred as a result of the alleged undisclosed liabilities. Again, summary judgment is warranted.

## VI.   A SOLE SHAREHOLDER CANNOT BE HELD LIABLE FOR ALLEGED BREACH OF FIDUCIARY DUTY TO A WHOLLY OWNED CORPORATION.

Count XIV alleges breach of fiduciary duty against Knaak, as President of Ancona Title. Ancona Title alleges, apparently while Knaak was the sole owner, that he failed to act in the best interests of Ancona Title. The allegation also states that these acts were "negligent and careless" and damaged the value of Ancona Title.

As the sole shareholder, while he owned Ancona Title, Knaak had no fiduciary obligations to anybody but himself. Anderson v. Benson, 394 N.W.2d 171 (Minn. App. 1986). The value of the business was set by Christopher Brown and Brown has failed to establish any damage, including diminution of value, by any perceived lack of fiduciary obligations.

As president and sole shareholder of Ancona Title, Knaak had a fiduciary interest only to himself, and not to future prospective purchasers. There can be no cause of action stated in this capacity. The cause of action is clearly frivolous.

When the issue was raised by a former shareholder in a Texas case, where there were two shareholders, it was held that where both shareholders had ratified the use of corporate opportunity, there could not be any breach of fiduciary interest.  " . . . even when the transaction is detrimental to the corporation, no cause of action will lie if all of the shareholders have ratified the transaction." Dyer v. Shafer, Gilliland, Davis, McCollum & Ashley, 779 S.W.2d 474, 478 (Tex. App. 1989).  When the issue was raised in a Minnesota bankruptcy proceeding, it was held that the Chapter 7 trustee failed to establish a breach of fiduciary duty by the shareholder.  The trustee asserted that the sole shareholder, as such, acted in a fiduciary capacity for the benefit of the corporation.  The court held that, "The trustee cites no authority for that proposition. . . . even as an officer he [the sole shareholder] could hardly be said to be a fiduciary for his own benefit as a shareholder." In Re Metropolitan Cosmetic Reconstructive Surgical Clinic, P.A., 115 B.R. 185 (bankruptcy - D. Minn. 1990).

The only time that officers or directors of a corporation are fiduciaries to those outside the corporation itself is when the corporation is nearly or actually insolvent.  Even then, officers and directors are fiduciaries with respect to creditors under Minnesota law, only to the limited extent that they are prohibited from securing for themselves, as creditors, a preference over other creditors.  Snyder Electric Co. v. Fleming, 305 N.W.2d 863 (Minn. 1981); Farmers Co-Operative Assn. of Bertha v. Kotz, 222 Minn. 153, 23 N.W.2d 576 (1946).  There is no claim here that the corporation was either nearly or

actually insolvent, or that existing creditors are involved.  This is further evidence that the claim of breach of fiduciary duty is frivolous and without merit.

It is clear under Minnesota law that amounts spent by a sole shareholder, even if wrongful, are not recoverable by the corporation following its sale.  Anderson v. Benson, 394 N.W.2d 171 (Minn. App. 1986).  The Court noted that the purchaser had no interest in the corporation at the time of the alleged wrongful acts, and therefore had no standing to make such a claim.  394 N.W.2d at 175.  "But absent fraud or violation of public policy, [the sole shareholder] was free to dispose of the corporate assets as she pleased and was not obliged to favor the interests of the corporation over her own in every action she took.  394 N.W.2d at 175, citing In Re Tufts Electronics, Inc., 746 F.2d 915, 917 (1st Cir. 1984).

As in Anderson, the Plaintiff had the opportunity to examine the corporate books, and the Court can only assume that the purchase price paid reflected a fair value for the corporation and the terms of its assets and liabilities at the time of sale.  Whatever actions may have been take prior, was not reflected as a corporate asset at the time the parties were negotiating the price.  A subsequent purchaser cannot successfully allege a breach of fiduciary liability against a prior sole shareholder.  Ibid.

Again, summary judgment is awarded.  Frederic Knaak cannot be sued for his actions with respect to the corporation prior to the sale.

This claim is specious and must be denied.

24

**VII.    CLAIMS OF PROFESSIONAL MALPRACTICE AGAINST KNAAK ARE**

**BARRED DUE TO FAILURE TO PROVIDE EXPERT WITNESS**

**TESTIMONY.**

It has been implied, in this case, that at the very least, claims may exist against

Knaak in negligence, or other professional malpractice, via the letters of indemnity, or

other actions asserted.  Defendants contend, however, that not only is there no factual

basis for such a claim, but that any such claim would be barred under Minn. Stat.

§544.42.

Minn. Stat. §544.42 is the expert affidavit statute applicable to claims of

malpractice against attorneys.  Subdivision 2 of this section requires, wherever there is a

claim against "a professional alleging negligence or malpractice in rendering a

professional service" the party must provide an affidavit of expert review, as well as an

affidavit of expert identification.  The latter affidavit must be served within 180 days

from the commencement of the action.  Minn. Stat. §544.42, subd. 2.

It goes without saying that the claim of negligence has never been pleaded in this

case.  Such a claim should be barred on that basis, as well.  Clearly, the claim of breach of

contract constitutes malpractice within the definition of § 544.42.  Legal malpractice can

be classified as either a breach of contract claim or tort claim.  Wagner v. McDonald, 509

N.W.2d 190, 191 (Minn. App. 1993), citing Jackson v. Rogers & Wells, 210 Cal. App.3d

336, 258 Cal. Rptr. 454, 457 (1989), noting the "hybrid contract - tort nature" of legal malpractice claims.

Consequently, even if the malpractice claims are viewed only as breach of contract, which was, in a manner, pleaded against Knaak, they must be dismissed for failure of the Plaintiffs to comply with Minn. Stat. §544.42.

## VIII.   THE SHAREHOLDER, ANCONA ESCROW, HAS NO STANDING TO SUE FOR DAMAGES IN THIS LAWSUIT.

The Complaint alleges damages on behalf of both Plaintiffs, Ancona Escrow and Ancona Title Services.  A review of the Sales Agreement, however, clearly shows that Ancona Escrow simply owns the stock which it purchased from Knaak, of Ancona Title Services.  As a mere shareholder, Ancona Escrow has no standing to sue for any damages allegedly sustained by its corporation, Ancona Title Services.

Minnesota law is clear on this point.

It is black letter law that "a sole or majority stockholder has no independent right of action at law for a wrong to the corporation."  Am. Jur., Corporations, § 1943.

"A corporation is an entity separate and distinct from its stockholders and its separate entity will generally be recognized."  Bankers Life & Cas. Co. v. Kirtley, 338 F.2d 1006, 1013 (8th Cir. 1964).  Generally, if a harm has been directed toward the corporation, then only the corporation has standing to assert a claim.  Actions to enforce corporate rights and redress injuries to the corporation cannot be maintained by a

stockholder in his own name even though the injury to the corporation may incidently result in the depreciation or destruction of the value of stock.  Brictson v. Woodrough, 164 F.2d 107, 109 (8th Cir. 1947).  Potthoff v. Morin, 245 F.3d 710, 717 (8th Cir. 2001), citing Erlich v. Glasner, 418 F.2d 226, 228 (Cal. App. 1969), "Even though a stockholder owns all, or practically all, of the stock in a corporation, such a fact of itself does not authorize him to sue as an individual . . ."  If the harm at issue is directed toward the corporation, the corporation remains the only entity with standing to sue.  Essling's Homes Plus, Inc. v. City of St. Paul, 356 F. Supp.2d 971, 976 (D. Minn. 2004).

Ancona Escrow is only a party to this action as the shareholder to Ancona Title, as well as the promissor in the Promissory Note.  It has no standing, therefore, to sue for damages alleged to have been incurred by Ancona Title.

IX.    **DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE PROMISSORY NOTE, INCLUDING ATTORNEYS FEES.**

A.    **There is no proper defense to the Promissory Note.**

It should be evident from the foregoing discussion that this lawsuit is simply a ruse by the Plaintiffs to avoid payments due and owing under the Promissory Note.  As indicated, all of those defenses should fail.

Even if there were any merit, whatsoever, however, on the allegations made, that is no defense to the Promissory Note whereby Ancona Escrow promised to pay Fritz Knaak, the sum of $90,000.00, together with attorneys fees and other costs of collection.

27

The Promissory Note is clear and understandable.  By the Promissory Note, Ancona Escrow has agreed to pay, to the order of Frederic W. Knaak, the principal sum of $90,000.00, plus interest, (in case of default, as here), together with costs of collection.

Chris Brown admits that he has not made the final $30,000.00 of payments due and owing under the Promissory Note.

In their belated Reply to the Counterclaim, the Plaintiffs basically admit that the Promissory Note was signed by Christopher Brown on behalf of Ancona Escrow. Without explanation, the Plaintiffs assert that the Counterclaim is "frivolous and without merit" and that they should have their costs and disbursements incurred.  (Reply to Counterclaim, ¶ 7).

As affirmative defenses, the Plaintiffs have alleged that the Counterclaim fails to state a claim upon which relief could be granted, that the claims for relief are barred by their own conduct, fraud, unclean hands, laches, waiver and estoppel.  Discovery, however, has failed to disclose any facts which would support any of the affirmative defenses or other supposed defenses.

In essence, the only real defense to the Promissory Note is the allegation that Knaak breached the sale agreement (Reply, ¶ 5).  This, by itself, however, is not sufficient grounds to refuse payment on the Promissory Note.  In essence, the Plaintiffs are clearly attempting to have their cake and eat it too.

The Promissory Note is not entirely consistent with the Sale Agreement.  Evidence shows that the Sale Agreement was modified by Christopher Brown where the Promissory Note itself stated that the stock should not be transferred until all payments were made.  The Promissory Note, signed by Christopher Brown on July 25, 2005, states, in pertinent part:

> This Note is given in purchase of certain shares of corporate common stock owned by payee, in which his entire interest is reserved without partition until payment in full.  Promissor is not entitled to prorated legal or equitable interest in those shares for any partial installments made.

The Note further provides:

> If this Note is not paid by the due date, the promissor promises to pay all costs of collection, including without limitation collection agency fees or commissions, and reasonable attorneys' fees whether or not a lawsuit is commenced as part of the collection process.

Clearly, all payments must continue to be paid on the Promissory Note, in order for Ancona Escrow to have any standing whatsoever.

**B.    Defendants are entitled to attorneys fees.**

As noted above, the Promissory Note, as well as the Sale Agreement, clearly provides for attorneys fees, in case an action needs to be brought to enforce rights under the Promissory Note or under the Sale Agreement.  In ¶ 4 of the Reply to the Counterclaim, the Plaintiffs allege that the attorneys fees referenced in the Promissory Note "are limited to attorneys fees incurred as part of a collection process of a collection agency."

29

This claim, of course, is specious, as are most of the allegations by the Plaintiffs in this cause of action.

Clearly, the Defendants are entitled to all attorneys fees necessarily expended in this action, both with respect to defending the smoke screen raised by the causes of action against the Defendants, as well as any specific efforts by the Defendants to pursue the amounts still due and owing under the Promissory Note.

Attorneys fees should be calculated and assessed pursuant to Local Rule 54.3(b).

Minnesota case law provides that when, under the terms of a promissory note, a creditor is entitled to attorneys fees associated with the collection of the debt, this includes attorneys fees incurred in defending claims by the debtor.  See, Potter v. American Bean & Grain Corp., 388 N.W.2d 22, 25 (Minn. App. 1986), petition for review denied (Minn. August 13, 1986); See also, Vandeputte v. Soderholm, 298 Minn. 505, 216 N.W.2d 144 (Minn. 1974), where the Supreme Court affirmed an award of attorneys fees for holder of promissory note which included costs incurred in defending counterclaims by debtor.  This is reasonable because a successful counterclaim would reduce the amount received under the note.  Potter, super, 388 N.W.2d at 25.

Clearly, Defendants are entitled to summary judgment on both the Promissory Note, as well as the additional interest and claims for attorneys fees.  The attorneys fees should include all of the attorneys fees and other costs of collection necessarily expended

in this action, both for pursuit of the Promissory Note itself, as well as defense of the frivolous claims asserted by the Plaintiffs.

## CONCLUSION

There is no reason why this case should proceed any further.  While many claims were alleged against the Defendants, the analysis above shows that Defendants are entitled to summary judgment on all claims made.  In addition, Defendants are entitled to summary judgment on the Promissory Note, entitling Defendant Knaak to judgment of $30,000.00, together with interest as stated in the Note, plus attorneys fees necessarily incurred in this action.

Dated this 16th day of January, 2007.

**SORTLAND LAW OFFICE**

**s/ Paul A. Sortland**
**Paul A. Sortland, #103573**
120 South Sixth Street, Suite 1510
Minneapolis, Minnesota 55402-1817
(612) 375-0400

**ATTORNEY FOR DEFENDANTS**